UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
-------------------------------------------- x
In re                                        :      Chapter 11 Case No.
                                             :
ARMSTRONG WORLD INDUSTRIES,                  :      00-4471 (JKF)
INC., et al.,                                :
                                             :
                          Debtors.           :      (Jointly Administered)
                                             :
-------------------------------------------- x
```

## FINDINGS OF FACT AND CONCLUSIONS
## OF LAW REGARDING CONFIRMATION OF THE
## FOURTH AMENDED PLAN OF REORGANIZATION
## OF ARMSTRONG WORLD INDUSTRIES, INC., AS MODIFIED

Armstrong World Industries, Inc. (*"AWI"*), as debtor and debtor in possession

(the *"Debtor"*), having proposed and filed the Fourth Amended Plan of Reorganization of

Armstrong World Industries, Inc., dated May 23, 2003 (as modified by the modifications

filed on October 17, 2003, November 10, 2003 and December 3, 2004 (collectively, the

*"Modifications"*) the *"Plan"*), and the Disclosure Statement in respect of the Fourth

Amended Plan, dated June 2, 2003 (the *"Disclosure Statement"*); and the procedures for

solicitation and tabulation of votes to accept or reject the Plan having been approved by

the United States Bankruptcy Court for the District of Delaware (the *"Bankruptcy*

*Court"*) pursuant to an order dated April 21, 2003 (the *"Voting Procedures Order"*); and

the Disclosure Statement having been approved by the Bankruptcy Court pursuant to an

order dated June 4, 2003, as containing "adequate information" pursuant to section 1125

of the Bankruptcy Code (the *"Disclosure Statement Order"*); and the Affidavit of

Trumbull Associates LLC (f.k.a. Trumbull Services, LLC) (*"Trumbull"*) Regarding

Service by First Class Mail of the Solicitation Materials Related to the Plan Pursuant to

the Disclosure Statement Order, dated July 1, 2003 (the *"Trumbull Affidavit of Mailing"*), having been filed with the Bankruptcy Court, and the Affidavit of Service of Voting Documents by Innisfree M&A Incorporated (*"Innisfree"*), dated June 25, 2003 (the *"Innisfree Affidavit of Mailing"* and, together with the Trumbull Affidavit of Mailing, the *"Affidavits of Mailing"*), having been filed with the Bankruptcy Court; and the certificate of publications of Kathy Kinsella of Kinsella Communications, Ltd. (the *"Certificate of Publications"*) attesting to the publication of the Confirmation Hearing Publication Notice and the Asbestos Publication Notice (as hereinafter defined) in accordance with the Voting Procedures Order having been filed with the Bankruptcy Court; and the Certification of Votes Tabulated by Trumbull (the *"Trumbull Certification"*) and the Certification of Votes Tabulated by Innisfree (the *"Innisfree Certification"* and, together with the Trumbull Certification, the *"Certifications of Votes"*) having been filed with the Bankruptcy Court on November 7, 2003; and AWI having filed with the Bankruptcy Court the affidavits in support of confirmation of the Plan of (i) William C. Rodruan, Vice President and Controller of AWI (the *"Rodruan Affidavit"*), (ii) Daniel L. Aronson, a Director of Lazard Frères & Co. LLC, (*"Lazard"*), financial advisors to AWI (the *"Aronson Affidavit"*), and (iii) Dean M. Trafelet, the Future Claimants' Representative (the *"Trafelet Affidavit"* and, together with the Rodruan Affidavit and the Aronson Affidavit, the *"Affidavits in Support of Plan Confirmation"*) (collectively, with the Affidavits of Mailing, the Certificate of Publications, and the Certifications of Votes, *"AWI's Confirmation Documents"*); and each of the Objections (as hereinafter defined) other than the objection of the Unsecured Creditors' Committee (as hereinafter defined), dated November 12, 2003, having been

resolved, overruled or withdrawn prior to the hearing to consider confirmation of the Plan

conducted by the Bankruptcy Court on November 17 and 18, 2003 (the "*Initial*

*Confirmation Hearing*"); and, on December 19, 2003, the Bankruptcy Court having

entered the *Proposed Findings of Fact and Conclusions of Law Regarding Confirmation*

*of the Fourth Amended Plan of Reorganization of Armstrong World Industries, Inc., as*

*Modified* (the "*Proposed Findings and Conclusions*") and the *Proposed Order*

*Confirming the Fourth Amended Plan of Reorganization of Armstrong World Industries,*

*Inc., as Modified* (the "*Proposed Confirmation Order*"); and on December 29, 2003, the

Unsecured Creditors' Committee having filed an objection to the Proposed Findings and

Conclusions (the "*Unsecured Creditors' Committee's Objection*") with the United States

District Court for the District of Delaware (the "*District Court*"); and the District Court

having conducted a hearing to consider the Unsecured Creditors' Committee's Objection

on December 15, 2004; and on February 23, 2005, the District Court having issued a

memorandum decision and order (the "*District Court Order*") denying confirmation of

the Plan; and on March 4, 2005, AWI having filed a notice of appeal from the District

Court Order with the United States Court of Appeals for the Third Circuit (the "*Third*

*Circuit Appeal*"); and on December 29, 2005, the Third Circuit having issued an opinion

affirming the District Court Order; and on February 8, 2006, the District Court having

entered the Order (the "*Case Management Order*") Establishing Schedule with Respect

to Hearing on Confirmation of the Fourth Amended Plan of Reorganization of Armstrong

World Industries, Inc., as Modified; and pursuant to the Case Management Order, on

February 21, 2006, AWI having filed the Fourth Amended Plan of Reorganization of

Armstrong World Industries, Inc., as Modified (the "*Modified Plan*"); and the District

Court having conducted a hearing to consider confirmation of the Modified Plan on May

23, 24, 25, and July 11, 2006 (the *"Confirmation Hearing"*); and the District Court

having reviewed and considered the Modified Plan, the Exhibit Volume filed with the

Bankruptcy Court on September 5, 2003 (as modified and as may be modified from time

to time, the *"Exhibit Volume"*), AWI's Confirmation Documents, the Disclosure

Statement, the Disclosure Statement Order, and the entire record of the Initial

Confirmation Hearing and the Confirmation Hearing, and the District Court being

familiar with the Modified Plan and other relevant factors affecting AWI's chapter 11

case (the *"Chapter 11 Case"*); and the District Court having taken judicial notice of the

entire record of the Chapter 11 Case since the Commencement Date; and the appearance

of all interested parties having been duly noted in the record of the Confirmation Hearing;

and the District Court having entered its decision and order, dated August 14, 2006 (the

*"Unfair Discrimination Decision and Order"*), overruling the Unfair Discrimination

Objection (as hereinafter defined); and after due deliberation and sufficient cause

appearing therefor;

IT IS HEREBY FOUND, CONCLUDED, AND ADJUDGED, AS

FOLLOWS:

## FINDINGS OF FACT

### Prepetition Asbestos-Related
### Personal Injury Litigation Against AWI

1.      Prior to the Commencement Date, AWI was named as a defendant

in personal injury and wrongful death actions seeking recovery for damages allegedly

caused by the presence of, or exposure to, asbestos or asbestos-containing products.

2.      During the three-year period immediately prior to its December 6,

2000 chapter 11 filing, AWI paid over $500 million in settlement payments (including defense costs) on account of asbestos-related personal injury and wrongful death claims. As of September 30, 2000, approximately 173,000 asbestos-related personal injury and wrongful death claims were pending against AWI within the tort system in a multitude of jurisdictions. (Disclosure Statement, p. 17, Docket No. 4801).

**Prepetition Asbestos-Related**
**Property Damage Litigation Against AWI**

       3.     Prior to the Commencement Date, AWI was named as a defendant in 273 property damages cases seeking recovery for damages allegedly caused by the presence of asbestos-containing materials in plaintiffs' premises. Such claims generally were not the result of AWI's insulation installation contracting activities. Instead, those that were actively pursued against AWI concerned primarily resilient floor covering products manufactured and sold by AWI prior to 1983. (Disclosure Statement, p. 25, Docket No. 4801).

**Events Leading to the**
**Commencement of AWI's Chapter 11 Case**

       4.     On October 5, 2000, Owens Corning ("*OC*") filed for chapter 11 protection to address its asbestos liabilities. *In re Owens Corning, et al.*, Chapter 11 Case No. 00-03837 (JKF) (Bankr. D. Del.). Following the OC filing, AWI was unable to obtain a replacement credit facility with acceptable terms for its then-existing $450 million credit facility due to expire on October 19, 2000. OC's chapter 11 filing raised additional concerns about the possibility of increased settlement demands of asbestos plaintiffs given that, prior to its filing, OC had been a major defendant in asbestos litigation. (Rodruan Affidavit, at ¶ 5).

5.    On October 25, 2000, both Standard & Poors and Moody's Investors Services downgraded AWI's long-term debt rating, citing the reduction in committed credit facilities, prospects for weaker operating performance, and continued uncertainty surrounding AWI's asbestos personal injury liability as result of, among other things, OC's chapter 11 filing. (Rodruan Affidavit, at ¶ 6).

6.    After October 25, 2000, AWI was unable to issue commercial paper and, instead, borrowed from its remaining $450 million credit facility. As of December 6, 2000, approximately $50 million of commercial paper was outstanding, and the entire $450 million credit facility had been drawn and was outstanding. (Rodruan Affidavit, at ¶ 7).

## Commencement of AWI's Chapter 11 Case

7.    On December 6, 2000 (the *"Commencement Date"*), AWI and two of its wholly-owned direct and indirect subsidiaries, Nitram Liquidators, Inc. and Desseaux Corporation of North America (collectively, the *"Debtors"*), each commenced a case under chapter 11 of the Bankruptcy Code. (Debtors' Chapter 11 Petitions, Docket No. 1).

8.    By previous order of the Bankruptcy Court, dated December 7, 2000, the chapter 11 cases of the Debtors are being jointly administered pursuant to Rule 1015 of the Federal Rules of Bankruptcy Procedure. (Debtors' Joint Administration Order, Docket No. 10).

9.    AWI's chapter 11 case (the *"Chapter 11 Case"*) originally was assigned to the Honorable Joseph J. Farnan, Jr., a United States District Court Judge for the District of Delaware. During the fourth quarter of 2001, the Third Circuit assigned

District Court Judge Alfred M. Wolin of New Jersey to preside over the Chapter 11 Case

in the District of Delaware. The Third Circuit also assigned Judge Wolin to preside over

four other asbestos-related chapter 11 cases pending in the District of Delaware (together

with the Chapter 11 Case, the *"Five Asbestos Cases"*). Judge Wolin retained issues

relating to asbestos personal injury claims and referred other asbestos related issues and

bankruptcy related matters in the Chapter 11 Case to U.S. Bankruptcy Court Judge

Randall J. Newsome.

   10. Since the Commencement Date, the Debtors have continued to

operate their business and manage their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

   11. No trustee or examiner has been appointed in the Debtors' chapter

11 cases. On or about December 15, 2000, the United States Trustee for the District of

Delaware (the *"U.S. Trustee"*) appointed the Official Committee of Unsecured Creditors

(the *"Unsecured Creditors' Committee"*), and the Official Committee of Asbestos

Claimants (the *"Asbestos PI Claimants' Committee"*). (Notice of Appointment of

Unsecured Creditors' Committee, Docket No. 90; Notice of Appointment of the Asbestos

PI Claimants' Committee, Docket No. 91).

   12. On or about July 19, 2001, the U.S. Trustee appointed the Official

Committee of Asbestos Property Damage Claimants (the *"Asbestos PD Committee"*).

(Notice of Appointment of Asbestos PD Committee, Docket No. 1075). The Asbestos

PD Committee was disbanded as of September 18, 2003, pursuant to the terms of the

Global Asbestos PD Settlement, which was approved by the Bankruptcy Court on August

25, 2003. (Order Approving Global Asbestos PD Settlement, Docket No. 5464).

13.     On or about March 1, 2002, the Bankruptcy Court entered an order approving the appointment of Dean M. Trafelet as the legal representative for AWI's future asbestos personal injury claimants (the "*Future Claimants' Representative*," and together with the Unsecured Creditors' Committee and the Asbestos PI Claimants' Committee, the "*Committees*"). (Order Appointing Future Claimants' Representative, Docket No. 2096).

**Negotiation of the Plan**

14.     Since the commencement of its Chapter 11 Case and promptly after achieving stabilization of its business operations, AWI engaged in extensive and continuing negotiations with the various constituents in the Chapter 11 Case in order to formulate a long-term business plan and, ultimately, to formulate, negotiate and propose a plan of reorganization. (Rodruan Affidavit, at ¶ 8).

15.     On August 29, 2002, AWI and the representatives of the Committees appeared at a status conference before the District Court. At such status conference, the District Court requested that AWI file a plan of reorganization within 45 days. (Rodruan Affidavit, at ¶ 9).

16.     Following such status conference, AWI focused its efforts, together with the Committees, on negotiating and working out the details of a comprehensive plan of reorganization that had the support of all the major constituencies in the Chapter 11 Case. These efforts involved substantial time and effort on the part of AWI, the Committees, and their respective professionals. (Rodruan Affidavit, at ¶ 10).

17.     On October 17, 2002, AWI and the representatives of the Committees appeared at a subsequent status conference before the District Court. At

such status conference and after substantial negotiations, the parties reached agreement on
the terms of a plan that had the support of the Committees. (Rodruan Affidavit, at ¶ 11).
As a result of such agreement, on November 4, 2002, AWI filed the Plan of
Reorganization of Armstrong World Industries, Inc. with the Bankruptcy Court (the
"*Original Plan*"). (Docket No. 3313).

18.    On December 20, 2002, AWI filed the proposed disclosure
statement with respect to the Original Plan. (Docket No. 3313).

19.    Subsequent to the filing of the Original Plan and proposed
disclosure statement, AWI, the Committees and other parties in interest engaged in
further negotiations in an effort to resolve a number of objections that arose in connection
with approval of the disclosure statement, which resulted in AWI filing amended plans of
reorganization on March 14, 2003 (the "*First Amended Plan*"), April 3, 2003 (the
"*Second Amended Plan*"), and May 1, 2003 (the "*Third Amended Plan*"). (Docket No.
4241, No. 4414, and No. 4636, respectively).

20.    Hearings to consider the adequacy of the Disclosure Statement
were conducted by the Bankruptcy Court on February 28, 2003, April 4, 2003, May 5,
2003, and May 30, 2003 (collectively, the "*Disclosure Statement Hearing*").

21.    On May 23, 2003, AWI filed the Plan (Docket No. 4802) and the
Disclosure Statement (Docket No. 4801) to, *inter alia*, address the comments made by the
Bankruptcy Court at the Disclosure Statement Hearing and to make other agreed changes.

## The Voting Procedures Order

22.    On April 21, 2003, by the Voting Procedures Order, the
Bankruptcy Court approved (i) solicitation and tabulation procedures and (ii) the forms of

ballots and master ballots (collectively, the "***Ballots***") to be used in connection with the

solicitation of votes to accept or reject the Plan (the "***Voting Procedures***"). (Voting

Procedures Order, Docket No. 4564).

## The Disclosure Statement Order
## and Solicitation of Votes on the Plan

      23.    On June 2, 2003, by the Disclosure Statement Order, the

Bankruptcy Court, among other things, (i) found that sufficient and timely notice of the

Disclosure Statement Hearing was given in accordance with the Bankruptcy Rules and

orders of the Bankruptcy Court and (ii) approved the Disclosure Statement as containing

"adequate information" within the meaning of section 1125 of the Bankruptcy Code.

(Disclosure Statement Order, Docket No. 4885).

      24.    The Disclosure Statement Order and the Voting Procedures

established the record date for determining creditors entitled to vote on the Plan (the

"***Voting Record Date***") as June 4, 2003.

      25.    The Disclosure Statement Order authorized and directed Trumbull

and Innisfree (collectively, the "***Voting Agents***"), on behalf of AWI, to solicit acceptances

and rejections of the Plan in a manner consistent with the Bankruptcy Code, the

Bankruptcy Rules and in accordance with the procedures set forth in the Disclosure

Statement Order and the Voting Procedures. (Disclosure Statement Order, Docket No.

4885).

      26.    In compliance with the Disclosure Statement Order and the Voting

Procedures, AWI caused to be transmitted by first class mail, postage prepaid, to (i) each

holder of a Claim against AWI listed in the schedules as of the Voting Record Date, (ii)

each holder of a Claim represented by a proof of claim filed against AWI, (iii) each

Entity listed on the schedules as a party to an executory contract or an unexpired lease

with AWI and any Entity listed as a party to any contract listed on Exhibit "8.1," "8.2" or

"8.4" to the Plan, (iv) each holder of a Claim held by a Lender (as such term is defined in

the Voting Procedures) as of the Voting Record Date, (v) each holder of record of the

Equity Interests in AWI, (vi) all holders of Debt Security Claims and the holders of equity

securities issued by Armstrong Holdings, Inc. ("*Holdings Equity Securities*"), in

accordance with the procedures set forth in section 3.g of the Voting Procedures, and (vii)

all known holders of Asbestos Personal Injury Claims and Indirect PI Trust Claims, in

accordance with the procedures set forth in section 4 of the Voting Procedures, the

following: (a) a copy of the Disclosure Statement and all exhibits thereto, including,

without limitation, the Plan annexed thereto as Exhibit "A" and the Disclosure Statement

Order annexed thereto as Exhibit "B;" (b) the Notice of (i) Approval of Disclosure

Statement, (ii) Establishment of Record Date for Voting Purposes, (iii) Hearing to

Consider Confirmation of the Plan, (iv) Procedures for Objecting to Confirmation of the

Plan, and (vi) Procedures and Deadline for Voting on the Plan (the "*Initial Confirmation

Hearing Notice*"); and (c) if such holder was entitled, pursuant to the Disclosure

Statement Order, to vote, an appropriate Ballot for each class in which such holder was

entitled to vote and a pre-addressed return envelope for each such Ballot (collectively, a

"*Solicitation Package*"). (Trumbull Affidavit of Mailing, at ¶ 3).

       27.     Pursuant to the Disclosure Statement Order, AWI was required to

complete such transmittal on or before June 20, 2003 (except with respect to holders of

Holdings Equity Securities as described below), and such transmittal was timely

completed in accordance with the requirements of the Disclosure Statement Order.

(Trumbull Affidavit of Mailing, at ¶ 2; Innisfree Affidavit of Mailing, at ¶ 3).

28.    Pursuant to the terms of the Disclosure Statement Order, AWI was authorized and directed to cause a Solicitation Package to be served on the holders of Holdings Equity Securities by August 22, 2003.  The record date for determining the holders of Holdings Equity Securities entitled to receive Solicitation Packages was set as August 15, 2003 (the *"Holdings Record Date"*) (Rodruan Affidavit, at ¶ 11).

29.    In accordance with the Disclosure Statement Order, AWI caused to be transmitted by first class mail, postage prepaid, a Solicitation Package (without a Ballot) to all holders of Holdings Equity Securities as of the Holdings Record Date, by August 22, 2003.

30.    The Disclosure Statement Order authorized and directed AWI to provide or cause to be provided notice by publication (the *"Initial Confirmation Hearing Publication Notice"*) of the approval of the Disclosure Statement, the Voting Deadline, the time and place of the Initial Confirmation Hearing, the time and date by which objections to confirmation of the Plan were required to be filed, and other pertinent information.  (Disclosure Statement Order, Docket No. 4885).

31.    The Initial Confirmation Hearing Publication Notice was published (i) twice in *The New York Times*, *The Wall Street Journal* and *USA Today* (weekday editions of the national edition), and (ii) once in each of the newspapers and trade publications set forth on Exhibits "E" and "F" to the Disclosure Statement Order, on the dates set forth next to the name of each such publication as set forth in paragraph 6 to the Certificate of Publications, in accordance with the Disclosure Statement Order. (Certificate of Publications, Docket No. 5309).

32.     The Disclosure Statement Order authorized and directed AWI to provide or cause to be provided notice by publication to all unknown holders of Asbestos Personal Injury Claims (the "*Asbestos Publication Notice*") of the Voting Deadline, the Objection Deadline and other pertinent information relating to the Initial Confirmation Hearing and the solicitation of votes on the Plan. (Disclosure Statement Order, Docket No. 4885).

33.     The Asbestos Publication Notice was published once in each of the publications listed in paragraph 5 to the Certificate of Publications on the dates set forth next to the name of each such publication. (Certificate of Publication, Docket No. 5309).

34.     AWI's publication of the Initial Confirmation Hearing Publication Notice and the Asbestos Publication Notice complied in all material respects with the requirements of the Disclosure Statement Order and the Voting Procedures.

35.     Written requests for Solicitation Packages were received from each of the persons or entities listed on Exhibit "A" to the Trumbull Certification, and Trumbull mailed by first-class mail, postage-prepaid, a Solicitation Package to each of the persons or entities listed on Exhibit "A" on or about the date specified next to the name of each such person or entity.  (Trumbull Certification, at ¶ 7).

36.     AWI's distribution of the Solicitation Packages complied with the requirements of the Disclosure Statement Order.

37.     The Disclosure Statement Order (i) established the date and time by which all Ballots were required to be completed, executed, marked and actually received by the Voting Agents in order to be counted as timely acceptances or rejections of the Plan (the "*Original Voting Deadline*") as September 22, 2003, at 5:00 p.m.,

Wilmington, Delaware time; (ii) established September 22, 2003, at 4:00 p.m.,

Wilmington, Delaware time, as the date and time for filing objections to confirmation of

the Plan (the "*Objection Deadline*"); (iii) established October 24, 2003, at 4:00 p.m.,

Wilmington, Delaware time, as the last date and time for AWI, the DIP Lenders, the

Prepetition Lenders, and the Committees to file responses to objections to confirmation

(the "*Reply Deadline*"); and (iv) scheduled the Initial Confirmation Hearing to commence

on November 17, 2003.

      38.    By order of the Bankruptcy Court dated September 24, 2003, the

Original Voting Deadline was extended to 5:00 p.m., Wilmington, Delaware time, on

October 17, 2003. (Order Extending Voting Deadline, Docket No. 5688). Thereafter, by

order of the Bankruptcy Court dated October 11, 2003, the Original Voting Deadline was

further extended to 5:00 p.m., Wilmington, Delaware time, on October 31, 2003 (the

"*Voting Deadline*"). (Second Order Extending Voting Deadline, Docket No. 5797).

**Filing of the Exhibit Volume**

      39.    In accordance with Article I.B of the Plan, on September 5, 2003,

AWI filed with the Bankruptcy Court the Exhibit Volume, which included draft forms of

(i) the Amended and Restated Articles of Incorporation, (ii) the Amended and Restated

By-Laws, (iii) the Asbestos PI Trust Agreement, (iv) the Asbestos PI Trust Distribution

Procedures, (v) the Claims Settlement Guidelines, (vi) the New Long-Term Incentive

Plan, (vii) the New Warrants, (viii) the Plan Note Indentures, (ix) the Stockholder and

Registration Rights Agreement, (x) a list identifying the individuals appointed as

Asbestos PI Trustees, (xi) a list identifying the proposed Board of Directors of

Reorganized AWI, and (xii) lists of (a) any executory contracts and unexpired leases to be

assumed pursuant to the Plan, (b) any executory contracts and unexpired leases to be

rejected pursuant to the Plan, and (c) previously listed executory contracts no longer

considered executory, and (xiii) Management Agreements that AWI intends to enter into

in connection with consummation of the Plan (of which there are none). (Exhibit

Volume, Docket No. 5508).

        40.     In connection with filing the Modified Plan, on February 21, 2006,

AWI filed revised exhibits to the Modified Plan. These exhibits included the following:

(i) the Amended and Restated By-Laws, (ii) the Amended and Restated Articles of

Incorporation, (iii) the Asbestos PI Trust Agreement, (iv) the Asbestos PI Trust

Distribution Procedures, (v) the Claims Settlement Guidelines, (vi) the New Long-Term

Incentive Plan, (vii) the Plan Note Indentures, (viii) the Stockholder and Registration

Rights Agreement, (ix) a list identifying the individuals appointed as Asbestos PI

Trustees, (xii) a list identifying the proposed Board of Directors of Reorganized AWI,

and (xii) lists of (a) any executory contracts and unexpired leases to be assumed pursuant

to the Plan, (b) any executory contracts and unexpired leases to be rejected pursuant to the

Plan, and (c) previously listed executory contracts no longer considered executory.

(Modified Plan, Docket No. 9116). *See, infra,* ¶ 64.

## Classification of Claims and Equity Interests Under the Plan

        41.     The Plan designates the following classes of Claims and Equity

Interests:

| Class | | |
|-------|---|---|
| Class 1 | - | Priority Claims |
| Class 2 | - | Secured Claims |
| Class 3 | - | Convenience Claims |
| Class 4 | - | Asbestos Property Damage Claims |
| Class 5 | - | COLI Claims |
| Class 6 | - | Unsecured Claims other than Convenience Claims |
| Class 7 | - | Asbestos Personal Injury Claims |

| Class 8 | - | Environmental Claims |
| Class 9 | - | Affiliate Claims |
| Class 10 | - | Subsidiary Debt Guarantee Claims |
| Class 11 | - | Employee Benefit Claims |
| Class 12 | - | Equity Interests |

(Plan, Article II).

42.    The Plan defines a "Convenience Claim" as an Unsecured Claim (other than a Debt Security Claim) in the amount of $10,000 or less or that is reduced to $10,000 at the election of the Claimant.  A holder of an Allowed Convenience Claim will be paid 75% of the Allowed Amount of its Allowed Convenience Claim in cash on the later of the Effective Date and as soon as practicable after such Convenience Claim becomes Allowed.  (Plan, Section 1.48).  As of the date of the Initial Confirmation Hearing, AWI estimated that approximately 2,050 holders of Unsecured Claims either have Convenience Claims or have elected to have their Unsecured Claims treated as Convenience Claims.  (Rodruan Affidavit, at ¶ 13).  The treatment of such claims as Convenience Claims enables AWI to avoid having to keep track of such Claims for purposes of making Distributions on each Distribution Date and to avoid having to issue small amounts of New Common Stock and Plan Notes (if issued) to such holders.  (Rodruan Affidavit, at ¶ 13).  Accordingly, the designation of a class of Convenience Claims (Class 3) is reasonable and necessary for administrative convenience.  (Plan, Article II; Rodruan Affidavit, at ¶ 13).

43.    All Claims within each class are substantially similar to the other Claims in that class, and the class of Equity Interests (Class 12) consists of a single holder of Equity Interests.  (Plan, Article II; Rodruan Affidavit, at ¶ 14).

44.    The classification scheme was not proposed to create a consenting

impaired class or to manipulate class voting. (Plan, Article II; Rodruan Affidavit, at ¶

14).

**The Voting**

45.     Section 3.1 of the Plan identifies each of the following Classes as

unimpaired under the Plan:  Class 1 (Priority Claims), Class 2 (Secured Claims), Class 4

(Asbestos Property Damage Claims), Class 5 (COLI Claims), Class 9 (Affiliate Claims),

Class 10 (Subsidiary Debt Guarantee Claims), and Class 11 (Employee Benefit Claims).

Pursuant to section 1126(f) of the Bankruptcy Code, the holders of Claims in these

Classes, and, therefore, these Classes, are conclusively presumed to have accepted the

Plan.

46.     Because of the Global Asbestos PD Settlement and the

disallowance of other Asbestos Property Damage Claims, Class 4 no longer has any

Claims in it.  (Rodruan Affidavit, at ¶ 12).  Class 8 currently is comprised solely of the

claims of the United States Environmental Protection Agency (the *"EPA"*) arising under

that certain Settlement Agreement, dated January 25, 2005 (the *"EPA Settlement*

*Agreement"*), which was approved by the Bankruptcy Court on August 23, 2005.

Because the EPA is receiving the treatment provided for it in the EPA Settlement

Agreement, Class 8 is unimpaired.

47.     The Voting Agents have made a final determination of the validity

of, and tabulation respecting, all acceptances and rejections of the Plan by the impaired

Classes of Claims and Equity Interests entitled to vote on the Plan, and the Certifications

of Votes set forth such results, including the amount and number of Claims of each Class

voting to accept or reject the Plan.  The following summarizes, by each impaired Class,

the voting on the Plan:

| Class | $ / % voting to Accept | $ / % voting to Reject | # / % voting to Accept | # / % voting to Reject |
|---|---|---|---|---|
| Class 3 | 2,291,751/98.24% | 41,029/1.76% | 747/98.68% | 10/1.32% |
| Class 6 | 266,151,238/23.21% | 880,433,654/76.79% | 1,646/88.03% | 224/11.98% |
| Class 7 | 3,614,589,300/98.31% | 62,114,300/1.69% | 297,338/98.23% | 5,351/1.77% |
| Class 12 | 40,255,499/100% | —— | 1/100% | —— |

Accordingly, each of impaired Classes 3 and 7 has accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in each such Class actually voting. Class 6 has failed to accept the Plan because less than two-thirds in amount of Claims in Class 6 actually voting on the Plan voted to accept the Plan. These voting results apply to the Modified Plan as well. Although Class 12 originally voted to accept the Plan, because the holder of Equity Interests in Class 12 is not receiving or retaining any property under the Modified Plan, Class 12 is deemed to have rejected the Modified Plan.

48. Class 7 (Asbestos Personal Injury Claims) has voted by at least 75 percent (75%) of those voting in favor of the Plan. This vote also applies to the Modified Plan.

49. The determination of the Voting Agents with respect to the voting on the Plan validly and correctly sets forth the tabulation of votes, as required by the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

**Modifications to the Plan**

50. On October 17, 2003, November 10, 2003, and December 3, 2004, AWI filed the Modifications. Among other things, the Modifications (i) reflect the

incorporation of the Term B Loan concept as part of AWI's exit financing facility, (ii) clarify that, with respect to the 144A Offering, (a) if the 144A Offering Proceeds are less than the amounts required under the terms of the Plan, AWI will issue securities substantially similar to the 144A Debt Securities, and (b) the 144A Offering Proceeds are carved out of the definition of Available Cash under the Plan, (iii) reflect an agreement that AWI will not issue any floating rate notes unless such notes are issued on terms and conditions that are mutually satisfactory to AWI and the Committees, (iv) reflect an amendment to the definition of the Effective Date, (v) clarify the definition of Available Cash and the timing of the Distribution of Available Cash to the Asbestos PI Trust, (vi) provide for modifications to the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, which, among other things, preserve the ability of holders of Indirect PI Trust Claims to prove their Claims against the Asbestos PI Trust, and (vii) correct technical errors with respect to the agreements listed on Exhibits "8.1," "8.2," and "8.4" to the Plan.

      51.     Notice of the proposed Modifications was provided to the United States Trustee, the attorneys for the Committees, the attorneys for the Debtors' Prepetition Lenders, and all parties on the Debtors' Core Group Service List and All Notices List in these cases pursuant to the Bankruptcy Court's Order Establishing Case Management Procedures and Hearing Schedule, dated February 11, 2002 and the Bankruptcy Court's Revised Order Establishing Case Management Procedures and Hearing Schedule, dated May 26, 2004. The Modifications do not adversely affect the treatment of the Claim of any creditor or the Equity Interests of any equity security holder who has not accepted in writing the Modifications.

52.     For a discussion of modifications reflected in the Modified Plan,

see, *infra*, ¶¶ 64-65.

## Objections to Confirmation of the Plan

53.     By the Objection Deadline, objections to confirmation of the Plan

(collectively, the "*Objections*") were filed by the following parties:

1   ACE USA Insurers (Docket No. 5633)

2   Amchem Products, Inc., Certainteed Corp., Dana Corp., I.U. North America,
    Inc., Maremont Corp., National Service Industries, Inc., Nosroc Corp., Pfizer
    Inc., Quigley Co., Inc., and Union Carbide Corp. (the "*CCR Members*")

3   California Franchise Tax Board

4   Center for Claims Resolution ("*CCR*")

5   Directly Affiliated Local Union 461, AFL-CIO ("*DALU 461*")

6   E.F.P. Floor Products Fussboeden GbmH, St. Johann in Tirol (Austria)
    ("*EFP*")

7   Georgia Department of Natural Resources

8   John Crane, Inc.

9   Liberty Property Holdings, L.P.

10  Unsecured Creditors' Committee (Conditional Objection)

11  Safeco Insurance Company of America ("*Safeco*")

12  Solutia Inc.

13  Travelers Indemnity Company and Travelers Casualty and Surety Company
    ("*Travelers*")

14  United States

15  United States Department of Labor

16  United States Gypsum Co. ("*USG*")

17  U.S. Trustee

After the Objection Deadline, objections were filed by Liberty Mutual Insurance Company ("*Liberty Mutual*") and Bank One Trust Company, N.A., as indenture trustee ("*Bank One*"). In addition, after the Objection Deadline, on November 12, 2003, the Unsecured Creditors' Committee filed a Memorandum of Law of the Official Committee of Unsecured Creditors in Opposition to Confirmation of the Debtors' Fourth Amended Plan of Reorganization (the "*November 12 Objection*"). In response to a motion by AWI, dated November 14, 2003, seeking entry of an order pursuant to Bankruptcy Rules 9006 and 3020 striking certain objections contained in the November 12 Objection, the Bankruptcy Court entered a separate order striking certain objections contained in the November 12 Objection. The objections by Liberty Mutual and Bank One, and the remaining objections in the November 12 Objection are included within the scope of the term "Objections" as used herein.

54.    In accordance with the Disclosure Statement Order, AWI filed a reply to the Objections (the "*Reply*") by the Reply Deadline and served the Reply on all entities required to be served so that such entities actually received the Reply by the Reply Deadline.

55.    The Objections of the ACE USA Insurers, Liberty Property Holdings, L.P., the U.S. Trustee, the California Franchise Tax Board, the CCR Members, CCR, DALU 461, EFP, Georgia Department of Natural Resources, John Crane, Inc., Safeco, Solutia Inc., Travelers, the United States, the United States Department of Labor, Liberty Mutual, and USG have been withdrawn. The Objection of Bank One and the remaining objections in the November 12 Objection were overruled by the Bankruptcy Court at the Initial Confirmation Hearing.

## The Initial Confirmation Hearing

56.    Pursuant to section 524(g)(3) of the Bankruptcy Code, one of the requirements for a valid Asbestos PI Permanent Channeling Injunction is that "the order confirming the plan of reorganization was issued or affirmed by the district court that has jurisdiction over the reorganization case ...." 11 U.S.C § 524(g)(3). The Bankruptcy Code and the Bankruptcy Rules do not specify the precise procedure for having the District Court "issue or affirm" the confirmation order. Consequently, courts have adopted different approaches for addressing district court review and approval of plans that contain asbestos "524(g) injunctions." In AWI's case, AWI requested that the District Court and Bankruptcy Court preside jointly over the hearing on confirmation of the Plan because that would provide the most expeditious means for AWI to emerge from chapter 11. Accordingly, the Initial Confirmation Hearing was scheduled to commence on November 17, 2003 in the District Court, with both Judge Wolin and Judge Newsome presiding jointly.

57.    On October 10, 2003, however, creditors in *In re Owens Corning, et al.*, Chapter 11 Case No. 00-03837 (JKF) (Bankr. D. Del.), filed a motion seeking to recuse District Judge Wolin from further participation in the OC case on the grounds that certain court appointed consultants advising Judge Wolin in the Five Asbestos Cases did not qualify as "disinterested" because these consultants also actively represent future asbestos personal injury claimants in another asbestos chapter 11 case pending in the Third Circuit. The recusal motion was followed by the filing of an Emergency Petition for a Writ of Mandamus with the Third Circuit on October 24, 2003. Motions were subsequently filed in certain other of the Five Asbestos Cases seeking similar relief. On

November 5, 2003, the District Court issued an order staying all matters pending before it in the Five Asbestos Cases, as well as its participation in any matters pending before the Bankruptcy Court.

58.      The Bankruptcy Court agreed to go forward with the previously scheduled Initial Confirmation Hearing absent the participation of the District Court, and, on November 17 and 18, 2003, the Bankruptcy Court conducted the Initial Confirmation Hearing. On December 19, 2003, the Bankruptcy Court issued the Proposed Findings and Conclusions and a Proposed Confirmation Order. (Docket No.'s 6255 and 6256, respectively).

59.      Because of the statutory conditions for issuance of the Asbestos PI Permanent Channeling Injunction that forms the core of the Plan, however, confirmation of the Plan remained subject to entry of a final Confirmation Order by the District Court.

### The Unsecured Creditors' Committee's Objection and the Third Circuit Appeal

60.      On December 29, 2003 the Unsecured Creditors' Committee filed with the District Court the Unsecured Creditors' Committee's Objection -- its objections to the Proposed Findings and Conclusions issued by the Bankruptcy Court. No other objections to the Proposed Findings and Conclusions or to the Proposed Confirmation Order were filed. Pursuant to a stipulation that was approved by the Bankruptcy Court on January 15, 2004, responses to the Unsecured Creditors' Committee's Objection were required to be filed and served by February 13, 2004. On February 13, 2004, AWI, together with the Asbestos PI Claimants' Committee and the Future Claimants' Representative, filed a joint response to the Unsecured Creditors' Committee's Objection.

61.      On February 23, 2005, the District Court issued the District Court

Order denying confirmation of the Plan on the ground that the Plan failed to satisfy

section 1129(b) of the Bankruptcy Code because (i) Class 6, the class of general

unsecured creditors, voted to reject the Plan, and (ii) the Plan provided for the distribution

of warrants to the class of Equity Interest Holders (who are junior to the unsecured

creditors who voted to reject the Plan).  On March 4, 2005, AWI initiated the Third

Circuit Appeal.  On December 29, 2005, the Third Circuit issued an opinion affirming the

District Court Order.

### Filing of the Modified Plan

62.     On February 3, 2006, AWI and the representatives of the

Committees appeared at a status conference before the District Court.  At such status

conference, AWI and the representatives of the Committees made a joint motion for entry

of an order establishing a schedule for a hearing before the District Court on confirmation

of the Modified Plan.

63.     On February 8, 2006, the Court entered the Case Management

Order.  Among other things, the Case Management Order (i) established May 23, 2006 as

the date for the hearing to consider confirmation of the Plan, (ii) established a discovery

schedule in connection therewith, and (iii) provided that the District Court would preside

over the Confirmation Hearing.

64.     In accordance with the Case Management Order, on February 21,

2006, AWI filed the Modified Plan with the Bankruptcy Court, together with updated

versions of the Plan Exhibits.  (Docket No. 9116).  The Modified Plan (i) deletes

provisions in the Plan relating to the issuance of warrants to the holder of AWI's Equity

Interests, (ii) updates the Amended and Restated Articles of Incorporation and the

Amended and Restated By-Laws to reflect the passage of time and certain modifications to Pennsylvania law, (iii) updates the list identifying the proposed Board of Directors of Reorganized AWI, and (iv) updates the schedules of executory contracts annexed to the Plan (the "*Updated Contract Schedules*") to reflect the passage of time and the effect of the Bankruptcy Court's Order Pursuant to Bankruptcy Rules 2002(a)(7) and 3003(c)(3) (I) Fixing a Final Date for Filing Proofs of Claim Relating to Certain Contracts and Leases and (II) Approving the Proposed Forms of Proof of Claim and Notice (Docket No. 8594). The modifications reflected in the Modified Plan do not adversely affect the treatment of the Claim of any creditor who has not accepted in writing such modifications. Such modifications are included in the scope of the term "*Modifications*" as used hereinafter.

65.     Aside from the modifications described above, the Modified Plan does not otherwise substantively revise the Plan. Because, pursuant to the Modified Plan, no distribution shall be made in respect of the Equity Interests in AWI, Class 12 is impaired and deemed to reject the Modified Plan. AWI has not (and is not required to have) solicited votes to accept or reject the Modified Plan. As used hereinafter, the term "*Plan*" shall refer to the Modified Plan.

66.     Pursuant to the Case Management Order, and in accordance with the agreement reached among AWI, the Asbestos PI Claimants' Committee, the Future Claimants' Representative and the Unsecured Creditors' Committee, which is the only party that had an outstanding objection to the Plan, the sole objection that would be considered at the Confirmation Hearing is the Unsecured Creditors' Committee's contention that the Plan discriminates unfairly with respect to Class 6 under 11 U.S.C. §

1129(b) (the *"Unfair Discrimination Objection"*).  The Unsecured Creditors'

Committee, however, reserved the right to seek an order of the District Court suspending

the Confirmation Hearing or denying confirmation of the Plan based upon the prospect of

the likely passage of the Fairness in Asbestos Injury Resolution Act, although any party in

interest shall have the right to object to any such request.  The Unsecured Creditors'

Committee did not seek such an order.  Other than as expressly set forth above in this

paragraph 66, all other objections of the Unsecured Creditors' Committee to confirmation

of the Plan were waived or withdrawn, with prejudice.  Pursuant to the Unfair

Discrimination Decision and Order, the District Court overruled the Unfair

Discrimination Objection.

      67.    In compliance with the Disclosure Statement Order, the Voting

Procedures, and the Case Management Order, AWI caused to be transmitted by first class

mail, postage prepaid, notice of entry of the Case Management Order, the filing of the

Modified Plan, the time and place of the Confirmation Hearing, and other pertinent

information (the *"Confirmation Hearing Notice"*) to (i) each holder of a Claim against

AWI listed in the schedules as of the Voting Record Date, (ii) each holder of a Claim

represented by a proof of claim filed against AWI, (iii) each Entity listed on the Updated

Contract Schedules set forth in Exhibits "8.1," "8.2" or "8.4" to the Plan, (iv) each holder

of a Claim held by a Lender (as such term is defined in the Voting Procedures) as of the

Voting Record Date, (v) each holder of record of the Equity Interests in AWI, (vi) all

holders of Holdings Equity Securities, in accordance with the procedures set forth in

section 3.g of the Voting Procedures, (vii) counsel to all known holders of Asbestos

Personal Injury Claims and Indirect PI Trust Claims, and (viii) individual holders of

Asbestos Personal Injury Claims that completed and submitted a ballot with respect to the Plan. [Trumbull Affidavit, Docket No. 9157].

68. AWI provided or caused to be provided notice by publication (the *"Confirmation Hearing Publication Notice"*) of entry of the Case Management Order, the filing of the Modified Plan, the time and place of the Confirmation Hearing, and other pertinent information. The Confirmation Hearing Publication Notice was published (i) twice in *The New York Times, The Wall Street Journal* and *USA Today* (weekday editions of the national edition), and (ii) once in each of the newspapers and trade publications as set forth in items 6 and 7 of the Affidavit of Katherine Kinsella, dated May 19, 2006 [Docket No. 9445].

**The Asbestos PI**
**Permanent Channeling Injunction**

69. The Plan establishes the Asbestos PI Trust, to which all Asbestos Personal Injury Claims are being channeled.

70. The identities of the proposed trustees of the Asbestos PI Trust were disclosed (i) in Exhibit 7.2 of the Exhibit Volume and (ii) at the Initial Confirmation Hearing and, to the extent modified, at the Confirmation Hearing, and are as follows: Paul Knutti, Anne Ferazzi, Thomas Tully, Lewis Sifford, and Harry Huge. (Trafelet Affidavit, at ¶ 23). The identities of the proposed members of the Trustees' Advisory Committee (the *"TAC"*) were disclosed at the Initial Confirmation Hearing and, to the extent modified, at the Confirmation Hearing, and are as follows: John D. Cooney, Russell W. Budd, Steven Kazan, Joseph F. Rice, and Perry Weitz. (Trafelet Affidavit, at ¶ 25).

71. With respect to any Asbestos Personal Injury Claim that is allowed

by the Asbestos PI Trust in accordance with the Asbestos PI Trust Agreement and the

Asbestos PI Trust Distribution Procedures, such allowance shall establish the amount of

legal liability against the Asbestos PI Trust in the amount of the liquidated value of such

Claim, as determined in accordance with the Asbestos PI Trust Distribution Procedures.

       72.     The Asbestos PI Permanent Channeling Injunction is to be

implemented in connection with the Plan and the Asbestos PI Trust.

       73.     Section 1.91 of the Plan sets forth the identities of the PI Protected

Parties. Pursuant to Section 1.91(i)(iv) of the Plan, Travelers Casualty & Surety Co.,

Century Indemnity Co., Central National Insurance Company of Omaha, and International

Insurance Company, shall be entitled to protection as PI Protected Parties. The identity of

each PI Protected Party is readily identifiable (by name or as part of an identifiable group)

from the terms of the Plan and the Asbestos PI Permanent Channeling Injunction (which

is contained and set forth in the Confirmation Order). Specifically, the Asbestos PI

Permanent Channeling Injunction provides that it covers the following parties and such

parties are within the definition of the term PI Protected Parties:

        a.  AWI;

        b.  Reorganized AWI;

        c.  Holdings;

        d.  AWWD;

        e.  any Affiliate;

        f.  Interface Solutions, Inc., a corporation organized under the

           laws of Delaware, but only to the extent that Interface

           Solutions, Inc. is alleged to be directly or indirectly liable for

the conduct of, Claims against, or Demands on AWI,

Reorganized AWI, or the Asbestos PI Trust on account of

Asbestos Personal Injury Claims;

g.  any Entity that, pursuant to the Plan or after the Effective Date,

becomes a direct or indirect transferee of, or successor to, any

assets of AWI, Reorganized AWI, or the Asbestos PI Trust (but

only to the extent that liability is asserted to exist by reason of

it becoming such a transferee or successor);

h.  any Entity that, pursuant to the Plan or after the Effective Date,

makes a loan to Reorganized AWI or the Asbestos PI Trust or

to a successor to, or transferee of, any assets of AWI,

Reorganized AWI or the Asbestos PI Trust (but only to the

extent that liability is asserted to exist by reason of such Entity

becoming such a lender or to the extent of any pledge of assets

made in connection with such a loan is sought to be upset or

impaired); and

i.  any Entity to the extent he, she, or it is alleged to be directly or

indirectly liable for the conduct of, Claims against, or Demands

on AWI, Reorganized AWI or the Asbestos PI Trust on account

of Asbestos Personal Injury Claims by reason of one or more of

the following:

(i)     such Entity's ownership of a financial interest in

AWI, Reorganized AWI, a past or present affiliate

of AWI or Reorganized AWI (other than ACandS, Inc. f/k/a Armstrong Contracting and Supply Corp.), or a predecessor in interest of AWI or Reorganized AWI;

(ii)     such Entity's involvement in the management of AWI, AWWD, Holdings, an Affiliate, Reorganized AWI, or any predecessor in interest of AWI or Reorganized AWI;

(iii)     such Entity's service as an officer, director, or employee of AWI, Reorganized AWI, AWWD, Holdings, an Affiliate, any past or present affiliate of AWI or Reorganized AWI (other than ACandS, Inc. f/k/a Armstrong Contracting and Supply Corp.), any predecessor in interest of AWI or Reorganized AWI, or any Entity that owns or at any time has owned a financial interest in AWI or Reorganized AWI, any past or present affiliate of AWI or Reorganized AWI (other than ACandS, Inc. f/k/a Armstrong Contracting and Supply Corp.), or any predecessor in interest of AWI or Reorganized AWI.

(iv)     such Entity's provision of insurance to (a) AWI, (b) Reorganized AWI, (c) any past or present affiliate

of AWI or Reorganized AWI (other than ACandS,
Inc. f/k/a Armstrong Contracting and Supply Corp.),
(d) any predecessor in interest of AWI or
Reorganized AWI, or (e) any Entity that owns or at
any time has owned a financial interest in AWI or
Reorganized AWI, any past or present affiliate of
AWI or Reorganized AWI (other than ACandS, Inc.
f/k/a Armstrong Contracting and Supply Corp.), or
any predecessor in interest of AWI or Reorganized
AWI, but only to the extent that AWI, Reorganized
AWI, or the Asbestos PI Trust enters into a
settlement with such Entity that is approved by the
Bankruptcy Court and expressly provides that such
Entity shall be entitled to the protection of the
Asbestos PI Permanent Channeling Injunction as a
PI Protected Party; or

(v)     such Entity's involvement in a transaction changing
the corporate structure, or in a loan or other
financial transaction affecting the financial
condition, of AWI, AWWD, Holdings, an Affiliate,
Reorganized AWI, any past or present affiliate of
AWI or Reorganized AWI (other than ACandS, Inc.
f/k/a Armstrong Contracting and Supply Corp.), any

predecessor in interest of AWI or Reorganized

AWI, or any Entity that owns or at any time has

owned a financial interest in AWI or Reorganized

AWI, any past or present affiliate of AWI or

Reorganized AWI (other than ACandS, Inc. f/k/a

Armstrong Contracting and Supply Corp.), or any

predecessor in interest of AWI or Reorganized

'AWI.

74.     In light of the benefits provided, or to be provided, to the Asbestos

PI Trust on behalf of each PI Protected Party, the Asbestos PI Permanent Channeling

Injunction is fair and equitable with respect to the persons that might subsequently assert

Asbestos Personal Injury Claims against any PI Protected Party. (Trafelet Affidavit, at ¶

8).

75.     At the time of the order for relief with respect to AWI, AWI had

been named as a defendant in personal injury, wrongful death, and property damage

actions seeking recovery for damages allegedly caused by the presence of, or exposure to,

asbestos or asbestos-containing products. (Rodruan Affidavit, at ¶ 4).

76.     The Asbestos PI Trust, as of the Effective Date, will assume the

liabilities of AWI with respect to Asbestos Personal Injury Claims. (Section 1.4 of the

Asbestos PI Trust Agreement, Exhibit Volume, Docket No. 9116, Tab 3). Upon such

assumption, Reorganized AWI shall have no liability for any Asbestos Personal Injury

Claim.

77.     Pursuant to Section 10.1 of the Plan, on the later of the Effective

Date and the date by which all the Asbestos PI Trustees have executed the Asbestos PI

Trust Agreement, AWI will transfer to the Asbestos PI Trust the Asbestos PI Insurance

Asset and additional consideration, pursuant to the formula set forth in Section 10.1 of

the Plan, consisting of New Common Stock, Available Cash, and Plan Notes and/or 144A

Offering Proceeds.  Accordingly, the Asbestos PI Trust will be funded in whole or in part

by securities of Reorganized AWI and by the obligation of Reorganized AWI to make

future payments, including dividends.

      78.     Pursuant to Section 10.1 of the Plan, the Asbestos PI Trust will

own, as of the Effective Date (or a date thereafter in accordance with section 10.1 of the

Plan), 65.57% of the New Common Stock of Reorganized AWI.  Accordingly, the

Asbestos PI Trust is to own, or by the exercise of rights granted under the Plan would be

entitled to own if specified contingencies occur, a majority of the voting shares of

Reorganized AWI.

      79.     AWI is likely to be subject to substantial future Demands for

payment arising out of the same or similar conduct or events that gave rise to the Claims

that are addressed by the Asbestos PI Permanent Channeling Injunction.  (Testimony of

Dr. Mark A. Peterson; Testimony of B. Thomas Florence, Ph.D; Testimony of Dr. Letitia

Chambers).

      80.     The actual amounts, numbers, and timing of the future Demands

cannot be determined.  (Testimony of Dr. Mark A. Peterson; Testimony of B. Thomas

Florence, Ph.D; Testimony of Dr. Letitia Chambers).

      81.     Pursuit of the Demands referenced in Section 7.15(a)(x) of the Plan

outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to

deal equitably with Claims and future Demands.

82.     The terms of the Asbestos PI Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g) (4)(A) of the Bankruptcy Code, are set out in the Plan and in the Disclosure Statement. (Plan, Docket No. 9116, Sections 1.21, 7.1; Disclosure Statement, Docket No. 4801, pp. 86-89) .

83.     The Plan establishes, in Class 7 (Asbestos Personal Injury Claims), a separate class of the claimants whose Claims are to be addressed by the Asbestos PI Trust.

84.     The Future Claimants' Representative was appointed as part of the proceedings leading to issuance of the Asbestos PI Permanent Channeling Injunction for the purpose of protecting the rights of persons that might subsequently assert unknown Asbestos Personal Injury Claims and Demands that are addressed in the Asbestos PI Permanent Channeling Injunction and transferred to the Asbestos PI Trust.  The Future Claimants' Representative has fulfilled his duties, responsibilities, and obligations as the future representative in accordance with section 524(g) of the Bankruptcy Code.  (Trafelet Affidavit, ¶ 8).

85.     Identifying each PI Protected Party in the Asbestos PI Permanent Channeling Injunction is fair and equitable with respect to persons that might subsequently assert Demands against each such PI Protected Party, in light of the benefits provided, or to be provided, to the Asbestos PI Trust by or on behalf of any such PI Protected Party.  (Trafelet Affidavit, at ¶ 14).

86.     As set forth in the voting summary provided above, and in the

Trumbull Certification, Class 7 (Asbestos Personal Injury Claims) has voted, by at least
75 percent (75%) of those voting, in favor of the Plan.

87.     Pursuant to court orders or otherwise, the Asbestos PI Trust will
operate through mechanisms such as structured, periodic, or supplemental payments, pro
rata distributions, matrices, or periodic review of estimates of the numbers and values of
Asbestos Personal Injury Claims and Demands, or other comparable mechanisms, that
provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial
position to pay, Asbestos Personal Injury Claims and Demands that involve similar
claims in substantially the same manner. (Trafelet Affidavit, at ¶ 11).

88.     The District Court has jurisdiction to enter the Asbestos PI
Permanent Channeling Injunction under section 524(g) of the Bankruptcy Code and
sections 1334(a), (b), and (d) of title 28 of the United States Code.

89.     Section 524(g) of the Bankruptcy Code permits approval and entry
of the Asbestos PI Permanent Channeling Injunction, especially where, as here, such
injunction is essential to the formulation and implementation of the Plan as provided in
section 1123(a)(5) of the Bankruptcy Code, confers material benefits on AWI's estate, is
in the best interests of holders of Claims against AWI, and complies in all respects with
the requirements of section 524(g) of the Bankruptcy Code.

**The Claims Trading Injunction**

90.     Section 1.40 of the Plan provides for the Claims Trading
Injunction, which will permanently and forever stay, restrain, and enjoin any Entity from,
directly or indirectly, purchasing, selling, transferring, assigning, conveying, pledging, or
otherwise acquiring or disposing of any Asbestos Personal Injury Claim.  The Claims

Trading Injunction, however, will not apply to (i) the transfer of an Asbestos Personal

Injury Claim to the holder of an Indirect PI Trust Claim solely as a result of such holder's

satisfaction of such Asbestos Personal Injury Claim or (ii) the transfer of an Asbestos

Personal Injury Claim by will or under the laws of descent and distribution.  The Claims

Trading Injunction will also provide that any action taken in violation thereof will be void

*ab initio.*

### Discharge, Exculpation and Indemnification Provisions

91.     Section 11.2 of the Plan provides that the rights afforded in the

Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for

and in complete satisfaction, discharge, and release of all Claims and Equity Interests of

any nature whatsoever, including any interest accrued thereon from and after the

Commencement Date, against AWI, or its estate, assets, properties, or interests in

property.  Except as otherwise provided therein, on the Effective Date, all Claims against

and Equity Interests in AWI shall be satisfied, discharged, and released in full.

Reorganized AWI shall not be responsible for any obligations of AWI except those

expressly assumed by Reorganized AWI in the Plan.  All Entities shall be precluded and

forever barred from asserting against AWI, Reorganized AWI, their successors or assigns,

or their assets, properties, or interests in property any other or further Claims based upon

any act or omission, transaction, or other activity of any kind or nature that occurred prior

to the Effective Date, whether or not the facts of or legal bases therefor were known or

existed prior to the Effective Date.

92.     Section 11.6 of the Plan provides that none of Reorganized AWI,

any of the members of the Asbestos PI Claimants' Committee, the Future Claimants'

Representative, any of the members of the Unsecured Creditors' Committee, any members of the Asbestos PD Committee, AWWD, Holdings, or any of their officers, directors, employees, or agents shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Case, including, without limitation, the commencement of the Chapter 11 Case, the negotiation of the Plan, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Plan. (Plan, Docket No. 9116, Section 11.6).

93.     Section 8.6 of the Plan provides that the obligations of AWI to indemnify and reimburse persons who are or were directors, officers, or employees of Holdings, AWWD, or AWI on the Commencement Date or at any time thereafter against and for any obligations (including, without limitation, fees and expenses incurred by the board of directors of Holdings, or the members thereof, in connection with the Chapter 11 Case) pursuant to articles of incorporation, codes of regulations, bylaws, applicable state law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Commencement Date. In furtherance of the foregoing, Reorganized AWI will maintain insurance for the benefit of such directors, officers, or employees at levels no less favorable than those existing as of the date of entry of the Confirmation Order for a

period of no less than four years following the Effective Date. (Plan, Docket No. 9116, Section 8.6).

94.    The discharge, exculpation and indemnification provisions of the Plan were negotiated at arm's-length and are integral to the Plan. Without such provisions, the Plan would not have been agreed to by the parties in interest. (Rodruan Affidavit, at ¶ 6).

**Feasibility of the Plan**

95.    Cash flow projections for Reorganized AWI are set forth in Exhibit "C" to the Disclosure Statement accompanying the Plan (the "*Original Projections*"). At the Initial Confirmation Hearing, AWI presented projections, which set forth lower estimates of future cash flow than are contained in the Original Projections (the "*Revised Projections*"). (Rodruan Affidavit, Exhibit "A"). The Revised Projections are supported by reasonable assumptions and, therefore, are a reasonable estimate of Reorganized AWI's future performance. (Rodruan Affidavit, at ¶ 25; Aronson Affidavit, at ¶ 9).

96.    Based upon the foregoing and the fact that, since the Initial Confirmation Hearing, there has been no change in the assets or operations of AWI that would have a material impact on AWI's ability to meet its ongoing obligations and commitments, including all obligations under the Plan, the Plan meets the feasibility test of section 1129(a)(11) of the Bankruptcy Code.

**The Provisions Governing
Distributions Under the Plan
Are Fair and Reasonable**

97.    Sections 7.7, 7.8, and 7.11 of the Plan contain provisions governing distributions under the Plan, and such provisions are fair and reasonable.

**Miscellaneous**

        98.     To the extent any of the foregoing findings of fact constitute conclusions of law, they are adopted as such.

## CONCLUSIONS OF LAW

**Jurisdiction and Venue**

        1.     The Bankruptcy Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 1334 and 157.

        2.     As a result of the withdrawal of the reference to the District Court with respect to confirmation of the Plan and issuance of the Asbestos PI Permanent Channeling Injunction, the District Court has jurisdiction to consider confirmation of the Plan pursuant to 28 U.S.C. §§ 1334 and 157 .

        3.     Venue of the Chapter 11 Case in this district was proper as of the Commencement Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.

        4.     AWI is an entity qualified to be a debtor under section 109 of the Bankruptcy Code, and AWI is a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

**Burden of Proof**

        5.     AWI has satisfied its burden of producing evidence that the Plan complies with sections 1129(a), 1129(b) (to the extent applicable), 1129(d), and 524(g) of the Bankruptcy Code.

**Solicitation**

        6.     All persons required to receive notice of the Initial Confirmation

Hearing and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Disclosure Statement Order and the Case Management Order and have had an opportunity to appear and be heard with respect thereto.

7.    AWI has solicited and tabulated votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

8.    Following the dissemination of the Solicitation Packages as provided for in the Disclosure Statement Order, the Voting Agents properly assisted AWI in soliciting votes for the Plan from the impaired classes of Claims and Equity Interests and appropriately solicited the votes of the impaired classes of Claims and Equity Interests in good faith and in a manner consistent with the Bankruptcy Code.

9.    The Plan was voted on by all Classes of impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

**The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code**

10.    Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code. The Plan satisfies all the applicable provisions of the Bankruptcy Code, and, as required by Bankruptcy Rule 3016 (a), the Plan is dated and identifies AWI as the proponent of the Plan. Moreover, the Plan and Disclosure Statement describe the Asbestos PI Permanent Channeling Injunction, including the identities of the PI Protected Parties, and the Claims Trading Injunction, specifically and in conspicuous bold language, in compliance with the requirements of Bankruptcy Rule 3016(c).

A.    **Due and Proper Notice of the Disclosure**

**Statement Hearing and the Confirmation**
**Hearing Was Given to All Parties in Interest**

11.     The District Court has taken judicial notice of the Affidavits of
Mailing, the Certifications of Voting, the Certificate of Publications, the Confirmation
Hearing Notice and the Confirmation Hearing Publication Notice and finds and concludes
that (a) AWI complied in all material respects with Bankruptcy Rules 2002 and 3017(a)
in providing notice of the Disclosure Statement Hearing in the method and manner as
prescribed therein, (b) AWI complied in all material respects with the Disclosure
Statement Order in providing notice of the Initial Confirmation Hearing in the method
and manner as prescribed in the Disclosure Statement Order, and (c) AWI complied in all
material respects with the Case Management Order in providing notice of the
Confirmation Hearing.  All Entities entitled and required to receive notice of the
Disclosure Statement Hearing, the Initial Confirmation Hearing and the Confirmation
Hearing pursuant to the Bankruptcy Code, applicable non-bankruptcy law, and the orders
of the Bankruptcy Court and the District Court have received due, proper, timely and
adequate notice of such hearings and have had an opportunity to appear at and be heard at
such hearings. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1957).

B.     **The Plan Satisfies the Requirements of**
**Section 1123(a)(1) of the Bankruptcy Code**

12.     Section 1123(a)(1) of the Bankruptcy Code provides that a plan
must designate classes of claims and interests.  Section 3.1 of the Plan adequately and
properly classifies all Claims and Equity Interests required to be so classified and,
accordingly, satisfies section 1123(a)(1) of the Bankruptcy Code.  Classes of
Administrative Expenses and Priority Tax Claims are not required to be designated

pursuant to section 1123(a)(1) of the Bankruptcy Code.

C.  **The Plan Satisfies the Requirements
    of Section 1122 of the Bankruptcy Code**

13.  Section 1122(a) of the Bankruptcy Code provides that a plan may

place a claim or interest in a particular class if such claim or interest is substantially

similar to the other claims or interests of such class.  A classification structure satisfies

section 1122 of the Bankruptcy Code when a reasonable basis exists for the structure, and

the claims or interests within each particular class are substantially similar.  *See In re*

*Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987); *In re U.S. Truck Co.*, 800

F.2d 581, 586 (6th Cir. 1986); *In re LeBlanc*, 622 F.2d 872, 879 (5th Cir. 1986).

14.  The Bankruptcy Code does not require that all claims with equal

priority be classified in the same class.  Consequently, it is appropriate to classify

Asbestos Personal Injury Claims (including Indirect PI Trust Claims) in a separate class

from Unsecured Claims.  Because all Asbestos Personal Injury Claims in Class 7

(including Indirect PI Trust Claims) relate, directly or indirectly, to AWI's liability for

asbestos-related personal injury and wrongful death claims, whether arising under tort law

(as is the case with direct Asbestos Personal Injury Claims and may be the case with

Indirect PI Trust Claims) or under contract (as may be the case with certain direct

Asbestos Personal Injury Claims and certain Indirect PI Trust Claims), a reasonable basis

exists for the classification of the Asbestos Personal Injury Claims together in a single

class.  Moreover, section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code requires that

the Plan establish a separate class or classes of the Claimants whose Claims are to be

addressed by the Asbestos PI Trust.

15.  In accordance with section 1122(a) of the Bankruptcy Code,

Section 3.1 of the Plan separately classifies Claims against and Equity Interests in AWI together with Claims against or Equity Interests that are substantially similar to the other Claims or Equity Interests of such class. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code.

16.     Section 1122(b) of the Bankruptcy Code provides that a plan may designate a separate class of claims consisting of unsecured claims that are less than or reduced to an amount the court approves as reasonable and necessary for administrative convenience. Section 3.2(c) of the Plan provides treatment for holders of Convenience Claims. The convenience class established in Section 3.2(c) of the Plan is reasonable and necessary for administrative convenience and, therefore, the classification of Convenience Claims in Section 3.2(c) satisfies section 1122(b) of the Bankruptcy Code.

D.     **The Plan Satisfies the Requirements of Section 1123(a)(2) of the Bankruptcy Code**

17.     Section 1123(a)(2) of the Bankruptcy Code provides that a plan must specify any class of claims or interests that is not impaired under the Plan. Pursuant to Section 3.1 of the Plan, each of Classes 3, 6, 8, and 12 is identified as impaired, and each of Classes 1, 2, 4, 5, 9, 10, and 11 is identified as unimpaired. As a result of the EPA Settlement, Class 8 is unimpaired. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

E.     **The Plan Satisfies the Requirements of Section 1123(a)(3) of the Bankruptcy Code**

18.     Section 1123(a)(3) of the Bankruptcy Code provides that a plan must specify the treatment of each impaired class of claims and equity interests. Article III of the Plan specifies the treatment of each impaired class of Claims and Equity

Interests.  Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

F.  **The Plan Satisfies the Requirements
of Section 1123(a)(4) of the Bankruptcy Code**

19.  Section 1123(a)(4) of the Bankruptcy Code requires a plan to

provide the same treatment for each claim or interest of a particular class, unless the

holder of the claim or interest agrees to less favorable treatment of such particular claim

or interest.  The Plan provides the same treatment for each Claim or Equity Interest in

each class.  Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

G.  **The Plan Satisfies the Requirements of
Section 1123(a)(5) of the Bankruptcy Code**

20.  Section 1123(a)(5) of the Bankruptcy Code provides that a plan

must provide adequate means of implementation of the plan.  The various provisions of

the Plan provide adequate means for implementation of the Plan.  Without limiting the

foregoing, Article VII of the Plan provides for, among other things, (i) the creation of the

Asbestos PI Trust, (ii) the adoption of the Amended and Restated Articles of

Incorporation and Amended and Restated By-Laws by Reorganized AWI, (iiii) the

effectuation of the corporate reorganization transactions set forth in Section 7.23 of the

Plan and the entry into the exit financing facility, (iv) the listing of the New Common

Stock, (v) the adoption of the Stockholder and Registration Rights Agreement and the

New Long-Term Incentive Plan, (vi) the distribution of property of AWI's estate to the

creditors entitled to receive Distributions under the Plan and the Distribution to the

Asbestos PI Trust, and (vii) the funding of the payments due on the Effective Date.  In

addition, Article VIII of the Plan provides for, *inter alia,* the assumption and rejection of

various contracts and unexpired leases of AWI, and Article X of the Plan provides for the

creation and funding of the Asbestos PI Trust.  Accordingly, the Plan satisfies section

1123(a)(5) of the Bankruptcy Code.

> H.    **The Plan Satisfies the Requirements of
>        Section 1123(a)(6) of the Bankruptcy Code**

21.    Section 1123(a)(6) of the Bankruptcy Code requires a plan to

provide for the inclusion in the charter of the debtor, if the debtor is a corporation, or of

any corporation to which the debtor transfers all or any part of the debtor's estate or with

which the debtor has merged or consolidated, of a provision prohibiting the issuance of

non-voting equity securities.  In furtherance of Section 7.4 of the Plan, the Amended and

Restated Articles of Incorporation of Reorganized AWI contain provisions prohibiting the

issuance of non-voting equity securities.  (Exhibit 1.13 to the Plan).  Accordingly, the

Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

22.    Section 1123(a)(6) is not applicable to the Asbestos PI Trust

because (i) the Asbestos PI Trust does not have a corporate charter, and (ii) the Asbestos

PI Trust is not a corporation to which AWI or Reorganized AWI is transferring, or has

transferred, all or any part of its estate (within the meaning of section 1123(a)(6) of the

Bankruptcy Code) or with which AWI or Reorganized AWI has merged or consolidated

or will merge or consolidate.

> I.    **The Plan Satisfies the Requirements of
>        Section 1123(a)(7) of the Bankruptcy Code**

23.    Section 1123(a)(7) of the Bankruptcy Code requires that the

manner of selection of any director, officer or trustee of the reorganized debtor, or any

successor to such officer, director or trustee, be consistent with the interests of creditors

and equity security holders and with public policy.  In furtherance of Section 7.21 of the

Plan, AWI has disclosed the identities of those persons who will serve, on the Effective Date, as officers of Reorganized AWI. (Rodruan Affidavit, at ¶ 21) ("AWI's officers immediately prior to the Effective Date will serve as officers of Reorganized AWI.").

24.     On the Effective Date, the board of directors of Reorganized AWI will consist of those persons identified in Exhibit "7.21" to the Plan and disclosed by AWI at the Confirmation Hearing.  Following the Effective Date, and subject to the provisions of any existing employment agreements and the requirements of applicable non-bankruptcy law, the officers of Reorganized AWI immediately prior to the Effective Date will serve as the officers of Reorganized AWI.  The continuation in office of such individuals is consistent with the interests of creditors and with public policy.  (Rodruan Affidavit, at ¶ 22).  Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

25.     Although section 1123(a)(7) of the Bankruptcy Code does not apply to either the Asbestos PI Trustees or the members of the TAC established under the Asbestos PI Trust Agreement, AWI has disclosed the identities of the Asbestos PI Trustees and the members of the TAC, as well as the role of the Future Claimants' Representative under the Asbestos PI Trust Agreement.

J.     **Section 1123(b)(2) of the Bankruptcy Code:**
       **The Rejection and Assumption of Executory**
       **Contracts and Unexpired Leases**
       **Are in the Best Interests of AWI's Estate**

26.     Pursuant to section 1123(b)(2) of the Bankruptcy Code, a plan may provide for the rejection or assumption and assignment of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of the Bankruptcy Code.

27.     Under section 365 of the Bankruptcy Code, a debtor may assume an executory contract or unexpired lease if (i) outstanding defaults under the contract or lease have been cured under section 365(b)(1) of the Bankruptcy Code, and (ii) the debtor's decision to assume such executory contract or unexpired lease is supported by valid business justifications. *See, e.g., Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 53 (Bankr. D. Del. 2001).

28.     Section 8.1 of the Plan provides for the assumption of the executory contracts listed on Exhibit "8.1" to the Plan. The assumption of executory contracts and unexpired leases pursuant to Section 8.1 of the Plan, subject to the occurrence of the Effective Date, (i) is in the best interests of AWI, its estate, and creditors, (ii) is based upon and within AWI's sound business judgment, (iii) is necessary to the implementation of the Plan, and (iv) satisfies the requirements of section 365(a) of the Bankruptcy Code.

29.     Exhibit "8.2" to the Plan sets forth contracts and leases that, to the extent they constitute executory contracts and unexpired leases, AWI wishes to reject, subject to the occurrence of and effective as of the Effective Date.

30.     Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a) of the Bankruptcy Code. *See N.L.R.B. v. Bildisco*, 465 U.S. 513, 523 (1984); *Sharon Steel*, 872 F.2d at 39-40; *Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (D. Del. 1995); *In re III Enterprises, Inc. V*, 163 B.R. 453, 469 (Bankr. E.D. Pa.), *aff'd sub nom, Pueblo*

*Chem., Inc. v. III Enter., Inc. V,* 169 B.R. 551 (E.D. Pa. 1994); *In re Patterson,* 119 B.R.

59, 60 (E.D. Pa. 1990); *Pinnacle Brands,* 259 B.R. at 53. To the extent that sound

business reasons justify the debtor's rejection of a particular lease or contract, rejection

should be approved.

   31. The rejection of the executory contracts and unexpired leases set

forth in Section 8.2 of the Plan, subject to the occurrence of and effective as of the

Effective Date, (i) is in the best interests of AWI, its estate and creditors, (ii) is based

upon and within AWI's sound business judgement, (iii) is necessary to the

implementation of the Plan, and (iv) satisfies the requirements of section 365(a) of the

Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1123(b)(2)

of the Bankruptcy Code.

   K. **The Plan Satisfies Section**
     **1123(b)(3) of the Bankruptcy Code**

   32. Section 1123(b)(3)A) of the Bankruptcy Code permits a plan to

provide for "the settlement or adjustment of any claim or interest belonging to the debtor

or to the estate." Section 5.2 of the Plan provides for the amendment of the Claims

Settlement Guidelines as set forth on Exhibit "1.39" to the Plan. Such amendment is (i)

fair and reasonable, (ii) in the best interests of AWI, its estate, and its creditors, and (iii)

necessary to the implementation of the Plan. To the extent applicable, Section 5.2 of the

Plan complies with section 1123(b)(3)(A) of the Bankruptcy Code.

   33. Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan

may provide for "the retention and enforcement by the debtor, by the trustee, or by a

representative of the estate appointed for such purpose, of any such claim or interest."

Section 11.3 of the Plan provides that any rights, claims, or causes of action accruing to

AWI pursuant to the Bankruptcy Code or pursuant to any statute or legal theory,

including, without express or implied limitation, any avoidance or recovery actions under

sections 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, and (except

as provided in Articles X and XI of the Plan) any rights to, claims or causes of action for

recovery under any policies of insurance issued to or on behalf of AWI shall remain

assets of AWI's estate and, on the Effective Date, shall be transferred to Reorganized

AWI.  Reorganized AWI shall be deemed the appointed representative to, and may,

pursue, litigate, and compromise and settle any such rights, claims, or causes of action, as

appropriate, in accordance with what is in the best interests of and for the benefit of

Reorganized AWI.  Such section is (i) fair and reasonable, (ii) in the best interests of

AWI, its estate, and its creditors, (iii) necessary to the implementation of the Plan, and

(iv) complies with section 1123(b)(3)(B) of the Bankruptcy Code.

      34.     Accordingly, the Plan satisfies section 1123(b)(3) of the

Bankruptcy Code.

    L.    **The Transfers of Properties Under the Plan**
         **Are Governed by the Exemptions Provided**
         **in Section 1146(c) of the Bankruptcy Code**

      35.     Pursuant to section 1146(c) of the Bankruptcy Code, the issuance,

transfer, or exchange of notes or equity securities under the Plan, the creation of any

mortgage, deed of trust, or other security interest, the making or assignment of any lease

or sublease, or the making or delivery of any deed or other instrument of transfer under,

in furtherance of, or in connection with the Plan, including, without express or implied

limitation, any liens granted in connection with the exit finance facility referred to in

Section 7.16(g) of the Plan, shall not be subject to any sales and use, stamp, real estate

transfer, mortgage recording, or other similar tax. *See Baltimore County, Md. v.*

*Hechinger Liquidation Trust (In re Hechinger Inv. Co. of Delaware Inc.)*, 335 F.3d 243,

252-53 (3d Cir. 2003); *In re GST Telecom, Inc.*, 2002 WL 442233 (D. Del. 2002).

**AWI Has Satisfied Section**
**1129(a)(2) of the Bankruptcy Code**

   36. Section 1129(a)(2) of the Bankruptcy Code requires the proponent

of a plan to comply with all of the applicable provisions of the Bankruptcy Code.  AWI

has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying

section 1129(a)(2) of the Bankruptcy Code.  Specifically, (i) AWI is a proper debtor

under section 109 of the Bankruptcy Code, (ii) AWI has complied with applicable

provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders

of the Bankruptcy Court, (iii) AWI has complied with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Voting Procedures, and the Disclosure

Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and

related documents and notices and in soliciting and tabulating votes on the Plan, and (iv)

AWI has complied with applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, applicable non-bankruptcy law, the local Bankruptcy Rules and the specific rules

of the Bankruptcy Court throughout the Chapter 11 Case.

   37. AWI has complied with the operating guidelines and financial

reporting requirements enacted by the United States Trustee by (i) timely filing all

operating reports and financial statements and (ii) maintaining and providing proof of

insurance.

   38. AWI has paid all statutory fees required to be paid during the

Chapter 11 Case and has filed all fee statements required to be filed.

39.    AWI has timely filed with the Court all schedules, lists of executory contracts, and statements of financial affairs.

40.    Sufficient and timely notice of the Confirmation Hearing and all other hearings in the Chapter 11 Case has been given to holders of Claims and Equity Interests and all other parties in interest to whom notice was required to have been given.

41.    The solicitation of votes was made following approval and dissemination of the Disclosure Statement to holders of Claims and Equity Interests in classes that are impaired and entitled to vote and was made in good faith and in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. The Ballots of holders of Claims were properly solicited and tabulated.

42.    AWI has complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court and has fulfilled all of the obligations and duties owed to its estate and creditors as required by and set forth in sections 1107 and 1108 of the Bankruptcy Code. Accordingly, AWI has satisfied section 1129(a)(2) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of**
**Section 1129(a)(3) of the Bankruptcy Code**

43.    Section 1129(a)(3) of the Bankruptcy Code states that a plan must be proposed in good faith and not by any means forbidden by law. *See Solow v. PPI Enters.(U.S.) (In re PPI Enters.(U.S.))*, 324 F.3d 197, 211-12 (3d Cir. 2002); *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000), *citing In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986) (quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984)); *In re SGL Carbon Corp.*, 200 F.3d 154, 162 n.10 (3d Cir. 1999); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 609 (Bankr. D. Del. 2001).

44.    The Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan has been proposed with the legitimate and honest purpose of reorganizing AWI's business and affairs, restructuring its asbestos-related liability, and maximizing the value available for distribution to creditors. Further, the discharge, exculpation and indemnification provided in Sections 11.2, 11.6 and 8.6 of the Plan have been agreed to in good faith and are consistent with sections 105 and 1129 of the Bankruptcy Code. Thus, AWI has complied with the "good faith and not by any means forbidden by law" requirement of section 1129(a)(3) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of
Section 1129(a)(4) of the Bankruptcy Code**

45.    Section 1129(a)(4) of the Bankruptcy Code requires that all payments made or to be made by the plan proponent, by the debtor or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, have been approved by, or are subject to the approval of, the court as reasonable.

46.    All payments made by AWI out of the ordinary course of business have been approved by the Bankruptcy Court, and all payments made or to be made to professionals retained by order of the Bankruptcy Court will be, as set forth in Section 2.2 of the Plan, subject to review and approval by the Bankruptcy Court or the District Court upon final application under section 330, 331 or 503(b) of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of
Section 1129(a)(5) of the Bankruptcy Code**

47.    Section 1129(a)(5) of the Bankruptcy Code requires the proponent

of a plan of reorganization to disclose the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor or a successor to the debtor under the plan, and to show that the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy. Section 1129(a)(5) of the Bankruptcy Code also requires the proponent of a plan of reorganization to disclose the identity of any insider that will be employed or retained by the reorganized debtor and the nature of any compensation for such insider.

48.     AWI has disclosed in the Disclosure Statement, the exhibits to the Plan, and through evidence presented at the Confirmation Hearing the identities and nature of compensation of those persons who will serve, on the Effective Date of the Plan, as directors and officers of Reorganized AWI. Moreover, although the identities of the Asbestos PI Trustees are not required to be disclosed, AWI has also disclosed the identities of the Asbestos PI Trustees in Exhibit 7.2 to the Plan and the members of the TAC through evidence presented at the Initial Confirmation Hearing and/or the Confirmation Hearing. *See In re Eagle-Picher Indus., Inc.*, 1996 U.S. Dist. LEXIS 17160, *29-30 (S.D. Ohio 1996) ("The trustees of the § 524(g) trust in this case are not subject to the statutory provision . . . They are not directors, officers or voting trustees of the debtor."). Based on, among other things, the experience, education and/or particular skills of each and the manner of selection of each and any successors thereto, the appointment or continuation in office of such individuals is consistent with the interests of creditors and with public policy. (Rodruan Affidavit, at ¶¶ 18-22; Trafelet Affidavit, at

¶ 24). Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

**Section 1129(a)(6) of the Bankruptcy
Code Is Not Applicable to the Plan**

49.     Section 1129(a)(6) of the Bankruptcy Code requires a debtor to obtain the approval of any governmental regulatory commission, with jurisdiction over the debtor, with respect to any rate changes provided for in the debtor's plan of reorganization. The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency. Section 1129(a)(6) of the Bankruptcy Code is accordingly not applicable.

**The Plan Satisfies the Requirements of
Section 1129(a)(7) of the Bankruptcy Code**

50.     Section 1129(a)(7) of the Bankruptcy Code requires each creditor or equity interest holder in an impaired class to accept the plan of reorganization or receive or retain under such plan on account of such claim or interest property of a value, as of the effective date of such plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

51.     Based upon the evidence adduced at the Initial Confirmation Hearing, the Plan satisfies the "best interest" test under section 1129(a)(7) of the Bankruptcy Code.

**The Plan Does Not Satisfy the Requirements
of Section 1129(a)(8) of the Bankruptcy Code**

52.     Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each class of claims or interests under a plan, such class either has accepted the plan or is not impaired under the plan. According to the Trumbull Certification, all

classes of impaired Claims that were entitled to vote on the Plan, other than Class 6
(General Unsecured Claims other than Convenience Claims), have voted to accept the
Plan. The Claims in each of Classes 1, 2, 4, 5, 8, 9, 10 and 11 are unimpaired under the
Plan and, pursuant to section 1126(f) of the Bankruptcy Code, holders of unimpaired
Claims in such classes are deemed to have accepted the Plan. Although the Plan does not
comply with section 1129(a)(8) of the Bankruptcy Code because of the rejection of the
Plan by Class 6 and the deemed rejection of the Plan by Class 12, AWI seeks
confirmation of the Plan pursuant to 1129(b) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of
Section 1129(a)(9) of the Bankruptcy Code**

53.     Section 1129(a)(9) of the Bankruptcy Code provides for certain
mandatory treatment of claims entitled to priority under the Bankruptcy Code.

54.     As required by section 1129(a)(9)(A) of the Bankruptcy Code,
Section 2.1 of the Plan provides that each holder of an Allowed Administrative Expense
shall be paid on account of such Allowed Claim, in full, in cash, on the Effective Date of
the Plan; *provided, however*, that Administrative Expenses of the type specified in
Section 1.1(c)(i) of the Plan shall be assumed and paid by Reorganized AWI in
accordance with the terms and conditions of the particular transactions and any
agreements relating thereto. In addition, pursuant to Section 2.2 of the Plan, all payments
made or to be made (as Administrative Expenses) to professionals retained by orders of
the Court will be subject to review and approval by the Bankruptcy Court or the District
Court upon final application under section 330, 331 or 503(b) of the Bankruptcy Code.

55.     Consistent with section 1129(a)(9)(B) of the Bankruptcy Code,
Section 3.2 of the Plan provides that each holder of an Allowed Priority Claim shall be

paid the Allowed Amount of its Allowed Priority Claim, in full, in cash, in an amount equal to such Claim, on the later of the Effective Date and as soon as reasonably practicable after the date such Claim becomes Allowed.

56.     Consistent with section 1129(a)(9)(C) of the Bankruptcy Code, Section 2.4 of the Plan provides that each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim either (a) in full, in cash, on the latest of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law or (b) upon such other terms as may be mutually agreed upon between each holder of a Priority Tax Claim and Reorganized AWI.

57.     AWI has sufficient cash to fund payments of Allowed Administrative Expenses, Allowed Priority Claims, and Allowed Priority Tax Claims. Accordingly, the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of
Section 1129(a)(10) of the Bankruptcy Code**

58.     Section 1129(a)(10) of the Bankruptcy Code provides that at least one impaired class of claims must accept a plan of reorganization, determined without including any acceptance of such plan by any insider.

59.     The Plan satisfies section 1129(a)(10) of the Bankruptcy Code because Classes 3 and 7, which are impaired classes, have voted to accept the Plan by the requisite majorities. Because Classes 3 and 7 contain no insiders (Rodruan Affidavit, at ¶ 12), at least one impaired class entitled to vote on the Plan has voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by insiders.

**The Plan Satisfies the Requirements of**
**Section 1129(a)(11) of the Bankruptcy Code**

         60.      Section 1129(a)(11) of the Bankruptcy Code requires that a plan be

feasible and that the debtor or its successor under such plan would not likely require

liquidation or further financial reorganization, except as provided under such plan. *See In*

*re NII Holdings,* 288 B.R. 356, 364 (D. Del. 2002); *In re Am. Family Enters.*, 256 B.R.

377, 404-05 (D.N.J. 2000); *Corestates Bank, N.A. v. United Chem. Tech., Inc.*, 202 B.R.

33, 41-42 (E.D. Pa. 1996); *Moody v. Sec. Pacific Bus. Credit, Inc.*, 85 B.R. 319, 346

(W.D. Pa. 1988), *citing Chase Manhattan Mortgage & Realty Trust v. Bergman (In re*

*Bergman)*, 585 F.2d 1171, 1179 (2d Cir. 1978)).

         61.      As set forth above in the Findings of Fact, Reorganized AWI will

be able to satisfy its obligations under the Plan after confirmation. AWI has carefully

structured the Plan and the Asbestos PI Trust to provide appropriate mechanisms and

funding to consummate the Plan with a high degree of certainty that Reorganized AWI

will be able to meet its obligations under the Plan.

         62.      Thus, based upon the Findings of Fact and the Conclusions of Law

contained herein, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code, and

Reorganized AWI will not likely require liquidation or further financial reorganization

after confirmation.

**The Plan Satisfies the Requirements of**
**Section 1129(a)(12) of the Bankruptcy Code**

         63.      Section 1129(a)(12) of the Bankruptcy Code requires that all fees

payable under section 1930 of title 28 of the United States Code, as determined by the

court at the hearing on confirmation of the plan, either have been paid or the plan

provides for the payment of all such fees on the effective date of the plan.

64.     Section 11.1 of the Plan provides for the payment on the Effective Date (or as soon as practicable thereafter) of all fees payable under section 1930 of title 28 of the United States Code. All post-consummation fees that are due and payable will be paid by Reorganized AWI until the Chapter 11 Case is closed pursuant to section 350 (a) of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of**
**Section 1129(a)(13) of the Bankruptcy Code**

65.     Section 1129(a)(13) of the Bankruptcy Code requires the continuation of payment of all retiree benefits, at the level established pursuant to section 1114 of the Bankruptcy Code at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

66.     Section 8.7 of the Plan provides that, on and after the Effective Date, Reorganized AWI shall continue to pay all retiree benefits (within the meaning of section 1114 of the Bankruptcy Code) for the duration of the period AWI has obligated itself to provide such benefits. Accordingly, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of**
**Section 1129(b) of the Bankruptcy Code**

67.     As set forth in the Unfair Discrimination Decision and Order, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Class 6. With respect to Class 12, the Plan satisfies section 1129(b) of the Bankruptcy Code because no holder of any interest that is junior to the Equity Interests in Class 12 will receive or

retain under the Plan on account of such junior interest any property.

**The Plan Satisfies the Requirements of**
**Section 1129(d) of the Bankruptcy Code**

68.    Section 1129(d) of the Bankruptcy Code provides that, on request

of a governmental unit, the court may not confirm a plan if its principal purpose is the

avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of

1933, as amended.  The principal purpose of the Plan is not avoidance of taxes or

avoidance of the requirements of section 5 of the Securities Act of 1933, as amended, and

there has been no objection to the Plan by any governmental unit alleging any such

avoidance. (Rodruan Affidavit, at ¶ 8).  Accordingly, the Plan satisfies section 1129(d) of

the Bankruptcy Code.

**The Modifications Satisfy the Requirements**
**of Section 1127 of the Bankruptcy Code**
**and Rule 3019 of the Bankruptcy Rules**

69.    The Modifications do not adversely change the treatment of the

Claim of any creditor.  To the contrary, the Modifications clarify certain provisions of the

Plan and preserve the Plan, as negotiated, and the rights of all parties as set forth therein.

70.    The Modifications comply in all respects with section 1127 of the

Bankruptcy Code, Bankruptcy Rule 3019, and all other provisions of the Bankruptcy

Code.  Sufficient and adequate notice of the Modifications was provided, and no

additional disclosure or notice is required with respect to the Modifications.

**The Asbestos PI Channeling**
**Injunction and the Establishment of**
**the Asbestos PI Trust Comply with**
**Section 524(g) of the Bankruptcy Code**

71.    The Plan and its Exhibits are a fair, equitable and reasonable

resolution of the liabilities of AWI for Asbestos Personal Injury Claims.

72.     The Asbestos PI Trust satisfies the requirements for a trust under section 524(g) of the Bankruptcy Code.

73.     The Asbestos PI Permanent Channeling Injunction is consistent with sections 524(g) and 1129 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, and the Asbestos PI Permanent Channeling Injunction is in the best interests of AWI's estate. *See In re Johns-Manville Corp.*, 801 F.2d 60, 63-64 (2d Cir. 1986). *See also, In re Eagle-Picher Indus., Inc.*, 1996 U.S. Dist. LEXIS 17160, *26-28 (S.D. Ohio 1996). Because Indirect PI Trust Claims, including those arising under contract, relate to direct Asbestos Personal Injury Claims, they are appropriately channeled to the Asbestos PI Trust and have historically been channeled to trusts established in connection with asbestos related chapter 11 cases. *See, e.g., In re Forty-Eight Insulations*, 115 F.3d 1294 (7th Cir. 1997); *In re The Babcock & Wilcox Co., et al.*, 2001 U.S. Dist. LEXIS 9660, *22 (E.D. La. 2001); *In re Eagle-Picher Indus., Inc.*, 1996 U.S. Dist. LEXIS 17160, *26-28 (S.D. Ohio 1996).

74.     Moreover, in addition to the protection afforded the debtor or transferees or successors of the debtor under the plan, section 524(g)(4) sets forth the broad categories of third parties who, if alleged to be directly or indirectly liable for Asbestos Personal Injury Claims, may be beneficiaries of the Asbestos PI Permanent Channeling Injunction. Generally, these categories include the following:

(i) a party owning a financial interest in the debtor, a past or present affiliate of the debtor, or a predecessor in interest of the debtor (11 U.S.C. § 524 (g)(4)(A)(ii)(I));

(ii) a party who has been involved in the management of the debtor or a
predecessor in interest of the debtor, or served as an officer, director or employee
of the debtor or a related party (11 U.S.C. § 524(g)(4)(A)(ii)(II));

(iii) an insurer of the debtor or a related party (11 U.S.C. § 524(g)(4)(A)(ii)
(III)); and

(iv) third parties who have had involvement in a transaction changing the
corporate structure, or in a loan or other financial transaction affecting the
financial condition, of the debtor or a related party, including but not limited to
involvement in providing financing (debt or equity) or advice to an entity involved
in such a transaction or acquiring or selling a financial interest in an entity as part
of such a transaction (11 U.S.C. § 524(g)(4)(A)(ii)(IV)).

75.     Each of the PI Protected Parties falls within one or more of these
categories, or is a representative, Affiliate or subsidiary of an Entity covered by these
categories, and is therefore entitled to the protection of the Asbestos PI Permanent
Channeling Injunction under section 524(g) of the Bankruptcy Code.

**The Claims Trading Injunction Is Permissible
Under Section 105(a) of the Bankruptcy Code**

76.     The Claims Trading Injunction is needed so that the beneficial
interests in the Asbestos PI Trust are not considered "securities" under the federal
securities laws.  Without the Claims Trading Injunction, AWI might not be permitted to
create a trust for the benefit of the holders of Asbestos Personal Injury Claims.  The
Claims Trading Injunction, therefore, forms an integral part of AWI's reorganization and
the Plan.

77.     The District Court has jurisdiction to enter the Claims Trading

Injunction under sections 1334(a), (b), and (d) of title 28 of the United States Code.

78.     Section 105(a) of the Bankruptcy Code permits approval and entry of the Claims Trading Injunction, especially where, as here, such injunction is essential to the formulation and implementation of the Plan as provided in section 1123(a)(5) of the Bankruptcy Code, confers material benefits on AWI's estate, and is in the best interests of holders of Claims against AWI.

79.     The Claims Trading Injunction is consistent with sections 105 and 1129 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, and the Claims Trading Injunction is in the best interests of AWI's estate. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 310-311 (1995); *In re Dow Corning Corp.*, 280 F.3d 648, 656-58 (6th Cir. 2002); *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 701-02 (3d Cir. 1989); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002-03 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986); *In re Johns-Manville Corp.*, 801 F.2d 60, 63-64 (2d Cir. 1986); *In re Combustion Eng'g Inc.*, 295 B.R. 459 (D. Del. 2003); *In re Asbestos Claims Mgmt. Corp.*, 294 B.R. 663 (N.D. Tex. 2003); *In re Eagle-Picher Indus., Inc.*, 1996 U.S. Dist. LEXIS 17160, *68 (S.D. Ohio 1996).

**The Discharge, Exculpation and Indemnity
Provisions Are Consistent with Sections 105
and Other Provisions of the Bankruptcy Code**

80.     The District Court has jurisdiction to and hereby does approve the provisions in Sections 11.2 (Discharge of AWI), 11.6 (Exculpation), and 8.6 (Indemnification and Reimbursement Obligations) of the Plan pursuant to sections 1334 (a), (b) and (d) of title 28 of the United States Code.

81.     Given the circumstances, the Plan's discharge provisions,

including the Asbestos PI Permanent Channeling Injunction, are proper. Section 105(a)

of the Bankruptcy Code empowers the court and permits court approval of the discharge,

exculpation and indemnification provisions where, as here, such provisions are essential

to the formulation and implementation of the Plan and confer material benefits on AWI,

its estate and creditors. On the basis of the Affidavits in Support of Confirmation and the

record presented at the Initial Confirmation Hearing and the Confirmation Hearing, the

Court finds and concludes that it has jurisdiction to and hereby does approve the

discharge, exculpation and indemnification provisions set forth in the Plan and that such

provisions of the Plan are consistent with sections 105 and 1129 of the Bankruptcy Code

and other applicable provisions of the Bankruptcy Code and are in the best interests of

AWI's estate and creditors. *See In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000);

*In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000); *A.H. Robins Co., Inc. v. Piccinin*,

788 F.2d 994, 1002-03 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986); *In re Am. Family*

*Enters.*, 256 B.R. 377, 406-07 (D.N.J. 2000); *In re Allegheny, Health, Educ., & Research*

*Found.*, 252 B.R. 309, 331 (W.D. Pa. 1999); *In re Genesis Health Ventures, Inc.*, 266

B.R. 591 (Bankr. D. Del. 2001).

**The New Common Stock and the Plan**
**Notes Are Exempt from Registration**
**Pursuant to Section 1145 of the Bankruptcy Code**

　　　　　82.　　Under section 1145 of the Bankruptcy Code, the New Common

Stock and the Plan Notes will be freely tradeable by the recipients thereof, subject to (i)

the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of

an underwriter in Section 2(a)(11) of the Securities Act and compliance with any rules

and regulations of the Securities Exchange Commission, if any, applicable at the time of

any future transfer of such securities or instruments; (ii) the restrictions, if any, on the transferability of such securities and instruments; and (iii) applicable regulatory approval. The issuance of New Common Stock and the Plan Notes are or were in exchange for Claims against AWI, or principally in such exchange and partly for cash or property, within the meaning of section 1145(a)(1) of the Bankruptcy Code.

83. The exemption from the requirements of Section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration of the offer, issuance, exchange or transfer of a security provided for in the Plan or registration or licensing of an issuer of, underwriter of, or broker dealer in, such security is authorized by section 1145 of the Bankruptcy Code and is applicable to the extent set forth in the Plan. The New Common Stock and the Plan Notes are exempt from registration pursuant to section 1145 of the Bankruptcy Code and are freely tradeable by the holders thereof except to the extent a holder is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code. For the purposes of section 1145(d) of the Bankruptcy Code, Class 7 is not an "underwriter" as defined in Section 2(11) of the Securities Act of 1933.

**The Plan Provides for**
**Proper Retention of Jurisdiction**

84. The Bankruptcy Court or the District Court, as provided in Article IX of the Plan, may retain jurisdiction over the matters set forth in Section 9.2 of the Plan and the Confirmation Order as entered by the District Court.

**Effect of Confirmation**

85. The Plan and its provisions shall be binding upon AWI, Reorganized AWI, the Disbursing Agent, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Equity Interest in AWI,

whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.

86.     Pursuant to Section 11.7 of the Plan, except as otherwise provided in the Plan, upon the Effective Date, title to all property of AWI's estate shall vest in Reorganized AWI free and clear of all Claims, Equity Interests, Encumbrances, and other interests, and all such Claims, Equity Interests, Encumbrances, and other interests shall be extinguished.  From and after the Effective Date, Reorganized AWI may operate its business and may use, acquire, and dispose of property, and compromise or settle any Claims and Equity Interests without the supervision of or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

**Miscellaneous**

87.     To the extent any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

### Conclusion

These Findings of Fact and Conclusions of Law and the Unfair Discrimination Decision and Order shall serve to support the entry of the Confirmation Order and issuance of the Asbestos PI Permanent Channeling Injunction and the Claims Trading Injunction in the Confirmation Order.

Dated:     Philadelphia, Pennsylvania
           August 17, 2006

                                        _____
                                        THE HONORABLE EDUARDO C. ROBRENO

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------x
In re                               :       Chapter 11 Case No.
                                    :
ARMSTRONG WORLD INDUSTRIES,         :       00-4471 (JKF)
INC., et al.,                       :
                                    :       (Jointly Administered)
                     Debtors.       :
                                    :
------------------------------------x
```

## ORDER CONFIRMING THE
## FOURTH AMENDED PLAN OF REORGANIZATION OF
## ARMSTRONG WORLD INDUSTRIES, INC., AS MODIFIED

Armstrong World Industries Inc., as debtor and debtor in possession in the above captioned chapter 11 cases ("*AWI*" or the "*Debtor*"), having proposed and filed the Fourth Amended Plan of Reorganization of Armstrong World Industries, Inc., dated May 23, 2003 (as modified by the modifications filed on October 17, 2003, November 10, 2003, December 3, 2004 and February 21, 2006 (collectively, the "*Modifications*"), the "*Plan*"), and the Disclosure Statement in respect of the Plan, dated June 2, 2003 (the "*Disclosure Statement*"); and the Disclosure Statement having been approved by the Bankruptcy Court pursuant to an order dated June 2, 2003 as containing "adequate information" pursuant to section 1125 of chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") (the "*Disclosure Statement Order*"); and a hearing on confirmation of the Plan having come before the court, the Honorable Eduardo C. Robreno, United States District Judge, on May 23, 24, 25, and July 11, 2006, and the issues having been duly heard and Findings of Fact and Conclusions of Law having been entered simultaneously herewith, and the District Court having entered its decision and order, dated August 14, 2006 (the "*Unfair Discrimination Decision and Order*"),

overruling the Unsecured Creditors' Committee's objection to confirmation of the Plan,

It is DECREED, ORDERED and ADJUDGED as follows:

**I.    Injunctions**

**A.    Claims Trading Injunction**

1.    This Order contains and constitutes the Claims Trading Injunction.

2.    From and after the entry of this Order every Entity be, and it hereby is, permanently and forever stayed, restrained, and enjoined from, directly or indirectly, purchasing, selling, transferring, assigning, conveying, pledging, or otherwise acquiring or disposing of any Asbestos Personal Injury Claim; *provided, however*, that the foregoing shall not apply to (i) the transfer of an Asbestos Personal Injury Claim to the holder of an Indirect PI Trust Claim solely as a result of such holder's satisfaction of such Asbestos Personal Injury Claim or (ii) the transfer of an Asbestos Personal Injury Claim by will or under the laws of descent and distribution.  Any action taken in violation of this paragraph will be void *ab initio*.

**B.    Creation of the Asbestos PI Trust and Section 524(g) Injunction**

1.    On the later of the execution of the Asbestos PI Trust Agreement by the Asbestos PI Trustees and the Effective Date, the Asbestos PI Trust shall be created in accordance with the Plan and the Asbestos PI Trust Agreement.  Upon the creation of the Asbestos PI Trust, all right, title, and interest in and to the Asbestos PI Trust Assets (as such term is defined in the Asbestos PI Trust Agreement) shall be transferred to, and vested in, the Asbestos PI Trust.  The Asbestos PI Trust and the Asbestos PI Trustees are hereby authorized and empowered to receive the Asbestos PI Trust Assets.

2.    On or as soon as practicable after the Effective Date, Reorganized

AWI is hereby authorized to transfer and assign, or cause to be transferred and assigned to the Asbestos PI Trust, the books and records of AWI that pertain directly to Asbestos Personal Injury Claims that have been asserted against AWI, which transfer shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records. If the Asbestos PI Trust does not issue written instructions for the transfer or retention of such books and records within one hundred eighty (180) days after the later of the Effective Date and the date by which all the Asbestos PI Trustees have executed the Asbestos PI Trust Agreement, or if the Asbestos PI Trust so requests, Reorganized AWI may (and shall, if the Asbestos PI Trust so requests, but at the sole cost and expense of the Asbestos PI Trust) destroy any such books and records, and the order of the District Court entered during the Chapter 11 Case with respect to the retention of books and records shall be deemed superseded by this Order and the Plan to the extent necessary to permit destruction of such books and records.

3.     The appointment of Paul Knuti, Anne Ferazzi, Thomas Tully, Lewis Sifford and Harry Huge as the initial Asbestos PI Trustees, be, and hereby is, approved. Effective as of the Effective Date, the initial Asbestos PI Trustees shall serve as Asbestos PI Trustees in accordance with the terms of the Asbestos PI Trust Agreement.

4.     The appointment of John D. Cooney, Russell W. Budd, Steven Kazan, Joseph F. Rice, and Perry Weitz as the five initial members of the Trust Advisory Committee (the "TAC") be, and hereby is, approved. Effective as of the Effective Date, the initial members of the TAC shall serve as members of the TAC in accordance with the terms of the Asbestos PI Trust Agreement.

5.     In consideration for the property transferred to the Asbestos PI

Trust pursuant to Section 10.1 of the Plan, and in furtherance of the purposes of the Asbestos PI Trust and the Plan, the Asbestos PI Trust shall assume all liability and responsibility for all Asbestos Personal Injury Claims, and Reorganized AWI shall have no further financial or other responsibility or liability therefor. The Asbestos PI Trust shall also assume all liability for premiums, deductibles, retrospective premium adjustments, security or collateral arrangements, or any other charges, costs, fees, or expenses (if any) that become due to any insurer in connection with the Asbestos PI Insurance Asset as a result of Asbestos Personal Injury Claims, asbestos-related personal injury claims against Entities insured under policies included in the Asbestos PI Insurance Asset by reason of vendor's endorsements, or under the indemnity provisions of settlement agreements that AWI made with various insurers prior to the Commencement Date to the extent that those indemnity provisions relate to Asbestos Personal Injury Claims, and Reorganized AWI shall have no further financial or other responsibility or liability for any of the foregoing.

6.    With respect to any Asbestos Personal Injury Claim that is allowed by the Asbestos PI Trust in accordance with the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, such allowance shall establish the amount of legal liability against the Asbestos PI Trust in the amount of the liquidated value of such Claim, as determined in accordance with the Asbestos PI Trust Distribution Procedures.

### C.    Asbestos PI Permanent Channeling Injunction

1.    In connection with the creation of the Asbestos PI Trust and to supplement the injunctive relief of a discharge under section 524(g) of the Bankruptcy Code, the Asbestos PI Permanent Channeling Injunction, be, and hereby is, issued and

approved as of the Effective Date.

2.    This Order contains and constitutes the Asbestos PI Permanent Channeling Injunction. The Asbestos PI Permanent Channeling Injunction is to be implemented in connection with the Plan and the Asbestos PI Trust.

3.    From and after the Effective Date, every Entity be, and it hereby is, permanently and forever stayed, restrained, and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Personal Injury Claim (other than actions brought to enforce any right or obligation under the Plan, any Exhibits to the Plan, or any other agreement or instrument between AWI or Reorganized AWI and the Asbestos PI Trust, which actions shall be in conformity and compliance with the provisions of the Plan):

> a.    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, a judicial, arbitral, administrative, or other proceeding) in any forum against or affecting any PI Protected Party or any property or interests in property of any PI Protected Party;
>
> b.    enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any PI Protected Party or any property or interests in

property of any PI Protected Party;

c.      creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any PI Protected Party or any property or interests in property of any PI Protected Party;

d.      setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any PI Protected Party or any property or interests in property of any PI Protected Party; *provided, however*, that the foregoing shall not preclude the assertion of a setoff or recoupment defense under applicable law by a third party solely in response to, and to the extent of, a claim asserted by a PI Protected Party against such third party that such third party is liable in whole or in part for an Asbestos Personal Injury Claim; and

e.      proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos PI Trust, except in conformity and compliance therewith.

Nothing contained in this paragraph, however, shall constitute or be deemed a waiver of any claim, right, or cause of action that AWI, Reorganized AWI, or the Asbestos PI Trust may have against any Entity in connection with or arising out of an Asbestos Personal Injury Claim, and the foregoing injunction shall not apply to the assertion of any such claim, right, or cause of action by AWI, Reorganized AWI, or the Asbestos PI Trust.

## II.    Confirmation of the Plan

1.    The Plan be, and it hereby is, confirmed.

2.    The record of the Confirmation Hearing be, and it hereby is, closed.

3.    Pursuant to the Unfair Discrimination Decision and Order, the District Court has overruled the Unsecured Creditors' Committee's objection to confirmation of the Plan.  All other objections to confirmation of the Plan that have not been withdrawn prior to entry of this Order or are not cured by the relief granted herein be, and they hereby are, overruled in their entirety, and all withdrawn objections be, and they hereby are, deemed withdrawn with prejudice.

4.    The Modifications be, and they hereby are, deemed to be either technical changes or clarifications that do not adversely change the treatment of the Claim of any creditor of AWI or have been consented to by the entities affected thereby.

5.    AWI be, and it hereby is, subject to further order of this Court, authorized to amend or modify the Plan at any time prior to the Effective Date, but only in accordance with Section 4.1 of the Plan and section 1127(b) of the Bankruptcy Code.

6.    In the event of any inconsistency between the Plan and any agreement, instrument or document intended to implement the Plan and this Order, the provisions of the Plan shall govern and shall supersede any orders of this Court issued prior to the Effective Date that may be inconsistent herewith; however, nothing in this Order or the Plan shall supersede the provisions of any prior orders incorporated herein by reference, including the Stipulation and Order dated August 29, 2003, entered into by AWI, the Asbestos Claimants Committee, the Future Claimants' Representative, and

Liberty Mutual Insurance Company.

7.     The parties to any agreement or other document that is contained in the Exhibit Volume (the "**Plan Exhibits**") be, and they hereby are, authorized to execute such Plan Exhibits and modify same consistent with the terms of the Plan Exhibits without further order of this Court or further notice to any entities.

8.     In accordance with Section 1.100 of the Plan, the Record Date for purposes of determining the holders of Allowed Claims that are entitled to distributions that are required to be made under the Plan on the Effective Date shall be the first Business Day that is five (5) days from and after the Confirmation Date.  Except as and to the extent otherwise required by customary procedures of the DTC with respect to Debt Security Claims, as of the close of business on the Record Date, the various transfer and claims registers for each of the classes of Claims as maintained by AWI, its respective agents, or the Indenture Trustees shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims.  AWI and Reorganized AWI shall have no obligation to recognize any transfer of the Claims occurring after the close of business on the Record Date.  AWI, Reorganized AWI, the Disbursing Agent, and the Indenture Trustees shall be entitled to recognize and deal under the Plan only with those record holders stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable.

9.     The provisions in Articles V and VII of the Plan governing distributions, reserves, and the procedures for resolving and treating Disputed Claims under the Plan be, and they hereby are, approved and found to be fair and reasonable.

10.     The amendment to the Claims Settlement Guidelines as set forth

on Exhibit "1.39" to the Plan be, and it hereby is, approved and found to be in the best interests of AWI, its estate and creditors, and necessary to the implementation of the Plan.

11.    In accordance with section 1141(a) of the Bankruptcy Code and Section 11.2 of the Plan, the provisions of the Plan be, and they hereby are, binding upon AWI and its respective successors and assigns, the holders of Claims and Equity Interests and their respective successors and assigns (whether or not they voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such holder has filed, or is deemed to have filed, a proof of Claim or proof of Equity Interest), any other Entity giving, acquiring or receiving property under the Plan, and any lessor or lessee of property to or from AWI.

12.    The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued thereon from and after the Commencement Date, against AWI or its estate, assets, properties, or interests in property. Except as otherwise provided in the Plan, on the Effective Date, all Claims against and Equity Interests in AWI shall be satisfied, discharged, and released in full. Reorganized AWI shall not be responsible for any obligations of AWI except those expressly assumed by Reorganized AWI in the Plan. All Entities shall be precluded and forever barred from asserting against AWI,

Reorganized AWI, its successors or assigns, or its assets, properties, or interests in property any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to

the Effective Date.

13.    In accordance with section 1141(b) of the Bankruptcy Code and Section 11.7 of the Plan, title to all of AWI's assets, properties and interests in property, other than the Asbestos PI Trust Assets to be transferred to the Asbestos PI Trust, shall revest in Reorganized AWI on the Effective Date.  Except as otherwise provided herein or in the Plan, title to all assets and properties and interests in property dealt with by the Plan shall be revested in Reorganized AWI free and clear of all Claims, Equity Interests, Encumbrances, and other interests, and all such Claims, Equity Interests, Encumbrances and other interests shall be extinguished; *provided, however*, that the pledge and assignment by AWI of, and the Escrow Agent's security interest in, all of the Collateral under the Escrow Agreement shall not be extinguished until the termination of such security interest pursuant to the terms of the Escrow Agreement.

14.    Nothing in this Order shall in any way affect the provisions of Section 7.16 of the Plan, which provide that, if AWI decides that one of the conditions to the occurrence of the Effective Date set forth in Section 7.16 of the Plan cannot be satisfied, and the occurrence of such condition is not waived in writing by each of AWI, the Asbestos PI Claimants' Committee and the Future Claimants' Representative, then this Order, including all Findings of Fact and Conclusions of Law entered simultaneously herewith, shall be null and void.

15.    In exchange for the consideration provided for under the Plan, and in accordance with section 1141 of the Bankruptcy Code, AWI be, and it hereby is, discharged and released of and from any and all Claims and Equity Interests of any nature whatsoever, including, without limitation, Asbestos Personal Injury Claims against AWI

that arose before the Effective Date, including any interest accrued thereon from and after the Commencement Date, against AWI, its estate, assets, properties or interests in property, or any Claim of a kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim has accepted the Plan.

16.    In accordance with section 1142 of the Bankruptcy Code, AWI and any other Entity designated pursuant to the Plan be, and they hereby are, authorized, empowered and directed to execute, deliver, file and record any document, and to take any action necessary or appropriate to implement, consummate and otherwise effect the Plan in accordance with its terms in all material respects, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them necessary or appropriate to effectuate the transactions contemplated by the Plan.

17.    All entities holding Claims against or Equity Interests in AWI that are treated under the Plan be, and they hereby are, directed to execute, deliver, file or record any document, and to take any action necessary to implement, consummate and otherwise effect the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

18.    In accordance with section 1142 of the Bankruptcy Code, upon entry of this Order (and subject to the occurrence of the Effective Date), the following shall be deemed authorized and approved in all respects: (i) the filing by Reorganized

AWI of the Amended and Restated Articles of Incorporation, (ii) the adoption of the Amended and Restated By-Laws, (iii) the cancellation of the Existing AWI Common Stock, (iv) the issuance, if applicable, of the Plan Notes and the New Common Stock, (v) the consummation of the 144A Offering, (vi) the entering into of the Stockholder and Registration Rights Agreement, (vii) the adoption of the New Long-Term Incentive Plan, (viii) the execution of the Asbestos PI Trust Agreement, and (ix) the adoption of the Asbestos PI Trust Distribution Procedures by the Asbestos PI Trust. On the Effective Date, or as soon thereafter as is practicable, Reorganized AWI shall file with the Secretary of State for the Commonwealth of Pennsylvania the Amended and Restated Articles of Incorporation. On the Effective Date, the matters provided under the Plan involving the capital and corporate structures and governance of Reorganized AWI shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable state laws without any requirement of further action by the stockholders or directors of AWI or Reorganized AWI.

19. Pursuant to Section 7.17 of the Plan, except for purposes of evidencing a right to Distributions under the Plan, as of the Effective Date, all notes, agreements, and securities evidencing Unsecured Claims and the rights of the holders thereof thereunder shall be cancelled and deemed null and void and of no further force and effect, and the holders thereof shall have no rights, and such instruments shall evidence no rights.

20. On the Effective Date, pursuant to sections 365(a) and 365(f)(1) of the Bankruptcy Code, all executory contracts and unexpired leases of AWI identified to be assumed in accordance with Section 8.1 of the Plan be, and they hereby are, deemed

assumed by AWI, notwithstanding any provision in such contracts or leases prohibiting assignment or transfer.

21.    On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code and in accordance with Section 8.2 of the Plan, all executory contracts and unexpired leases of AWI that either (x) are set forth on Exhibit 8.2 to the Plan or (y) (i) are not listed on Exhibit 8.1 of the Plan, (ii) have not been assumed by AWI with the approval of the Bankruptcy Court, and (iii) are not the subject of pending motions to assume at the Confirmation Date be, and they hereby are, rejected.

22.    Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Section 8.2 of the Plan) or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date, other than Asbestos Personal Injury Claims, must be filed with the Bankruptcy Court and served on AWI no later than thirty (30) days after (i) in the case of an executory contract or unexpired lease that was terminated or expired by its terms prior to the Confirmation Date, the Confirmation Date, (ii) in the case of an executory contract or unexpired lease rejected by AWI, the entry of the order of the Bankruptcy Court authorizing such rejection, or (iii) in the case of an executory contract or unexpired lease that is deemed rejected pursuant to Section 8.2 of the Plan, the Confirmation Date. Notwithstanding the foregoing, Exhibit 8.2 to the Plan sets forth AWI's value of the rejection claim for each executory contract or unexpired lease set forth thereon, which claim shall be deemed an Allowed Unsecured Claim if no proof of claim is timely filed and served in accordance with the immediately preceding sentence. Any Claims for which a rejection claim is not set forth on Exhibit 8.2 to the Plan and for which a proof of

claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against AWI, its estate, assets, properties, or interests in property or Reorganized AWI or its estate, assets, properties, or interests in property. All such Claims (other than Asbestos Personal Injury Claims) that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan and shall be subject to the provisions of Article V of the Plan.

23.    Pursuant to section 105 of the Bankruptcy Code, the provisions of the Plan governing release, exculpation and indemnification that are set forth in Sections 11.2, 11.6 and 8.6, respectively, are hereby approved in all respects.

24.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising in, or related to, the Chapter 11 Case or the Plan, or (b) that relates to the matters set forth in Article IX of the Plan. To the extent the Bankruptcy Court is not permitted under applicable law to preside over any of the matters referred to in Article IX of the Plan, the District Court shall have jurisdiction over such matters. In any event, (i) the allowance of Asbestos Personal Injury Claims and the forum in which such allowance will be determined will be governed by and in accordance with the Asbestos PI Trust Distribution Procedures and the Asbestos PI Trust Agreement, and (ii) the Bankruptcy Court and/or the District Court shall have concurrent rather than exclusive jurisdiction with respect to (x) disputes relating to rights under insurance policies issued to AWI that are included in the Asbestos PI Insurance Asset, (y) disputes relating to AWI's claim for costs, expenses and fees incurred in connection with an Alternative Dispute Resolution Proceeding initiated in 1996, as referenced in Section 1.20 of the Plan, and (z) disputes

relating to AWI's rights to insurance with respect to workers' compensation claims.

25.    In accordance with section 1145 of the Bankruptcy Code, the offer or issuance, sale, exchange or other transfer of any security in accordance with the Plan or this Order, including, without limitation, the Plan Notes and the New Common Stock, be, and it hereby is, exempt from the provisions of section 5 of the Securities Act of 1933, as amended (15 U.S.C. § 77(e), as amended), and any state or local law requiring registration for the offer or sale of a security or registration or licensing of the issuer, or an Affiliate thereof as an underwriter, broker or dealer in securities.

26.    In accordance with section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities in accordance with the Plan or this Order (including, without limitation, the Plan Notes and the New Common Stock) and the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without express or implied limitation, any liens granted in connection with the exit finance facility, shall not be subject to any sales and use, stamp, real estate transfer, mortgage recording, or other similar tax.

27.    Pursuant to Section 2.2 of the Plan, all entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under section 330 of the Bankruptcy Code or applications for allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall file their respective final applications for allowance of compensation for services rendered

and reimbursement of expenses incurred and applications for allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code by the date that is 45 days after the Effective Date.  The Allowed Amount of all Administrative Expenses arising under section 330, 331, 503(b)(2), 503(b) (3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall be paid in full, in cash, (a) upon the later of (i) the Effective Date and (ii) the date upon which any such Administrative Expense becomes Allowed or (b) at such later date or upon such other terms as may be mutually agreed upon between each such Administrative Expense Creditor and Reorganized AWI.

28.    As of the Effective Date, the Future Claimants' Representative, the Asbestos PI Claimants' Committee and the Unsecured Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Case, and, except for the limited purpose of presenting final applications for fees and expenses, all such committees shall be deemed dissolved, and the Future Claimants' Representative shall continue to serve through the termination of the Asbestos PI Trust in order to perform the functions required by the Asbestos PI Trust Agreement; *provided, however,* (i) if the Effective Date occurs before this Order becomes a Final Order, the Asbestos PI Claimants' Committee and the Future Claimants' Representative may continue to exist and to serve for the purposes of pursuing any appeal of this Order, and (ii) if any adversary proceeding to which the Asbestos PI Claimants' Committee or the Future Claimants' Representative is participating is pending as of the Effective Date, any such committee may continue to exist or the Future Claimants' Representative may continue to

serve for the limited purpose of litigating such adversary proceeding. The fees and expenses of the Future Claimants' Representative from and after the Effective Date relating to the role of the Future Claimants' Representative in the Asbestos PI Trust, pursuant to the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures (including, without limitation, the fees and expenses of any professionals retained by the Future Claimants' Representative), shall be the sole responsibility of the Asbestos PI Trust.

29.    All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court, shall be paid on the Effective Date or as soon as practicable thereafter. All post-confirmation and post-consummation fees that are due and payable shall be paid by Reorganized AWI until the Chapter 11 Case is closed pursuant to section 305(a) of the Bankruptcy Code.

30.    On or before the tenth (10th) Business Day following the date of entry of this Order, AWI shall serve notice of entry of this Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and interest holders of AWI, the United States Trustee, and other parties in interest, by causing notice of entry of this Order (the *"Notice of Confirmation"*), to be delivered to such parties by first-class mail, postage prepaid. AWI also shall cause the Notice of Confirmation to be published as promptly as practicable after the entry of this Order once in the weekday edition of each of the national editions of *The New York Times*, *The Wall Street Journal*, and *USA Today*.

31.    Within five (5) Business Days following the occurrence of the Effective Date, Reorganized AWI shall file a notice of the occurrence of the Effective Date and shall serve a copy of same on the parties identified on AWI's Core Group

Service List in this case pursuant to the Court's Order Establishing Case Management
Procedures and Hearing Schedule, dated February 11, 2002.

   32. The provisions of this Order are integrated with each other and are
nonseverable and mutually dependent unless expressly stated by further order of this
Court.

   33. The failure specifically to include any particular provision of the
Plan in this Order shall not diminish or impair the efficacy of such provision, it being
understood that it is the intent of this Court that the Plan be confirmed and approved in its
entirety.

34.    The Findings of Fact and Conclusions of Law and the Unfair Discrimination Decision and Order are hereby incorporated as if set forth in full in this Order.

35.    This Order and simultaneously filed Findings of Fact and Conclusions of Law shall be entered in both the U.S. District Court for the District of Delaware and the U.S. Bankruptcy Court for the District of Delaware. The Clerk of the U.S. Bankruptcy Court for the District of Delaware shall see to distribution thereof.

## III.    Incorporation by Reference of Certain Prior Orders

1.    The Stipulation and Order dated August 29, 2003, by and between AWI, Liberty Mutual Insurance Company, the Future Claimant's Representative, and the Asbestos Claimants' Committee (Docket No. 5728) is incorporated by reference in this Order pursuant to paragraph 13 thereof.

2.    The Settlement Agreement and Order dated November 11, 2003, by and between AWI, Century Indemnity Co., Central National Insurance Company of Omaha, International Insurance Company, and JPMorgan Chase Bank (Docket No. 6071) is incorporated by reference in this Order pursuant to paragraph 14 thereof.

Dated:    Philadelphia, Pennsylvania
         August 17, 2006

_____
THE HONORABLE EDUARDO C. ROBRENO
United States District Court Judge

#### PI Protected Parties

Section 1.91 of the Plan sets forth the identities of the PI Protected Parties, which include the following:

a.  AWI;

b.  Reorganized AWI;

c.  Holdings;

d.  AWWD;

e.  any Affiliate;

f.  Interface Solutions, Inc., a corporation organized under the laws of Delaware, but only to the extent that Interface Solutions, Inc. is alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on AWI, Reorganized AWI, or the Asbestos PI Trust on account of Asbestos Personal Injury Claims;

g.  any Entity that, pursuant to the Plan or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any assets of AWI, Reorganized AWI, or the Asbestos PI Trust (but only to the extent that liability is asserted to exist by reason of it becoming such a transferee or successor);

h.  any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to Reorganized AWI or the Asbestos PI Trust or to a successor to, or transferee of, any assets of AWI, Reorganized AWI or the Asbestos PI Trust (but only to the extent that liability is asserted to exist by reason of such Entity becoming such a lender or to the extent of any pledge of assets made in connection with such a loan is sought to be upset or impaired); and

i.  any Entity to the extent he, she, or it is alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on AWI, Reorganized AWI or the Asbestos PI Trust on account of Asbestos Personal Injury Claims by reason of one or more of the following:

   (i)   such Entity's ownership of a financial interest in AWI, Reorganized AWI, a past or present affiliate of AWI or Reorganized AWI (other than ACandS, Inc. f/k/a Armstrong Contracting and Supply Corp.), or a predecessor in interest of AWI or Reorganized AWI;

   (ii)  such Entity's involvement in the management of AWI, AWWD, Holdings, an Affiliate, Reorganized AWI, or any predecessor in interest of AWI or

Reorganized AWI;

(iii)    such Entity's service as an officer, director, or
employee of AWI, Reorganized AWI, AWWD,
Holdings, an Affiliate, any past or present affiliate
of AWI or Reorganized AWI (other than ACandS,
Inc. f/k/a Armstrong Contracting and Supply Corp.),
any predecessor in interest of AWI or Reorganized
AWI, or any Entity that owns or at any time has
owned a financial interest in AWI or Reorganized
AWI, any past or present affiliate of AWI or
Reorganized AWI (other than ACandS, Inc. f/k/a
Armstrong Contracting and Supply Corp.), or any
predecessor in interest of AWI or Reorganized
AWI.

(iv)    such Entity's provision of insurance to (a) AWI, (b)
Reorganized AWI, (c) any past or present affiliate
of AWI or Reorganized AWI (other than ACandS,
Inc. f/k/a Armstrong Contracting and Supply Corp.),
(d) any predecessor in interest of AWI or
Reorganized AWI, or (e) any Entity that owns or at
any time has owned a financial interest in AWI or
Reorganized AWI, any past or present affiliate of
AWI or Reorganized AWI (other than ACandS, Inc.
f/k/a Armstrong Contracting and Supply Corp.), or
any predecessor in interest of AWI or Reorganized
AWI, but only to the extent that AWI, Reorganized
AWI, or the Asbestos PI Trust enters into a
settlement with such Entity that is approved by the
Bankruptcy Court and expressly provides that such
Entity shall be entitled to the protection of the
Asbestos PI Permanent Channeling Injunction as a
PI Protected Party; or

(v)    such Entity's involvement in a transaction changing
the corporate structure, or in a loan or other
financial transaction affecting the financial
condition, of AWI, AWWD, Holdings, an Affiliate,
Reorganized AWI, any past or present affiliate of
AWI or Reorganized AWI (other than ACandS, Inc.
f/k/a Armstrong Contracting and Supply Corp.), any
predecessor in interest of AWI or Reorganized
AWI, or any Entity that owns, or at any time has
owned a financial interest in AWI or Reorganized
AWI, any past or present affiliate of AWI or
Reorganized AWI (other than ACandS, Inc. f/k/a

Armstrong Contracting and Supply Corp.), or any predecessor in interest of AWI or Reorganized AWI.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

-------------------------------------------------------------- x

*In re*                                                  :          Chapter 11 Case No.
                                                         :
ARMSTRONG WORLD INDUSTRIES,                              :          00-4471 (JKF)
INC., *et al.*,                                          :
                                                         :
                                     Debtors.            :          (Jointly Administered)

-------------------------------------------------------------- x

FOURTH AMENDED PLAN OF REORGANIZATION
OF ARMSTRONG WORLD INDUSTRIES, INC., AS MODIFIED

*This plan of reorganization provides for the issuance of an Asbestos PI Permanent Channeling Injunction and a Claims Trading Injunction. See sections 1.18 (definition of "Asbestos Personal Injury Claim"), 1.21 (definition of "Asbestos PI Permanent Channeling Injunction"), 1.91 (definition of "PI Protected Party"), and 3.2(g)(ii) (Treatment of Asbestos Personal Injury Claims under the Plan) for details relating to the Asbestos PI Permanent Channeling Injunction and sections 1.18 (definition of "Asbestos Personal Injury Claim") and 1.40 (definition of "Claims Trading Injunction") for details regarding the Claims Trading Injunction.*

# TABLE OF CONTENTS

**Page**

ARTICLE I    DEFINITIONS ......................................................................................... 1

    A.    Defined Terms ................................................................................................ 1

        1.1    144A Debt Securities........................................................................ 1

        1.2    144A Offering................................................................................... 1

        1.3    144A Offering Proceeds ................................................................... 1

        1.4    Administrative Bar Date Order........................................................ 1

        1.5    Administrative Expense ................................................................... 1

        1.6    Administrative Expense Creditor ..................................................... 2

        1.7    Administrative Expense Objection Deadline.................................... 2

        1.8    Affiliate........................................................................................... 2

        1.9    Affiliate Claims .............................................................................. 2

        1.10    Agent Bank..................................................................................... 2

        1.11    Allowed .......................................................................................... 2

        1.12    Allowed Amount ............................................................................ 3

        1.13    Amended and Restated Articles of Incorporation............................ 3

        1.14    Amended and Restated By-Laws..................................................... 3

        1.15    Articles of Incorporation................................................................. 3

        1.16    Asbestos PD Bar Date .................................................................... 3

        1.17    Asbestos PD Committee .................................................................. 4

        1.18    Asbestos Personal Injury Claim....................................................... 4

        1.19    Asbestos PI Claimants' Committee.................................................. 4

        1.20    Asbestos PI Insurance Asset............................................................ 4

        1.21    Asbestos PI Permanent Channeling Injunction ............................... 5

        1.22    Asbestos PI Trust............................................................................ 5

        1.23    Asbestos PI Trust Agreement .......................................................... 6

        1.24    Asbestos PI Trust Distribution Procedures....................................... 6

        1.25    Asbestos PI Trustees....................................................................... 6

        1.26    Asbestos Property Damage Claim.................................................... 6

        1.27    Asbestos Property Damage Contribution Claim............................... 6

        1.28    Available Cash................................................................................ 6

        1.29    AWWD........................................................................................... 7

        1.30    AWI ................................................................................................ 7

i

**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| 1.31 | Ballot | 7 |
| 1.32 | Bankruptcy Code | 7 |
| 1.33 | Bankruptcy Court | 7 |
| 1.34 | Bankruptcy Rules | 7 |
| 1.35 | Board of Directors | 7 |
| 1.36 | Business Day | 7 |
| 1.37 | Chapter 11 Case | 7 |
| 1.38 | Claim | 8 |
| 1.39 | Claims Settlement Guidelines | 8 |
| 1.40 | Claims Trading Injunction | 8 |
| 1.41 | Class | 8 |
| 1.42 | COLI Claims | 8 |
| 1.43 | Commencement Date | 8 |
| 1.44 | Confirmation Date | 8 |
| 1.45 | Confirmation Deadline | 8 |
| 1.46 | Confirmation Order | 8 |
| 1.47 | Contingent Claim | 8 |
| 1.48 | Convenience Claim | 9 |
| 1.49 | Creditor | 9 |
| 1.50 | Debtor | 9 |
| 1.51 | Debtor in Possession | 9 |
| 1.52 | Debt Security Claim | 9 |
| 1.53 | Demand | 9 |
| 1.54 | DIP Credit Facility | 9 |
| 1.55 | DIP Credit Facility Claim | 9 |
| 1.56 | DIP Lenders | 9 |
| 1.57 | Disallowed Claim | 9 |
| 1.58 | Disbursing Agent | 9 |
| 1.59 | Disputed Claim | 9 |
| 1.60 | Disputed Claim Amount | 10 |
| 1.61 | Disputed Unsecured Claims Reserve | 10 |
| 1.62 | Distribution | 10 |

**TABLE OF CONTENTS**
(continued)

Page

1.63    Distribution Date ................................................................................ 10

1.64    District Court ...................................................................................... 10

1.65    DTC ..................................................................................................... 10

1.66    Employee Benefit Claim ..................................................................... 10

1.67    Effective Date ..................................................................................... 10

1.68    Encumbrance ....................................................................................... 11

1.69    Entity ................................................................................................... 11

1.70    Environmental Claim .......................................................................... 11

1.71    Equity Interest ..................................................................................... 11

1.72    Estimated Amount ............................................................................... 11

1.73    Existing AWI Common Stock ............................................................ 11

1.74    Final Distribution Date ....................................................................... 11

1.75    Final Order .......................................................................................... 11

1.76    Future Claimants' Representative ....................................................... 11

1.77    Global Asbestos PD Settlement .......................................................... 12

1.78    Holdings .............................................................................................. 12

1.79    Holdings Plan of Liquidation ............................................................. 12

1.80    Indentures ........................................................................................... 12

1.81    Indenture Trustees .............................................................................. 12

1.82    Indenture Trustees' Fees and Expenses .............................................. 12

1.83    Indirect PI Trust Claim ....................................................................... 12

1.84    Initial Distribution Date ...................................................................... 13

1.85    Internal Revenue Code ....................................................................... 13

1.86    IRS ...................................................................................................... 13

1.87    Lazard ................................................................................................. 13

1.88    New Common Stock ........................................................................... 13

1.89    New Long-Term Incentive Plan ......................................................... 13

1.90    Pennsylvania BCL .............................................................................. 13

1.91    PI Protected Party .............................................................................. 13

1.92    Plan ..................................................................................................... 15

1.93    Plan Note Amount .............................................................................. 15

1.94    Plan Note Indentures .......................................................................... 15

## TABLE OF CONTENTS
### (continued)

| | | | Page |
|---|---|---|---|
| | 1.95 | Plan Notes | 15 |
| | 1.96 | Priority Claim | 15 |
| | 1.97 | Priority Tax Claim | 15 |
| | 1.98 | Pro Rata Share | 16 |
| | 1.99 | Qualified Appraisal | 16 |
| | 1.100 | Record Date | 16 |
| | 1.101 | Reorganized AWI | 16 |
| | 1.102 | Reorganization Consideration | 16 |
| | 1.103 | Retention Period | 16 |
| | 1.104 | Schedules | 16 |
| | 1.105 | SEC | 16 |
| | 1.106 | Secured Claim | 16 |
| | 1.107 | Stockholder and Registration Rights Agreement | 16 |
| | 1.108 | Subsidiary Debt Guarantee Claim | 16 |
| | 1.109 | Term Loan B | 16 |
| | 1.110 | Term Loan B Proceeds | 17 |
| | 1.111 | Treasury Regulations | 17 |
| | 1.112 | Unliquidated Claim | 17 |
| | 1.113 | Unsecured Claim | 17 |
| | 1.114 | Unsecured Creditors' Committee | 17 |
| | 1.115 | Voting Deadline | 17 |
| | 1.116 | Voting Procedures Order | 17 |
| B. | | Other Terms | 17 |
| C. | | Exhibits | 17 |
| ARTICLE II | | PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS | 18 |
| | 2.1 | Payment of Allowed Administrative Expenses | 18 |
| | 2.2 | Compensation and Reimbursement Claims | 18 |
| | 2.3 | DIP Credit Facility Claim | 18 |
| | 2.4 | Priority Tax Claims | 18 |
| ARTICLE III | | CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS | 18 |
| | 3.1 | Summary | 18 |

**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| 3.2 | Classification and Treatment | 20 |
| 3.3 | In the event of a controversy as to whether any class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy prior to the Confirmation Date | 26 |

**ARTICLE IV**  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ... 26

| | | |
|---|---|---|
| 4.1 | Modification of the Plan | 26 |
| 4.2 | Revocation or Withdrawal | 26 |
| 4.3 | Amendment of Plan Documents | 27 |

**ARTICLE V**  PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS ... 27

| | | |
|---|---|---|
| 5.1 | Objections to Claims; Prosecution of Disputed Claims | 27 |
| 5.2 | Claims Settlement Guidelines | 27 |
| 5.3 | Distributions on Account of Disputed Claims | 27 |
| 5.4 | Disputed Unsecured Claims Reserve | 27 |
| 5.5 | Tax Treatment of Disputed Unsecured Claims Reserve | 27 |

**ARTICLE VI**  ACCEPTANCE OR REJECTION OF THE PLAN ... 28

| | | |
|---|---|---|
| 6.1 | Impaired Classes to Vote | 28 |
| 6.2 | Acceptance by Class of Claims | 28 |
| 6.3 | Nonconsensual Confirmation | 28 |

**ARTICLE VII**  IMPLEMENTATION OF THE PLAN ... 28

| | | |
|---|---|---|
| 7.1 | Creation of Asbestos PI Trust | 28 |
| 7.2 | Appointment of Asbestos PI Trustees | 28 |
| 7.3 | 144A Offering | 28 |
| 7.4 | Amendment of Articles of Incorporation | 29 |
| 7.5 | Amendment of By-Laws | 29 |
| 7.6 | Stockholder and Registration Rights Agreement | 29 |
| 7.7 | Distributions under the Plan | 29 |
| 7.8 | Timing of Distributions under the Plan | 29 |
| 7.9 | Disbursing Agent | 30 |
| 7.10 | Record Date | 30 |
| 7.11 | Distributions to Holders of Debt Security Claims Administered by the Indenture Trustees | 31 |
| 7.12 | Manner of Payment under the Plan | 31 |

**TABLE OF CONTENTS**
(continued)

Page

7.13     Hart-Scott-Rodino Compliance ................................................................ 31

7.14     Fractional Shares or Other Distributions ................................................. 31

7.15     Occurrence of the Confirmation Date ...................................................... 31

7.16     Occurrence of the Effective Date ............................................................. 33

7.17     Cancellation of Existing Debt Securities ................................................. 34

7.18     Expiration of the Retention Period ........................................................... 35

7.19     Compensation of the Applicable Indenture Trustees ............................... 35

7.20     Distribution of Unclaimed Property ......................................................... 35

7.21     Management of Reorganized AWI ............................................................ 35

7.22     Listing of Reorganized AWI Common Stock ........................................... 36

7.23     Corporate Reorganization Actions ........................................................... 36

7.24     Holdings Transactions .............................................................................. 36

7.25     Compliance with QSF Regulations ........................................................... 37

7.26     Effectuating Documents and Further Transactions ................................. 37

7.27     Allocation of Plan Distributions Between Principal and Interest ........... 37

ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 37

8.1     Assumption of Executory Contracts and Unexpired Leases .................... 37

8.2     Rejection of Executory Contracts and Unexpired Leases ....................... 38

8.3     Claims Arising from Rejection, Termination or Expiration .................... 38

8.4     Previously Scheduled Contracts ............................................................... 38

8.5     Insurance Policies and Agreements .......................................................... 39

8.6     Indemnification and Reimbursement Obligations .................................... 39

8.7     Compensation and Benefit Programs ....................................................... 40

8.8     Management Agreements ........................................................................... 42

ARTICLE IX     RETENTION OF JURISDICTION .................................................................. 42

ARTICLE X     TRANSFERS OF PROPERTY TO AND ASSUMPTION OF CERTAIN
LIABILITES BY THE ASBESTOS PI TRUST .............................................. 44

10.1     Transfer of Certain Property to the Asbestos PI Trust ............................ 44

10.2     Assumption of Certain Liabilities by the Asbestos PI Trust .................. 45

10.3     Cooperation with Respect to Insurance Matters ...................................... 45

10.4     Authority of AWI ...................................................................................... 46

ARTICLE XI     MISCELLANEOUS PROVISIONS ................................................................. 46

11.1     Payment of Statutory Fees ........................................................................ 46

**TABLE OF CONTENTS**
(continued)

Page

11.2    Discharge of AWI ................................................................................46

11.3    Rights of Action ..................................................................................46

11.4    Third Party Agreements .......................................................................47

11.5    Dissolution of Committees ...................................................................47

11.6    Exculpation .........................................................................................47

11.7    Title to Assets; Discharge of Liabilities ...............................................47

11.8    Surrender and Cancellation of Instruments ...........................................48

11.9    Notices ................................................................................................48

11.10   Headings .............................................................................................49

11.11   Severability .........................................................................................49

11.12   Governing Law ....................................................................................49

11.13   Compliance with Tax Requirements .....................................................50

11.14   Exemption from Transfer Taxes ...........................................................50

11.15   Expedited Determination of Postpetition Taxes .....................................50

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
---------------------------------------------------------- x
In re                                        :    Chapter 11 Case No.
                                             :
ARMSTRONG WORLD INDUSTRIES,                  :    00-4471 (JKF)
INC., et al.,                                :
                                             :
                     Debtors.                :    (Jointly Administered)
---------------------------------------------------------- x
```

FOURTH AMENDED PLAN OF REORGANIZATION
OF ARMSTRONG WORLD INDUSTRIES, INC., AS MODIFIED

Armstrong World Industries, Inc. hereby proposes the following plan of
reorganization:

ARTICLE I

DEFINITIONS

A. Defined Terms. As used herein, the following terms shall have the
respective meanings specified below, unless the context otherwise requires:

1.1     144A Debt Securities:  Debt securities issued by Reorganized AWI in a
144A Offering, having terms and conditions as determined by AWI and the initial purchasers in
their sole discretion, subject, however, to the provisions of Section 7.3 of the Plan.

1.2     144A Offering:  One or more private offerings of 144A Debt Securities,
pursuant to Rule 144A and/or Regulation S under the Securities Act of 1933, through initial
purchasers to institutional and other investors, completed on or after the Effective Date but prior
to the Initial Distribution Date.

1.3     144A Offering Proceeds:  The amount equal to the sum of (x) the
aggregate net cash proceeds of any 144A Offerings, plus (y) the Term Loan B Proceeds, if any.

1.4     Administrative Bar Date Order:  An order of the Bankruptcy Court
setting a deadline for the filing of certain Administrative Expenses.

1.5     Administrative Expense:  Any Claim constituting a cost or expense of
administration in the Chapter 11 Case under section 503 of the Bankruptcy Code, including,
without express or implied limitation, any actual and necessary costs and expenses of preserving
the estate of AWI, any expenses of professionals under sections 330 and 331 of the Bankruptcy
Code, any actual and necessary costs and expenses of operating the businesses of AWI, any
indebtedness or obligations incurred or assumed by AWI, as debtor in possession, in connection
with the conduct of its business or for the acquisition or lease of property or the rendition of
services, any allowed compensation or reimbursement of expenses under section 503(b)(2)-(5) of
the Bankruptcy Code, and any fees or charges assessed against the estate of AWI under section
1930, chapter 123, title 28, United States Code.

1.6     *Administrative Expense Creditor*:  Any Creditor entitled to payment of an Administrative Expense.

1.7     *Administrative Expense Objection Deadline*:  The first Business Day that is thirty (30) days after the Effective Date, as such date may be extended from time to time by order of the Bankruptcy Court.

1.8     *Affiliate*:  Any Entity, other than (a) an Entity in which AWI has less than a fifty percent (50%) direct or indirect interest, (b) AWWD, or (c) Holdings, that is an "affiliate" of AWI, as of the date immediately preceding the Effective Date, within the meaning of section 101(2) of the Bankruptcy Code.

1.9     *Affiliate Claims*:  All Claims against AWI held by an Affiliate.

1.10    *Agent Bank*:  The JPMorgan Chase Bank, or such other Entity acting as agent under the DIP Credit Facility from time to time.

1.11    *Allowed*:

(a)  With respect to any Claim (other than an Administrative Expense, Asbestos Property Damage Claim or Asbestos Personal Injury Claim), proof of which was filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court, (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Claim to the extent asserted in the proof of such Claim, or (ii) as to which an objection has been interposed, such Claim to the extent that it has been allowed in whole or in part by a Final Order of the Bankruptcy Court or by an agreement with AWI or Reorganized AWI, as the case may be, in accordance with the Claims Settlement Guidelines as in effect at the time of such agreement.

(b)  With respect to any Claim (other than an Administrative Expense or Asbestos Personal Injury Claim), as to which no proof of claim was filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Claim to the extent that it has been listed by AWI in its Schedules as liquidated in amount and not disputed or contingent.

(c)  With respect to any Claim that is asserted to constitute an Administrative Expense

(i)     that represents an actual or necessary expense of preserving the estate or operating the business of AWI for payment of goods, services, wages, or benefits or for credit extended to AWI, as debtor in possession, any such Claim to the extent that such claim is reflected as a postpetition liability of AWI on AWI's books and records as of the Effective Date;

(ii)    in an action against AWI pending as of the Confirmation Date or not required to be filed against AWI pursuant to the Administrative Bar Date Order, any such Claim to the extent (x) it is allowed by a Final Order of a court of competent jurisdiction or by agreement between Reorganized AWI and the holder of such Administrative Expense, and (y) if AWI disputes that such claim is a cost or expense of administration under sections 503(b) and 507(a)(1) of the

2

Bankruptcy Code, to the extent the Bankruptcy Court determines by a Final Order that it constitutes a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(iii)    timely filed in accordance with the Administrative Bar Date Order, any such Claim to the extent (i) no objection is interposed by the Administrative Expense Objection Deadline or (ii) if an objection is interposed by the Administrative Expense Objection Deadline, is allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the extent that such allowed portion is deemed, pursuant to a Final Order of the Bankruptcy Court, to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; or

(iv)    that represents a Claim of a professional person employed under section 327 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for the allowance of compensation and reimbursement of expenses pursuant to section 330 of the Bankruptcy Code or an Administrative Expense arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code, such Claim to the extent it is allowed by a Final Order of the Bankruptcy Court.

(d) With respect to any Asbestos Personal Injury Claim, such Claim to the extent that it is Allowed in accordance with the procedures established pursuant to the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures. Pursuant to the Confirmation Order, an Allowed Claim, with respect to any Asbestos Personal Injury Claim, shall establish the amount of legal liability against the Asbestos PI Trust in the amount of the liquidated value of such Claim, as determined in accordance with the Asbestos PI Trust Distribution Procedures.

(e) With respect to any Asbestos Property Damage Claim, proof of which was filed by the Asbestos PD Bar Date, such Claim to the extent that it is allowed by an order of the Bankruptcy Court.

1.12    *Allowed Amount*:  The lesser of (a) the dollar amount of an Allowed Claim or (b) the Estimated Amount of such Claim. Unless otherwise specified herein, in the Asbestos PI Trust Distribution Procedures or by Final Order of the Bankruptcy Court, the Allowed Amount of an Allowed Claim shall not include interest accruing on such Allowed Claim from and after the Commencement Date.

1.13    *Amended and Restated Articles of Incorporation*:    The Articles of Incorporation of Reorganized AWI, to be amended and restated in accordance with section 7.1 hereof, in substantially the form of Exhibit 1.13 to the Plan.

1.14    *Amended and Restated By-Laws*:  The By-Laws of Reorganized AWI, to be amended and restated in accordance with section 7.4 hereof, in substantially the form of Exhibit 1.14 to the Plan.

1.15    *Articles of Incorporation*:  The Articles of Incorporation of AWI, as such Articles of Incorporation may be amended by the Amended and Restated Articles of Incorporation or otherwise.

1.16    *Asbestos PD Bar Date*: March 20, 2002.

3

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re                                                   :   Chapter 11 Case No.
                                                        :
ARMSTRONG WORLD INDUSTRIES,                             :   00-4471 (JKF)
INC., et al.,                                           :
                                                        :
                                     Debtors.           :   (Jointly Administered)
------------------------------------------------------- x
```

## FOURTH AMENDED PLAN OF REORGANIZATION
## OF ARMSTRONG WORLD INDUSTRIES, INC., AS MODIFIED

*This plan of reorganization provides for the issuance of an Asbestos PI Permanent Channeling Injunction and a Claims Trading Injunction. See sections 1.18 (definition of "Asbestos Personal Injury Claim"), 1.21 (definition of "Asbestos PI Permanent Channeling Injunction"), 1.91 (definition of "PI Protected Party"), and 3.2(g)(ii) (Treatment of Asbestos Personal Injury Claims under the Plan) for details relating to the Asbestos PI Permanent Channeling Injunction and sections 1.18 (definition of "Asbestos Personal Injury Claim") and 1.40 (definition of "Claims Trading Injunction") for details regarding the Claims Trading Injunction.*

## TABLE OF CONTENTS

**Page**

| ARTICLE I | DEFINITIONS | | 1 |
|---|---|---|---|
| A. | Defined Terms | | 1 |
| | 1.1 | 144A Debt Securities | 1 |
| | 1.2 | 144A Offering | 1 |
| | 1.3 | 144A Offering Proceeds | 1 |
| | 1.4 | Administrative Bar Date Order | 1 |
| | 1.5 | Administrative Expense | 1 |
| | 1.6 | Administrative Expense Creditor | 2 |
| | 1.7 | Administrative Expense Objection Deadline | 2 |
| | 1.8 | Affiliate | 2 |
| | 1.9 | Affiliate Claims | 2 |
| | 1.10 | Agent Bank | 2 |
| | 1.11 | Allowed | 2 |
| | 1.12 | Allowed Amount | 3 |
| | 1.13 | Amended and Restated Articles of Incorporation | 3 |
| | 1.14 | Amended and Restated By-Laws | 3 |
| | 1.15 | Articles of Incorporation | 3 |
| | 1.16 | Asbestos PD Bar Date | 3 |
| | 1.17 | Asbestos PD Committee | 4 |
| | 1.18 | Asbestos Personal Injury Claim | 4 |
| | 1.19 | Asbestos PI Claimants' Committee | 4 |
| | 1.20 | Asbestos PI Insurance Asset | 4 |
| | 1.21 | Asbestos PI Permanent Channeling Injunction | 5 |
| | 1.22 | Asbestos PI Trust | 5 |
| | 1.23 | Asbestos PI Trust Agreement | 6 |
| | 1.24 | Asbestos PI Trust Distribution Procedures | 6 |
| | 1.25 | Asbestos PI Trustees | 6 |
| | 1.26 | Asbestos Property Damage Claim | 6 |
| | 1.27 | Asbestos Property Damage Contribution Claim | 6 |
| | 1.28 | Available Cash | 6 |
| | 1.29 | AWWD | 7 |
| | 1.30 | AWI | 7 |

**TABLE OF CONTENTS**
(continued)

Page

1.31    Ballot ..................................................................................................7

1.32    Bankruptcy Code .................................................................................7

1.33    Bankruptcy Court ...............................................................................7

1.34    Bankruptcy Rules ................................................................................7

1.35    Board of Directors ..............................................................................7

1.36    Business Day .......................................................................................7

1.37    Chapter 11 Case ..................................................................................7

1.38    Claim .................................................................................................8

1.39    Claims Settlement Guidelines...............................................................8

1.40    Claims Trading Injunction ...................................................................8

1.41    Class ..................................................................................................8

1.42    COLI Claims.......................................................................................8

1.43    Commencement Date ..........................................................................8

1.44    Confirmation Date ..............................................................................8

1.45    Confirmation Deadline ........................................................................8

1.46    Confirmation Order ............................................................................8

1.47    Contingent Claim.................................................................................8

1.48    Convenience Claim..............................................................................9

1.49    Creditor..............................................................................................9

1.50    Debtor ................................................................................................9

1.51    Debtor in Possession............................................................................9

1.52    Debt Security Claim ............................................................................9

1.53    Demand...............................................................................................9

1.54    DIP Credit Facility..............................................................................9

1.55    DIP Credit Facility Claim....................................................................9

1.56    DIP Lenders........................................................................................9

1.57    Disallowed Claim ................................................................................9

1.58    Disbursing Agent ................................................................................9

1.59    Disputed Claim....................................................................................9

1.60    Disputed Claim Amount ....................................................................10

1.61    Disputed Unsecured Claims Reserve...................................................10

1.62    Distribution ......................................................................................10

**TABLE OF CONTENTS**
**(continued)**

Page

1.63    Distribution Date ........................................................................... 10
1.64    District Court .................................................................................. 10
1.65    DTC .................................................................................................. 10
1.66    Employee Benefit Claim.................................................................. 10
1.67    Effective Date .................................................................................. 10
1.68    Encumbrance ................................................................................... 11
1.69    Entity ............................................................................................... 11
1.70    Environmental Claim....................................................................... 11
1.71    Equity Interest.................................................................................. 11
1.72    Estimated Amount ........................................................................... 11
1.73    Existing AWI Common Stock .......................................................... 11
1.74    Final Distribution Date .................................................................... 11
1.75    Final Order....................................................................................... 11
1.76    Future Claimants' Representative................................................... 11
1.77    Global Asbestos PD Settlement...................................................... 12
1.78    Holdings............................................................................................ 12
1.79    Holdings Plan of Liquidation........................................................... 12
1.80    Indentures ........................................................................................ 12
1.81    Indenture Trustees .......................................................................... 12
1.82    Indenture Trustees' Fees and Expenses........................................ 12
1.83    Indirect PI Trust Claim.................................................................... 12
1.84    Initial Distribution Date.................................................................... 13
1.85    Internal Revenue Code ................................................................... 13
1.86    IRS.................................................................................................... 13
1.87    Lazard .............................................................................................. 13
1.88    New Common Stock......................................................................... 13
1.89    New Long-Term Incentive Plan ...................................................... 13
1.90    Pennsylvania BCL ........................................................................... 13
1.91    PI Protected Party ........................................................................... 13
1.92    Plan .................................................................................................. 15
1.93    Plan Note Amount ........................................................................... 15
1.94    Plan Note Indentures ...................................................................... 15

**TABLE OF CONTENTS**
(continued)

| | | | Page |
|---|---|---|---|
| | 1.95 | Plan Notes | 15 |
| | 1.96 | Priority Claim | 15 |
| | 1.97 | Priority Tax Claim | 15 |
| | 1.98 | Pro Rata Share | 16 |
| | 1.99 | Qualified Appraisal | 16 |
| | 1.100 | Record Date | 16 |
| | 1.101 | Reorganized AWI | 16 |
| | 1.102 | Reorganization Consideration | 16 |
| | 1.103 | Retention Period | 16 |
| | 1.104 | Schedules | 16 |
| | 1.105 | SEC | 16 |
| | 1.106 | Secured Claim | 16 |
| | 1.107 | Stockholder and Registration Rights Agreement | 16 |
| | 1.108 | Subsidiary Debt Guarantee Claim | 16 |
| | 1.109 | Term Loan B | 16 |
| | 1.110 | Term Loan B Proceeds | 17 |
| | 1.111 | Treasury Regulations | 17 |
| | 1.112 | Unliquidated Claim | 17 |
| | 1.113 | Unsecured Claim | 17 |
| | 1.114 | Unsecured Creditors' Committee | 17 |
| | 1.115 | Voting Deadline | 17 |
| | 1.116 | Voting Procedures Order | 17 |
| B. | | Other Terms | 17 |
| C. | | Exhibits | 17 |
| ARTICLE II | | PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS | 18 |
| | 2.1 | Payment of Allowed Administrative Expenses | 18 |
| | 2.2 | Compensation and Reimbursement Claims | 18 |
| | 2.3 | DIP Credit Facility Claim | 18 |
| | 2.4 | Priority Tax Claims | 18 |
| ARTICLE III | | CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS | 18 |
| | 3.1 | Summary | 18 |

iv

**TABLE OF CONTENTS**
(continued)

Page

| | | | |
|---|---|---|---|
| | 3.2 | Classification and Treatment | 20 |
| | 3.3 | In the event of a controversy as to whether any class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy prior to the Confirmation Date | 26 |
| ARTICLE IV | | MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN | 26 |
| | 4.1 | Modification of the Plan | 26 |
| | 4.2 | Revocation or Withdrawal | 26 |
| | 4.3 | Amendment of Plan Documents | 27 |
| ARTICLE V | | PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS | 27 |
| | 5.1 | Objections to Claims; Prosecution of Disputed Claims | 27 |
| | 5.2 | Claims Settlement Guidelines | 27 |
| | 5.3 | Distributions on Account of Disputed Claims | 27 |
| | 5.4 | Disputed Unsecured Claims Reserve | 27 |
| | 5.5 | Tax Treatment of Disputed Unsecured Claims Reserve | 27 |
| ARTICLE VI | | ACCEPTANCE OR REJECTION OF THE PLAN | 28 |
| | 6.1 | Impaired Classes to Vote | 28 |
| | 6.2 | Acceptance by Class of Claims | 28 |
| | 6.3 | Nonconsensual Confirmation | 28 |
| ARTICLE VII | | IMPLEMENTATION OF THE PLAN | 28 |
| | 7.1 | Creation of Asbestos PI Trust | 28 |
| | 7.2 | Appointment of Asbestos PI Trustees | 28 |
| | 7.3 | 144A Offering | 28 |
| | 7.4 | Amendment of Articles of Incorporation | 29 |
| | 7.5 | Amendment of By-Laws | 29 |
| | 7.6 | Stockholder and Registration Rights Agreement | 29 |
| | 7.7 | Distributions under the Plan | 29 |
| | 7.8 | Timing of Distributions under the Plan | 29 |
| | 7.9 | Disbursing Agent | 30 |
| | 7.10 | Record Date | 30 |
| | 7.11 | Distributions to Holders of Debt Security Claims Administered by the Indenture Trustees | 31 |
| | 7.12 | Manner of Payment under the Plan | 31 |

**TABLE OF CONTENTS**
(continued)

Page

7.13   Hart-Scott-Rodino Compliance ...........................................................31

7.14   Fractional Shares or Other Distributions ...............................................31

7.15   Occurrence of the Confirmation Date.....................................................31

7.16   Occurrence of the Effective Date ..........................................................33

7.17   Cancellation of Existing Debt Securities.................................................34

7.18   Expiration of the Retention Period ........................................................35

7.19   Compensation of the Applicable Indenture Trustees.............................35

7.20   Distribution of Unclaimed Property ......................................................35

7.21   Management of Reorganized AWI.........................................................35

7.22   Listing of Reorganized AWI Common Stock.........................................36

7.23   Corporate Reorganization Actions ........................................................36

7.24   Holdings Transactions...........................................................................36

7.25   Compliance with QSF Regulations .......................................................37

7.26   Effectuating Documents and Further Transactions ...............................37

7.27   Allocation of Plan Distributions Between Principal and Interest..........37

ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES...........................37

8.1    Assumption of Executory Contracts and Unexpired Leases..................37

8.2    Rejection of Executory Contracts and Unexpired Leases......................38

8.3    Claims Arising from Rejection, Termination or Expiration...................38

8.4    Previously Scheduled Contracts ............................................................38

8.5    Insurance Policies and Agreements........................................................39

8.6    Indemnification and Reimbursement Obligations ..................................39

8.7    Compensation and Benefit Programs .....................................................40

8.8    Management Agreements.......................................................................42

ARTICLE IX   RETENTION OF JURISDICTION....................................................................42

ARTICLE X    TRANSFERS OF PROPERTY TO AND ASSUMPTION OF CERTAIN
             LIABILITIES BY THE ASBESTOS PI TRUST ...............................................44

10.1   Transfer of Certain Property to the Asbestos PI Trust...........................44

10.2   Assumption of Certain Liabilities by the Asbestos PI Trust .................45

10.3   Cooperation with Respect to Insurance Matters.....................................45

10.4   Authority of AWI .................................................................................46

ARTICLE XI   MISCELLANEOUS PROVISIONS ..................................................................46

11.1   Payment of Statutory Fees.....................................................................46

**TABLE OF CONTENTS**
(continued)

Page

11.2    Discharge of AWI......................................................................................46

11.3    Rights of Action........................................................................................46

11.4    Third Party Agreements............................................................................47

11.5    Dissolution of Committees .......................................................................47

11.6    Exculpation...............................................................................................47

11.7    Title to Assets; Discharge of Liabilities ..................................................47

11.8    Surrender and Cancellation of Instruments .............................................48

11.9    Notices......................................................................................................48

11.10   Headings ...................................................................................................49

11.11   Severability...............................................................................................49

11.12   Governing Law .........................................................................................49

11.13   Compliance with Tax Requirements ........................................................50

11.14   Exemption from Transfer Taxes...............................................................50

11.15   Expedited Determination of Postpetition Taxes ......................................50

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ------------------------------------------------------- x | | |
| *In re* | : | **Chapter 11 Case No.** |
| | : | |
| **ARMSTRONG WORLD INDUSTRIES,** | : | **00-4471 (JKF)** |
| INC., *et al.,* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| ------------------------------------------------------- x | | |

**FOURTH AMENDED PLAN OF REORGANIZATION**
**OF ARMSTRONG WORLD INDUSTRIES, INC., AS MODIFIED**

Armstrong World Industries, Inc. hereby proposes the following plan of reorganization:

**ARTICLE I**

**DEFINITIONS**

**A. Defined Terms.** As used herein, the following terms shall have the respective meanings specified below, unless the context otherwise requires:

1.1 *144A Debt Securities:* Debt securities issued by Reorganized AWI in a 144A Offering, having terms and conditions as determined by AWI and the initial purchasers in their sole discretion, subject, however, to the provisions of Section 7.3 of the Plan.

1.2 *144A Offering:* One or more private offerings of 144A Debt Securities, pursuant to Rule 144A and/or Regulation S under the Securities Act of 1933, through initial purchasers to institutional and other investors, completed on or after the Effective Date but prior to the Initial Distribution Date.

1.3 *144A Offering Proceeds:* The amount equal to the sum of (x) the aggregate net cash proceeds of any 144A Offerings, plus (y) the Term Loan B Proceeds, if any.

1.4 *Administrative Bar Date Order:* An order of the Bankruptcy Court setting a deadline for the filing of certain Administrative Expenses.

1.5 *Administrative Expense:* Any Claim constituting a cost or expense of administration in the Chapter 11 Case under section 503 of the Bankruptcy Code, including, without express or implied limitation, any actual and necessary costs and expenses of preserving the estate of AWI, any expenses of professionals under sections 330 and 331 of the Bankruptcy Code, any actual and necessary costs and expenses of operating the businesses of AWI, any indebtedness or obligations incurred or assumed by AWI, as debtor in possession, in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services, any allowed compensation or reimbursement of expenses under section 503(b)(2)-(5) of the Bankruptcy Code, and any fees or charges assessed against the estate of AWI under section 1930, chapter 123, title 28, United States Code.

1.6    *Administrative Expense Creditor*:  Any Creditor entitled to payment of an Administrative Expense.

1.7    *Administrative Expense Objection Deadline*:  The first Business Day that is thirty (30) days after the Effective Date, as such date may be extended from time to time by order of the Bankruptcy Court.

1.8    *Affiliate*:  Any Entity, other than (a) an Entity in which AWI has less than a fifty percent (50%) direct or indirect interest, (b) AWWD, or (c) Holdings, that is an "affiliate" of AWI, as of the date immediately preceding the Effective Date, within the meaning of section 101(2) of the Bankruptcy Code.

1.9    *Affiliate Claims*:  All Claims against AWI held by an Affiliate.

1.10    *Agent Bank*:  The JPMorgan Chase Bank, or such other Entity acting as agent under the DIP Credit Facility from time to time.

1.11    *Allowed*:

(a)  With respect to any Claim (other than an Administrative Expense, Asbestos Property Damage Claim or Asbestos Personal Injury Claim), proof of which was filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court, (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Claim to the extent asserted in the proof of such Claim, or (ii) as to which an objection has been interposed, such Claim to the extent that it has been allowed in whole or in part by a Final Order of the Bankruptcy Court or by an agreement with AWI or Reorganized AWI, as the case may be, in accordance with the Claims Settlement Guidelines as in effect at the time of such agreement.

(b)  With respect to any Claim (other than an Administrative Expense or Asbestos Personal Injury Claim), as to which no proof of claim was filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Claim to the extent that it has been listed by AWI in its Schedules as liquidated in amount and not disputed or contingent.

(c)  With respect to any Claim that is asserted to constitute an Administrative Expense

(i)    that represents an actual or necessary expense of preserving the estate or operating the business of AWI for payment of goods, services, wages, or benefits or for credit extended to AWI, as debtor in possession, any such Claim to the extent that such claim is reflected as a postpetition liability of AWI on AWI's books and records as of the Effective Date;

(ii)    in an action against AWI pending as of the Confirmation Date or not required to be filed against AWI pursuant to the Administrative Bar Date Order, any such Claim to the extent (x) it is allowed by a Final Order of a court of competent jurisdiction or by agreement between Reorganized AWI and the holder of such Administrative Expense, and (y) if AWI disputes that such claim is a cost or expense of administration under sections 503(b) and 507(a)(1) of the

2

Bankruptcy Code, to the extent the Bankruptcy Court determines by a Final Order that it constitutes a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(iii)    timely filed in accordance with the Administrative Bar Date Order, any such Claim to the extent (i) no objection is interposed by the Administrative Expense Objection Deadline or (ii) if an objection is interposed by the Administrative Expense Objection Deadline, is allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the extent that such allowed portion is deemed, pursuant to a Final Order of the Bankruptcy Court, to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; or

(iv)    that represents a Claim of a professional person employed under section 327 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for the allowance of compensation and reimbursement of expenses pursuant to section 330 of the Bankruptcy Code or an Administrative Expense arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code, such Claim to the extent it is allowed by a Final Order of the Bankruptcy Court.

(d) With respect to any Asbestos Personal Injury Claim, such Claim to the extent that it is Allowed in accordance with the procedures established pursuant to the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures. Pursuant to the Confirmation Order, an Allowed Claim, with respect to any Asbestos Personal Injury Claim, shall establish the amount of legal liability against the Asbestos PI Trust in the amount of the liquidated value of such Claim, as determined in accordance with the Asbestos PI Trust Distribution Procedures.

(e) With respect to any Asbestos Property Damage Claim, proof of which was filed by the Asbestos PD Bar Date, such Claim to the extent that it is allowed by an order of the Bankruptcy Court.

1.12    *Allowed Amount*: The lesser of (a) the dollar amount of an Allowed Claim or (b) the Estimated Amount of such Claim. Unless otherwise specified herein, in the Asbestos PI Trust Distribution Procedures or by Final Order of the Bankruptcy Court, the Allowed Amount of an Allowed Claim shall not include interest accruing on such Allowed Claim from and after the Commencement Date.

1.13    *Amended and Restated Articles of Incorporation*:    The Articles of Incorporation of Reorganized AWI, to be amended and restated in accordance with section 7.1 hereof, in substantially the form of Exhibit 1.13 to the Plan.

1.14    *Amended and Restated By-Laws*: The By-Laws of Reorganized AWI, to be amended and restated in accordance with section 7.4 hereof, in substantially the form of Exhibit 1.14 to the Plan.

1.15    *Articles of Incorporation*: The Articles of Incorporation of AWI, as such Articles of Incorporation may be amended by the Amended and Restated Articles of Incorporation or otherwise.

1.16    *Asbestos PD Bar Date*: March 20, 2002.

3

1.17    *Asbestos PD Committee*: The Asbestos Property Damage Committee, consisting of Entities appointed as members in the Chapter 11 Case by the United States Trustee for the District of Delaware and their duly appointed successors, if any, as the same may be reconstituted from time to time.

1.18    *Asbestos Personal Injury Claim*: **Any Claim or remedy, liability, or Demand against AWI now existing or hereafter arising, whether or not such Claim, remedy, liability, or Demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, for death, bodily injury, sickness, disease, medical monitoring or other personal injuries (whether physical, emotional, or otherwise) to the extent caused or allegedly caused, directly or indirectly, by the presence of or exposure (whether prior to or after the Commencement Date) to asbestos or asbestos-containing products or things that was or were installed, engineered, designed, manufactured, fabricated, constructed, sold, supplied, produced, specified, selected, distributed, released, marketed, serviced, maintained, repaired, purchased, owned, occupied, used, removed, replaced or disposed by AWI or an Entity for whose products or operations AWI allegedly has liability or for which AWI is otherwise allegedly liable, including, without express or implied limitation, any Claim, remedy, liability, or Demand for compensatory damages (such as loss of consortium, wrongful death, medical monitoring, survivorship, proximate, consequential, general, and special damages) and punitive damages, and any Claim, remedy, liability or Demand for reimbursement, indemnification, subrogation and contribution (including, without limitation, any Indirect PI Trust Claim), and any claim under any settlement entered into by or on behalf of AWI prior to the Commencement Date relating to an Asbestos Personal Injury Claim. An Asbestos Property Damage Claim or a workers' compensation claim brought directly by a past or present employee of AWI under an applicable workers' compensation statute against AWI shall not constitute an Asbestos Personal Injury Claim.**

1.19    *Asbestos PI Claimants' Committee*: The Official Committee of Asbestos Claimants, consisting of Entities appointed as members in the Chapter 11 Case by the United States Trustee for the District of Delaware and their duly appointed successors, if any, as the same may be reconstituted from time to time.

1.20    *Asbestos PI Insurance Asset*: All rights arising under liability insurance policies issued to AWI with inception dates prior to January 1, 1982 with respect to the liability for Asbestos Personal Injury Claims (with the exception of AWI's claim against Liberty Mutual Insurance Company for costs, expenses and fees incurred in connection with an Alternative Dispute Resolution Proceeding initiated in 1996 under the Agreement Concerning Asbestos Related Claims of June 19, 1985, AWI's claim against Century Indemnity Company for payments due and owing to AWI before February 2003 under a settlement agreement dated February 8, 2000, together with applicable interest to the date of payment, and AWI's rights to insurance relating to workers' compensation claims). The foregoing includes, but is not limited to, rights under insurance policies, rights under settlement agreements made with respect to such insurance policies (with the exception of AWI's claim against Century Indemnity Company for amounts, including, without limitation, interest, due and owing under a settlement agreement dated February 8, 2000), rights against the estates of insolvent insurers that issued such policies or entered into such settlements, and rights against state insurance guaranty associations arising out of any such insurance policies issued by insolvent insurers. The foregoing also includes the right, on behalf of AWI and its subsidiaries as of the Effective Date, to give a full release of the

4

insurance rights of AWI and its subsidiaries as of the Effective Date under any such policy or settlement agreement with the exception of rights to coverage for property damage Claims and rights to coverage for the amount that AWI agreed to pay to plaintiffs in *Maertin et al. v. Armstrong World Industries, Inc. et al.*, No. 95-CV-20849 (JBS) (D.N.J.) in a settlement agreement executed November 22, 2000 and rights to coverage with respect to workers' compensation claims.

      1.21    *Asbestos PI Permanent Channeling Injunction*: **An order or orders of the District Court in accordance with, and pursuant to, section 524(g) of the Bankruptcy Code permanently and forever staying, restraining, and enjoining any Entity from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Personal Injury Claims, all of which shall be channeled to the Asbestos PI Trust for resolution as set forth in the Asbestos PI Trust Distribution Procedures (other than actions brought to enforce any right or obligation under the Plan, any Exhibits to the Plan, or any other agreement or instrument between AWI or Reorganized AWI and the Asbestos PI Trust, which actions shall be in conformity and compliance with the provisions hereof), including, but not limited to:**

      **(a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, a judicial, arbitral, administrative, or other proceeding) in any forum against or affecting any PI Protected Party or any property or interests in property of any PI Protected Party;**

      **(b) enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any PI Protected Party or any property or interests in property of any PI Protected Party;**

      **(c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any PI Protected Party or any property or interests in property of any PI Protected Party;**

      **(d) setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any PI Protected Party or any property or interests in property of any PI Protected Party;** *provided, however,* **that the foregoing shall not preclude the assertion of a setoff or recoupment defense under applicable law by a third party solely in response to, and to the extent of, a claim asserted by a PI Protected Party against such third party that such third party is liable in whole or in part for an Asbestos Personal Injury Claim; and**

      **(e) proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos PI Trust, except in conformity and compliance therewith.**

      1.22    *Asbestos PI Trust*: The trust established by AWI in accordance with the Asbestos PI Trust Agreement.

1.23    *Asbestos PI Trust Agreement*:    That certain AWI Asbestos Personal Injury Settlement Trust Agreement, executed by AWI and the Asbestos PI Trustees, substantially in the form of Exhibit 1.23 to the Plan.

1.24    *Asbestos PI Trust Distribution Procedures*:    The AWI Asbestos Personal Injury Settlement Trust Distribution Procedures to be implemented by the Asbestos PI Trustees pursuant to the terms and conditions of the Plan and the Asbestos PI Trust Agreement to process, liquidate, and pay Asbestos Personal Injury Claims, substantially in the form of Exhibit 1.24 to the Plan.

1.25    *Asbestos PI Trustees*:    Collectively, the persons confirmed by the Bankruptcy Court to serve as trustees of the Asbestos PI Trust, pursuant to the terms of the Asbestos PI Trust Agreement, or as subsequently may be appointed pursuant to the terms of the Asbestos PI Trust Agreement.

1.26    *Asbestos Property Damage Claim*:    Any Claim or remedy or liability against AWI, whether or not such Claim, remedy, or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, for damages for property damage, including but not limited to, the cost of inspecting, maintaining, encapsulating, repairing, decontaminating, removing or disposing of asbestos or asbestos-containing products in buildings, other structures, or other property arising from the installation in, presence in or removal from buildings or other structures of asbestos or asbestos-containing products that was or were installed, manufactured, sold, supplied, produced, distributed, released or marketed by AWI prior to the Commencement Date, or for which AWI is allegedly liable, including, without express or implied limitation, any such Claims, remedies and liabilities for compensatory damages (such as proximate, consequential, general, and special damages) and punitive damages, and any Claim, remedy or liability for reimbursement, indemnification, subrogation and contribution, including, without limitation, any Asbestos Property Damage Contribution Claim.    Asbestos Property Damage Claims shall not include Asbestos Personal Injury Claims.

1.27    *Asbestos Property Damage Contribution Claim*:    Any Claim or remedy or liability against AWI, whether or not such Claim, remedy or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases for such Claim, remedy or liability are known or unknown, that is (i) held by (A) any Entity (other than a director or officer entitled to indemnification pursuant to section 8.6 of the Plan) who has been, is, or may be a defendant in an action seeking damages for property damage, including but not limited to, the cost of inspecting, maintaining, encapsulating, repairing, decontaminating, removing or disposing of asbestos or asbestos-containing products in buildings, other structures, or other property, or (B) any assignee or transferee of such Entity, and (ii) on account of alleged liability by AWI for reimbursement, indemnification, subrogation,  or contribution of any portion of any damages such Entity has paid or may pay to the plaintiff in such action.

1.28    *Available Cash*:    The sum of the following:  (a) all cash on hand of AWI and its subsidiaries as of the last day of the month immediately preceding the Effective Date *less* the sum of the following as of such date:    (i) One Hundred Million and 00/100 Dollars ($100,000,000.00) or such lesser amount as AWI, in its sole discretion (after consultation with the Asbestos PI Claimants' Committee, Unsecured Creditors' Committee, and the Future Claimants' Representative), determines it requires for working capital purposes, (ii) the Allowed Amount of

6

Allowed Administrative Expenses, (iii) a reasonable estimate by AWI of additional Administrative Expenses (such as professional fees and expenses) that may become Allowed thereafter (other than Administrative Expenses of the type specified in section 1.11(c)(i) of the Plan) and fees and expenses payable in connection with any exit facility referred to in section 7.16(g) of the Plan, (iv) the Allowed Amount of Allowed Priority Tax Claims, (v) a reasonable estimate by AWI of additional Priority Tax Claims that may become Allowed thereafter, (vi) the Allowed Amount of all Priority Claims, (vii) a reasonable estimate of all Priority Claims that may became Allowed thereafter, (viii) the DIP Credit Facility Claim, (ix) the cash required to make the distributions for Class 3 (Convenience Claims) for those that are Allowed and a reasonable estimate by AWI of additional Convenience Claims that may become Allowed thereafter, (x) any other cash required to be paid or distributed by AWI pursuant to the Plan (other than in respect of "Available Cash"), and (xi) the amount reasonably estimated by AWI to be the cost of curing any defaults under the executory contracts and unexpired leases to be assumed by AWI under the Plan, (b) any amounts drawn, in AWI's sole discretion, under the working capital facility referenced in section 7.16(g) of the Plan for the purpose of funding the Distributions under the Plan, and (c) any proceeds of insurance received and retained by Reorganized AWI from the Effective Date to the Final Distribution Date on account of an Allowed Environmental Claim that is treated as an Allowed Unsecured Claim in accordance with sections 3.2(f) and 3.2(h) of the Plan; *provided, however*, that the 144A Offering Proceeds, if any, and any amounts received by AWI in connection with a settlement with Dal-Tile, International, Inc., shall be excluded from the determination of, and shall not constitute, Available Cash.

       1.29    *AWWD*:  Armstrong Worldwide, Inc., a Delaware corporation.

       1.30    *AWI*:  Armstrong World Industries, Inc., a Pennsylvania corporation.

       1.31    *Ballot*:  The form or forms distributed to holders of impaired Claims and Equity Interests on which is to be indicated the acceptance or rejection of the Plan.

       1.32    *Bankruptcy Code*:  The Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code, as applicable to the Chapter 11 Case.

       1.33    *Bankruptcy Court*:  The United States District Court for the District of Delaware, having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court constituted pursuant to section 151 of title 28 of the United States Code.

       1.34    *Bankruptcy Rules*:  The Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Case, including the Local Rules of the Bankruptcy Court.

       1.35    *Board of Directors*:  The Board of Directors of AWI or Reorganized AWI, as it may exist from time to time.

       1.36    *Business Day*:  Any day on which commercial banks are required to be open for business in New York, New York.

       1.37    *Chapter 11 Case*:  The chapter 11 case of AWI pending in the Bankruptcy Court as *In re Armstrong World Industries, Inc., et al.*, Case No. 00-4471 (JKF) (Jointly Administered).

1.38    *Claim*:  (a) A "claim," as defined in section 101(5) of the Bankruptcy Code, against AWI, as debtor or Debtor in Possession, whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other Contingent Claim, and (b) any Environmental Claim, whether or not it constitutes a "claim" under section 101(5) of the Bankruptcy Code, but in either case, not including a Demand.

1.39    *Claims Settlement Guidelines*:  The settlement guidelines and authority contained in that certain Order Granting Motion of the Debtors for Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(b) Authorizing the Establishment of Procedures to Settle Certain Prepetition Claims Against the Debtors' Estates dated May 31, 2002, as amended by the amendments set forth in Exhibit 1.39 to the Plan.

1.40    *Claims Trading Injunction*:  **An order or orders of the Bankruptcy Court permanently and forever staying, restraining, and enjoining any Entity from, directly or indirectly, purchasing, selling, transferring, assigning, conveying, pledging, or otherwise acquiring or disposing of any Asbestos Personal Injury Claim;** ***provided***, ***however***, **that the foregoing shall not apply to (i) the transfer of an Asbestos Personal Injury Claim to the holder of an Indirect PI Trust Claim solely as a result of such holder's satisfaction of such Asbestos Personal Injury Claim or (ii) the transfer of an Asbestos Personal Injury Claim by will or under the laws of descent and distribution.  Any such order or orders also will provide that any action taken in violation thereof will be void** *ab initio***.**

1.41    *Class:*  Any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.42    *COLI Claims*:  All amounts due to Pacific Life Insurance Company for loans made by Pacific Life Insurance Company to AWI against (and collateralized by) certain life insurance policies for which AWI is the holder and beneficiary and for which certain of AWI's employees are insureds.

1.43    *Commencement Date*:  December 6, 2000.

1.44    *Confirmation Date*:  The date on which the Confirmation Order has been entered by the Clerk of the Bankruptcy Court and the Clerk of the District Court.

1.45    *Confirmation Deadline*:  The date that is two hundred seventy (270) days after the filing of the Plan with the Bankruptcy Court or such later date as AWI, the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and the Unsecured Creditors' Committee may agree in writing.

1.46    *Confirmation Order*:  The order or orders of the Bankruptcy Court and the District Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, which will contain, *inter alia*, the Asbestos PI Permanent Channeling Injunction and the Claims Trading Injunction; *provided, however*, that, if the District Court does not enter such an order confirming the Plan, then the term "Confirmation Order" shall include an order of the District Court affirming the Confirmation Order entered by the Bankruptcy Court.

1.47    *Contingent Claim*:  Any Claim (other than an Asbestos Personal Injury Claim), the liability for which attaches or is dependent upon the occurrence or happening, or is

8

triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and AWI now or hereafter exists or previously existed.

      1.48    *Convenience Claim*:  As to each holder of an Unsecured Claim, other than a Debt Security Claim, (a) an Unsecured Claim held by such holder in an Allowed Amount of Ten Thousand and 00/100 Dollars ($10,000.00) or less or (b) an Unsecured Claim of such holder the Allowed Amount of which has been reduced to Ten Thousand and 00/100 Dollars ($10,000.00) by the election of the holder thereof, as provided on the Ballot.

      1.49    *Creditor*:  Any Entity that holds a Claim against AWI as Debtor or Debtor in Possession.

      1.50    *Debtor*:  AWI.

      1.51    *Debtor in Possession*:  AWI in its capacity as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

      1.52    *Debt Security Claim*:  Any Unsecured Claim represented by a series of notes or debt securities issued pursuant to an indenture, bank credit agreement, or a note purchase agreement prior to the Commencement Date or any guarantee by AWI of any obligations of another Entity under any series of notes or debt securities issued pursuant to an indenture, bank credit agreement, or a note purchase agreement prior to the Commencement Date.

      1.53    *Demand*:  A demand for payment, present or future, that (i) was not a Claim during the Chapter 11 Case; (ii) arises out of the same or similar conduct or events that gave rise to the Claims addressed by the Asbestos PI Permanent Channeling Injunction; and (iii) pursuant to the Plan, is to be paid by the Asbestos PI Trust.

      1.54    *DIP Credit Facility*:  Revolving Credit and Guaranty Agreement dated as of December 6, 2000 among Armstrong World Industries, Inc., a Pennsylvania corporation, and its subsidiaries, Nitram Liquidators, Inc., a Delaware corporation, and Desseaux Corporation of North America, a Delaware corporation, the banks party thereto, and the Agent Bank, as amended, modified or supplemented from time to time.

      1.55    *DIP Credit Facility Claim*:  Collectively, all Claims of the DIP Lenders arising under the DIP Credit Facility.

      1.56    *DIP Lenders*:  The financial institutions party to the DIP Credit Facility.

      1.57    *Disallowed Claim*:  A Claim that is disallowed in its entirety by an order of the Bankruptcy Court or such other court of competent jurisdiction or that is disallowed in its entirety pursuant to the Asbestos PI Trust Distribution Procedures, as the case may be.

      1.58    *Disbursing Agent*:  Any Entity in its capacity as a disbursing agent under section 7.9 hereof.

      1.59    *Disputed Claim*:  A Claim (other than an Asbestos Personal Injury Claim) that is neither an Allowed Claim nor a Disallowed Claim.

1.60    *Disputed Claim Amount*: The Estimated Amount of a Disputed Claim, or, if no Estimated Amount exists, the amount set forth in the proof of claim relating to such Disputed Claim as the liquidated amount of such Disputed Claim.

1.61    *Disputed Unsecured Claims Reserve*: The trust established pursuant to section 5.4 of the Plan to hold the portion of Plan Notes reserved for Distribution pending the resolution of Disputed Claims in Class 6 of the Plan.

1.62    *Distribution*: The payment or distribution under the Plan of property or interests in property to the holders of Allowed Claims (other than Asbestos Personal Injury Claims and Asbestos Property Damage Claims), the holder of the Equity Interest, and to the Asbestos PI Trust.

1.63    *Distribution Date*: (a) The Initial Distribution Date, (b) the first Business Day after the end of the months of March, June, September, and December, commencing with the first such date to occur more than one hundred eighty (180) days after the Effective Date and until the second anniversary of the Effective Date, (c) after the second anniversary of the Effective Date, the first Business Day after the end of the month of December, and (d) the Final Distribution Date; *provided, however*, that (i) a Distribution Date (other than the Initial Distribution Date and the Final Distribution Date) shall not occur if the aggregate amount of Plan Notes and/or 144A Offering Proceeds and Available Cash to be distributed on any Distribution Date is less than One Million and 00/100 Dollars ($1,000,000.00), in which case the amount to be distributed shall be retained and added to the amount to be distributed on the next Distribution Date, and (ii) any Unsecured Claim that becomes Allowed less than twenty (20) Business Days prior to a Distribution Date shall be treated as a Disputed Claim for the purposes of the Distribution occurring on such Distribution Date and shall not receive a Distribution until the Distribution Date immediately succeeding such Distribution Date.

1.64    *District Court*: The United States District Court for the District of Delaware having jurisdiction over the Chapter 11 Case.

1.65    *DTC*: Depository Trust Company.

1.66    *Employee Benefit Claim*: Any Claim of a current or former employee of AWI, a current or former employee of any current or former subsidiary of AWI, or of the Pension Benefit Guaranty Corporation, for benefits payable or arising under any of the plans being assumed pursuant to section 8.7(a) of the Plan; *provided, however*, that any Claim for damages or other relief arising from any termination of any plans pursuant to section 8.7(b) of the Plan, any "rejection" of any plans as to any party that objects to any amendment under section 8.7(c) of the Plan, based upon any alleged breach by AWI of its responsibilities or duties under any plan specified in section 8.7(a) of the Plan (other than any obligation to pay the benefits arising thereunder, as modified), or related to the allegations made by the plaintiffs in those certain two class action complaints asserting various federal law claims under ERISA filed in the United States District Court for the Eastern District of Pennsylvania by Dean A. Markley, Michael Resetar, and Lori Shearer shall be deemed an Unsecured Claim.

1.67    *Effective Date*: A Business Day selected by AWI that is within 31 days after the date by which all of the conditions precedent to the effectiveness of the Plan specified in Section 7.16 have been satisfied or waived or, if a stay of the Confirmation Order is in effect, a date selected by AWI that is within 31 days after the date of the expiration, dissolution, or lifting of such stay.

1.68 *Encumbrance*: With respect to any asset, any mortgage, lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such asset (including, without express or implied limitation, any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

1.69 *Entity*: An individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof, or other person or entity.

1.70 *Environmental Claim*: Any Claim as to which the treatment thereof is set forth in an agreement by and between AWI and any party asserting a Claim against AWI relating to alleged contamination under the federal or state environmental laws or regulations, pursuant to which agreement all or a portion of such Claim (to the extent and subject to the limitations imposed by such agreement) may be asserted by the holder thereof after the Effective Date, to the extent that such agreement is approved and authorized by a Final Order of the Bankruptcy Court or otherwise in accordance with the Claims Settlement Guidelines.

1.71 *Equity Interest*: Any interest in AWI represented by shares of Existing AWI Common Stock.

1.72 *Estimated Amount*: The estimated dollar value of an Unliquidated Claim, Disputed Claim, or Contingent Claim pursuant to section 502(c) of the Bankruptcy Code.

1.73 *Existing AWI Common Stock*: Common stock, par value of $0.01 per share, of AWI, authorized pursuant to the Articles of Incorporation as in effect immediately prior to the Effective Date.

1.74 *Final Distribution Date*: A date on or after the Initial Distribution Date and after all Disputed Claims (other than Asbestos Personal Injury Claims and Asbestos Property Damage Claims) have become either Allowed Claims or Disallowed Claims that is selected by Reorganized AWI in its discretion but, in any event, is no later than thirty (30) days thereafter, or such later date as the Bankruptcy Court may establish, upon request by Reorganized AWI, for cause shown.

1.75 *Final Order*: An order as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, reargue, or rehear shall have been waived in writing in form and substance satisfactory to AWI or Reorganized AWI, as the case may be, and its counsel or, in the event that an appeal, writ of *certiorari*, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari* or move for reargument or rehearing shall have expired.

1.76 *Future Claimants' Representative*: Dean M. Trafelet, the Legal Representative for Future Claimants appointed pursuant to the order dated on or about March 1, 2002.

11

1.77    *Global Asbestos PD Settlement:*    Agreement with respect to the resolution of all outstanding Asbestos Property Damage Claims and related issues relating to Asbestos Property Damage Claims, as such agreement may be approved by the Bankruptcy Court.

1.78    *Holdings:*    Armstrong Holdings, Inc., a Pennsylvania corporation.

1.79    *Holdings Plan of Liquidation:*    The dissolution of Holdings as approved by its Board of Directors and shareholders as required by Sections 1972, 1973 and 1974 of the Pennsylvania BCL and the liquidation and winding up of the business and affairs of Holdings (and, as part thereof, the dissolution and winding up, or other termination of the corporate existence, of AWWD) in accordance with a plan of liquidation and winding up approved by the Board of Directors and shareholders of Holdings as may be required by Subchapter F or H of Chapter 19 of the Pennsylvania BCL, or such other plan and manner of dissolution, liquidation and winding up of Holdings as is consistent with the terms of the Plan and permitted by law.

1.80    *Indentures:*    The indenture agreements between the Indenture Trustees and AWI relating to the Debt Security Claims.

1.81    *Indenture Trustees:*    The indenture trustees under Debt Security Claims (other than Debt Securities Claims representing obligations guaranteed by AWI), including Bank One Trust Company, N.A., as indenture trustee for the holders of AWI's 9¾% Debentures due 2008 and for the holders of the 8¾%-9% Medium Term Notes, Wells Fargo Minnesota, N.A., as indenture trustee for the holders of AWI's 6.35% Senior Notes due 2003, 6½% Senior Notes due 2005, 7.45% Senior Notes due 2029, and the 7.45% Senior Quarterly Interest Bonds due 2038, and Wilmington Trust Company, as successor to Chase Manhattan Trust Company, National Association, as indenture trustee for the holders of the Solid Waste Disposal Revenue Bonds (Armstrong World Industries, Inc. Project) Series 1996.

1.82    *Indenture Trustees' Fees and Expenses:*    All the fees and expenses, including the reasonable fees and expenses of their attorneys, incurred by the Indenture Trustees under their respective indentures from the Commencement Date to the Effective Date, up to a maximum of Twenty-Five Thousand and 00/100 Dollars ($25,000.00) for the Indenture Trustee for each series of Debt Security Claims for which it acts as Indenture Trustee.

1.83    *Indirect PI Trust Claim:*    Any Claim or remedy, liability, or Demand against AWI now existing or hereafter arising, whether or not such Claim, remedy, liability, or Demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases for such Claim, remedy, liability, or Demand are known or unknown, that is (x) (i) held by (A) any Entity (other than a director or officer entitled to indemnification pursuant to section 8.6 of the Plan) who has been, is, or may be a defendant in an action seeking damages for death, bodily injury, sickness, disease, or other personal injuries (whether physical, emotional, or otherwise) to the extent caused or allegedly caused, directly or indirectly, by exposure to asbestos or asbestos-containing products or (B) any assignee or transferee of such Entity and (ii) on account of alleged liability of AWI for reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay to the plaintiff in such action *or* (y) held by any Entity that is seeking reimbursement, indemnification, subrogation, or contribution from AWI with respect to any surety bond, letter of credit or other financial assurance issued by any Entity on account of, or with respect to, Asbestos Personal Injury Claims.

12

1.84    *Initial Distribution Date*:  A date after the Effective Date that is selected by Reorganized AWI in its discretion but, in any event, is within fifteen (15) days after the Effective Date, or such later date as the Bankruptcy Court may establish upon request by Reorganized AWI, for cause shown; *provided, however*, that in no event shall the Initial Distribution Date be more than forty-five (45) days after the Effective Date.

1.85    *Internal Revenue Code*:  The Internal Revenue Code of 1986, as amended from time to time, and any applicable rulings, Treasury Regulations, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

1.86    *IRS*:  The United States Internal Revenue Service.

1.87    *Lazard*:  Lazard Frères & Co. LLC, or such other investment bank or financial advisor retained by AWI.

1.88    *New Common Stock*:  Common stock, par value $0.01 per share, of Reorganized AWI which is to be authorized and issued pursuant to the Plan and subject to dilution for equity to be issued under the New Long-Term Incentive Plan.

1.89    *New Long-Term Incentive Plan*:  The Management Incentive Plan, substantially in the form of Exhibit 1.89 to the Plan.

1.90    *Pennsylvania BCL*:  Pennsylvania Business Corporation Law of 1988, as amended from time to time and as applicable to the events described in the Plan.

1.91    *PI Protected Party*:  **Any of the following parties:**

(a) **AWI;**

(b) **Reorganized AWI;**

(c) **Holdings;**

(d) **AWWD;**

(e) **any Affiliate;**

(f) **Interface Solutions, Inc., a corporation organized under the laws of Pennsylvania, but only to the extent that such Entity is alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on AWI, Reorganized AWI, or the Asbestos PI Trust on account of Asbestos Personal Injury Claims;**

(g) **any Entity that, pursuant to the Plan or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any assets of AWI, Reorganized AWI, or the Asbestos PI Trust (but only to the extent that liability is asserted to exist by reason of it becoming such a transferee or successor);**

(h) **any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to Reorganized AWI or the Asbestos PI Trust or to a successor to, or transferee of, any assets of AWI, Reorganized AWI or the Asbestos PI Trust (but only to the extent that**

13

liability is asserted to exist by reason of such Entity becoming such a lender or to the extent any pledge of assets made in connection with such a loan is sought to be upset or impaired); or

       (i)  any Entity to the extent he, she, or it is alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on AWI, Reorganized AWI or the Asbestos PI Trust on account of Asbestos Personal Injury Claims by reason of one or more of the following:

           (i)  such Entity's ownership of a financial interest in AWI, Reorganized AWI, a past or present affiliate of AWI or Reorganized AWI (other than ACandS, Inc. f/k/a Armstrong Contracting and Supply Corp.), or a predecessor in interest of AWI, or Reorganized AWI;

           (ii)  such Entity's involvement in the management of AWI, AWWD, Holdings, an Affiliate, Reorganized AWI, or any predecessor in interest of AWI, or Reorganized AWI;

           (iii)  such Entity's service as an officer, director, or employee of AWI, Reorganized AWI, AWWD, Holdings, an Affiliate, any past or present affiliate of AWI or Reorganized AWI (other than ACandS, Inc. f/k/a Armstrong Contracting and Supply Corp.), any predecessor in interest of AWI or Reorganized AWI, or any Entity that owns or at any time has owned a financial interest in AWI or Reorganized AWI, any past or present affiliate of AWI or Reorganized AWI (other than ACandS, Inc. f/k/a Armstrong Contracting and Supply Corp.), or any predecessor in interest of AWI or Reorganized AWI;

           (iv)  such Entity's provision of insurance to (a) AWI, (b) Reorganized AWI, (c) any past or present affiliate of AWI or Reorganized AWI (other than ACandS, Inc. f/k/a Armstrong Contracting and Supply Corp.), (d) any predecessor in interest of AWI or Reorganized AWI; or (e) any Entity that owns or at any time has owned a financial interest in AWI or Reorganized AWI, any past or present affiliate of AWI or Reorganized AWI (other than ACandS, Inc. f/k/a Armstrong Contracting and Supply Corp.), or any predecessor in interest of AWI or Reorganized AWI, but only to the extent that AWI, Reorganized AWI, or the Asbestos PI Trust enters into a settlement with such Entity that is approved by the Bankruptcy Court and expressly provides that such Entity shall be entitled to the protection of the Asbestos PI Permanent Channeling Injunction as a PI Protected Party; or

           (v)  such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of AWI, AWWD, Holdings, an Affiliate, Reorganized AWI, any past or present affiliate of AWI or Reorganized AWI (other than AC and S, Inc. f/k/a Armstrong Contracting and Supply Corp.), any predecessor in interest of AWI or Reorganized AWI, or any Entity that owns or at any time has owned a financial interest in AWI or Reorganized AWI, any past or present affiliate of AWI or Reorganized AWI (other than

**ACandS, Inc. f/k/a Armstrong Contracting and Supply Corp.), or any predecessor in interest of AWI or Reorganized AWI.**

1.92    *Plan:*  This plan of reorganization, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules to the foregoing, as the same may be in effect at the time such reference becomes operative.

1.93    *Plan Note Amount:*  An amount equal to the greater of (x) $1.125 billion *less* the amount of Available Cash and (y) $775 million.

1.94    *Plan Note Indentures:*  The indentures, substantially in the form of Exhibits 1.94-A and 1.94-B to the Plan, by and between AWI, as the issuer, and a trustee selected by AWI prior to the date of the commencement of the hearing on confirmation of the Plan, pursuant to which the Plan Notes will be issued, each of which will be qualified under the Trust Indenture Act of 1939, as amended.

1.95    *Plan Notes:*  Unsecured notes issued pursuant to the Plan Note Indentures (a) in an aggregate principal amount equal to the Plan Note Amount *less* the 144A Offering Proceeds, (b) bearing a fixed or floating interest rate based upon U.S. Treasury Notes or three-month U.S dollar LIBOR, respectively, with like maturities plus a spread determined to be the average corporate spread over such Treasury Notes or LIBOR for outstanding issues of comparable maturity and comparably rated U.S. industrial companies over the 30-day period ending on the last day of the month immediately preceding the Effective Date, (c) with a maturity, as selected by AWI, of not less than five years, but not more than ten years and no principal payments required to be paid prior to the maturity date, (d) callable at par at the option of Reorganized AWI, in whole or in part, at any time during the first six months following the Effective Date, and (e) having such other terms, covenants, and conditions substantially similar to those contained in indentures for issues of comparable maturity of comparably rated U.S. industrial companies and, with respect to any floating rate tranche, structured in a manner similar to, and as liquid as, marketable bank debt; *provided, however,* that if AWI successfully completes a 144A Offering but the 144A Offering Proceeds are less than the Plan Note Amount, AWI will issue additional 144A Debt Securities to the applicable classes of Creditors in lieu of the Plan Notes it would otherwise issue under the Plan Note Indentures (subject to compliance with applicable securities laws) and, in any event, AWI will not issue Plan Notes having terms and conditions that are not substantially the same as those of the 144A Debt Securities without the consent of the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee. In addition, if AWI is not successful in obtaining a Term Loan B, AWI will not issue any floating interest rate Plan Notes unless such floating rate Plan Notes satisfy the requirements of the Plan and are on terms and conditions that are mutually satisfactory to AWI and the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee.

1.96    *Priority Claim:*  Any Claim to the extent such claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense, DIP Credit Facility Claim, or Priority Tax Claim.

1.97    *Priority Tax Claim:*  A Claim against AWI that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

1.98    *Pro Rata Share*:  Means the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class to the aggregate amount of all Allowed Claims plus the Disputed Claim Amount of all Disputed Claims in the same Class.

1.99    *Qualified Appraisal*:  A "qualified appraisal" within the meaning of Treasury Regulations section 1.468B-3(b)(3).

1.100    *Record Date*:  The first Business Day that is five (5) days from and after the Confirmation Date.

1.101    *Reorganized AWI*:  AWI, as reorganized as of the Effective Date in accordance with this Plan, or any successors in interest thereto, from and after the Effective Date.

1.102    *Reorganization Consideration*:  Collectively, the Available Cash, the Plan Notes and/or the 144A Offering Proceeds, and the New Common Stock.

1.103    *Retention Period*:  Five (5) years from and after the Effective Date, or such shorter period as the Bankruptcy Court may set.

1.104    *Schedules*:  The schedules of assets and liabilities and the statements of financial affairs filed by AWI with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been and may be amended by AWI from time to time in accordance with Bankruptcy Rule 1009.

1.105    *SEC:*  The United States Securities and Exchange Commission.

1.106    *Secured Claim*:  Any Claim against AWI to the extent of the value of any interest in property of the estate of AWI securing such Claim, except for the DIP Credit Facility Claim and the COLI Claims.

1.107    *Stockholder and Registration Rights Agreement*:  The Stockholder and Registration Rights Agreement to be entered into by Reorganized AWI and the Asbestos PI Trustees on behalf of the Asbestos PI Trust, pursuant to section 7.6 hereof, in substantially the same form of Exhibit 1.107 to the Plan.

1.108    *Subsidiary Debt Guarantee Claim*:  Any Claim against AWI arising from the guaranty by AWI of an obligation of one or more Entities that are subsidiaries of AWI as of the date immediately preceding the Effective Date so long as such obligation has not been accelerated or declared in default prior to the Effective Date (and such acceleration has not been rescinded or such default waived), other than any Claim relating to any obligations of Nitram Liquidators, Inc. or Desseaux Corporation of North America and other than any Claim relating to obligations arising from the sale or disposition of the business, operations, or assets of any Entity.

1.109    *Term Loan B:*  A floating rate senior secured term loan credit facility, to be borrowed under the working capital facility referenced in Section 7.16 of the Plan, between Reorganized AWI and the lenders who are party thereto, having terms and conditions as determined by AWI and the lenders in their sole discretion.

1.110  *Term Loan B Proceeds:*  The amount of the net cash proceeds received by Reorganized AWI on or as soon as practicable after the Effective Date pursuant to the Term Loan B.

1.111  *Treasury Regulations:*  Regulations (including temporary and proposed) promulgated under the Internal Revenue Code by the United States Treasury Department, as amended from time to time.

1.112  *Unliquidated Claim:*  Any Claim (other than an Asbestos Personal Injury Claim), the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.113  *Unsecured Claim:*  Any Claim other than an Administrative Expense, Subsidiary Debt Guarantee Claim, a COLI Claim, a Priority Tax Claim, a Priority Claim, an Asbestos Personal Injury Claim, an Asbestos Property Damage Claim, an Environmental Claim (except to the extent provided in section 3.2(h)(ii) of the Plan), an Affiliate Claim, an Employee Benefit Claim, or a Secured Claim.  Unsecured Claims include Debt Security Claims administered by the Indenture Trustees.

1.114  *Unsecured Creditors' Committee:*  The Official Unsecured Creditors' Committee, consisting of Entities appointed as members in the Chapter 11 Case by the United States Trustee for the District of Delaware in accordance with section 1102(a) of the Bankruptcy Code and their duly appointed successors, if any, as the same may be reconstituted from time to time.

1.115  *Voting Deadline:*  The date set by the Bankruptcy Court by which all completed ballots must be received.

1.116  *Voting Procedures Order:*  An order of the Bankruptcy Court approving procedures relating to the solicitation and tabulation of votes with respect to the Plan.

**B.  Other Terms.**  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

**C.  Exhibits.**  All Exhibits to the Plan shall be contained in a separate Exhibit Volume, which shall be filed with the Clerk of the Bankruptcy Court not later than the earlier of (i) thirty (30) days prior to the commencement of the hearing on confirmation of the Plan and (ii) fifteen (15) days prior to the deadline for filing objections to confirmation of the Plan.  Such Exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Such Exhibits shall also be available for download from the following website: www.armstrongplan.com.  Holders of Claims or shareholders of Holdings may also obtain a copy of such Exhibit Volume, once filed, from AWI by a written request sent to the following address:

Armstrong World Industries, Inc.

Post Office Box 3666
Lancaster, Pennsylvania 17604-3666

## ARTICLE II

### PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

2.1     *Payment of Allowed Administrative Expenses.*  The Allowed Amount of each Administrative Expense that is Allowed as of the Effective Date shall be paid in full, in cash, on the Effective Date; *provided, however,* that Administrative Expenses of the type specified in section 1.11(c)(i) of the Plan shall be assumed and paid by Reorganized AWI in accordance with the terms and conditions of the particular transactions and any agreements relating thereto.  Each Administrative Expense of the type specified in section 1.11(c)(ii) or 1.11(c)(iii) of the Plan shall be paid the Allowed Amount of such Administrative Expense in full, in cash, as soon as practicable after such Administrative Expense is Allowed.

2.2     *Compensation and Reimbursement Claims.*  The Bankruptcy Court shall fix in the Confirmation Order a date for the filing of, and a date to hear and determine, all applications for final allowances of compensation or reimbursement of expenses under section 330 of the Bankruptcy Code or applications for allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code.  The Allowed Amount of all Administrative Expenses arising under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code shall be paid in full, in cash, (a) upon the later of (i) the Effective Date and (ii) the date upon which any such Administrative Expense becomes Allowed or (b) at such later date or upon such other terms as may be mutually agreed upon between each such Administrative Expense Creditor and Reorganized AWI.

2.3     *DIP Credit Facility Claim.*  On the Effective Date, the DIP Credit Facility Claim shall be paid in full, in cash.  Unless otherwise agreed by the DIP Lenders, to the extent that any letters of credit issued pursuant to the DIP Credit Facility remain outstanding on the Effective Date, AWI will pay to the Agent Bank, for the ratable benefit of the DIP Lenders, cash in an amount equal to the face amount of such letters of credit, which shall be held by the Agent Bank for the repayment of all amounts due in respect of such letters of credit.

2.4     *Priority Tax Claims.*  Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim either (a) in full, in cash, on the latest of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law or (b) upon such other terms as may be mutually agreed upon between each holder of a Priority Tax Claim and Reorganized AWI.

## ARTICLE III

### CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

3.1     *Summary.*  Claims and Equity Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation, and distribution pursuant to the Plan, as follows:

| CLASS | TREATMENT | STATUS | ENTITLED TO VOTE? |
|---|---|---|---|
| **Class 1:** Priority Claims | Paid in full, in cash, on the later of the Effective Date or as soon as practicable after such Priority Claim becomes Allowed. | Unimpaired | No |
| **Class 2:** Secured Claims | Reinstated – Any defaults related to Secured Claims will be cured. | Unimpaired | No |
| **Class 3:** Convenience Claims | Payment of 75% of Allowed Amount of Convenience Claim, in cash, on later of the Effective Date or as soon as practicable after such Convenience Claim becomes Allowed. | Impaired | Yes |
| **Class 4:** Asbestos Property Damage Claims | All Asbestos Property Damage Claims will be resolved pursuant to the terms of the Global Asbestos PD Settlement. If the Global Asbestos PD Settlement is not approved by the Bankruptcy Court at least fifteen (15) days before the Voting Deadline, AWI will amend the Plan to provide alternative treatment for Asbestos Property Damage Claims, in which case the Asbestos Property Damage Claims will be treated as impaired and will be entitled to vote on the Plan. | Unimpaired | Yes |
| **Class 5:** COLI Claims | Reinstated – Any defaults related to the COLI Claims will be cured. | Unimpaired | No |
| **Class 6:** Unsecured Claims other than Convenience Claims | Each holder of an Allowed Unsecured Claim will receive its Pro Rata Share of (i) 34.43% of the New Common Stock, (ii) 34.43% of the first $1.05 billion of (x) up to $300 million of Available Cash and (y) the principal amount of Plan Notes and/or 144A Offering Proceeds, (iii) 60% of the next $50 million of the remaining Available Cash, (iv) 60% of the remaining amount of Plan Notes and/or 144A Offering Proceeds to the extent that Available Cash in (iii) is less than $50 million, and (v) 34.43% of the remaining Available Cash and Plan Notes and/or 144A Offering Proceeds. | Impaired | Yes |
| **Class 7:** Asbestos Personal Injury Claims | All Asbestos Personal Injury Claims will be channeled to the Asbestos PI Trust, which will be funded pursuant to section 10.1 of the Plan. | Impaired | Yes |

| CLASS | TREATMENT | STATUS | ENTITLED TO VOTE? |
|---|---|---|---|
| **Class 8:** Environmental Claims | Each Environmental Claim will be treated as an Allowed Unsecured Claim to the extent it becomes Allowed prior to any Distribution Date. Other treatment determined as applicable under the relevant settlement agreement. | Impaired | Yes |
| **Class 9:** Affiliate Claims | Reinstated | Unimpaired | No |
| **Class 10:** Subsidiary Debt Guarantee Claims | Reinstated | Unimpaired | No |
| **Class 11:** Employee Benefit Claims | Reinstated | Unimpaired | No |
| **Class 12:** Equity Interests | No distribution shall be made under the Plan from AWI's estate in respect of the Equity Interests in AWI. | Impaired | No |

3.2     *Classification and Treatment.*

(a)  **Class 1. Priority Claims.**

(i)     *Classification*: Class 1 consists of all Allowed Priority Claims.

(ii)    *Treatment*: Each holder of an Allowed Priority Claim shall be paid the Allowed Amount of its Allowed Priority Claim, in full, in cash, on the later of the Effective Date and as soon as practicable after the date such Priority Claim becomes Allowed.

(iii)   *Status*: Class 1 is not impaired. The holders of the Claims in Class 1 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

(b)  **Class 2. Secured Claims.**

(i)     *Classification*: Class 2 consists of all Allowed Secured Claims. Although placed in one class for purposes of convenience, each Allowed Secured Claim shall be treated as though in a separate class for all purposes under the Plan.

(ii)    *Treatment*: At the option of AWI and in accordance with section 1124 of the Bankruptcy Code, each Allowed Secured Claim shall be treated in one of the following ways:

1.  The legal, equitable and contractual rights to which such Allowed Secured Claim entitles the holder of such Claim shall be unaltered.

*or*

2.  Notwithstanding any contractual provision or applicable law that entitles the holder of an Allowed Secured Claim to demand or receive payment of such Claim prior to the stated maturity of such Claim from and after the occurrence of a default under the agreements governing or instruments evidencing such Claim, such Claim shall be reinstated, and AWI shall (i) cure all defaults that occurred before or from and after the Commencement Date (other than defaults of a kind specified in section 365(b)(2) of the Bankruptcy Code), (ii) reinstate the maturity of such Claim as such maturity existed prior to the occurrence of such default, (iii) compensate the holder of such Claim for any damages incurred as a consequence of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) not otherwise alter the legal, equitable, or contractual rights to which the holder of such Claim is entitled.

(iii)    *Status*:  Class 2 is not impaired.  The holders of the Claims in Class 2 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

(c) **Class 3. Convenience Claims.**

(i)    *Classification*:  Class 3 consists of all Allowed Convenience Claims.

(ii)    *Treatment*:  Each holder of an Allowed Convenience Claim shall be paid 75% of the Allowed Amount of its Allowed Convenience Claim, in cash, on the later of the Effective Date and as soon as practicable after such Convenience Claim becomes Allowed.

(iii)    *Election*:  Any holder of an Unsecured Claim in an amount equal to or less than Ten Thousand and 00/100 Dollars ($10,000.00) and which otherwise constitutes a Convenience Claim automatically shall be treated as a Convenience Claim.  Any holder of any other Unsecured Claim that desires treatment of such Claim as a Convenience Claim shall make such election on the Ballot to be provided to holders of Unsecured Claims in Class 6 and return such Ballot to the address specified therein on or before the Voting Deadline.  Any election made after the Voting Deadline shall not be binding on AWI unless the Voting Deadline is expressly waived in writing by AWI with respect to any such Claim.

(iv)    *Status*:  Class 3 is impaired.  To the extent and in the manner provided in the Voting Procedures Order, the holders of the Claims in Class 3 are entitled to vote to accept or reject the Plan.

21

(d) **Class 4. Asbestos Property Damage Claims.**

(i)    *Classification*:    Class 4 consists of all Allowed Asbestos Property Damage Claims.

(ii)    *Treatment*:  All pending Asbestos Property Damage Claims will be Allowed and treated in accordance with the terms of the Global Asbestos PD Settlement.

(iii)    *Status*:  Class 4 is unimpaired.  The holders of the Claims in Class 4 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

(e) **Class 5. COLI Claims.**

(i)    *Classification*: Class 5 consists of all Allowed COLI Claims.

(ii)    *Treatment*:  In accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable law that entitles the holder of an Allowed COLI Claim to demand or receive payment of such Claim prior to the stated maturity of such Claim from and after the occurrence of a default under the agreements governing or instruments evidencing such Claim, such Claim shall be reinstated, and AWI shall (i) cure all defaults that occurred before or from and after the Commencement Date (other than defaults of a kind specified in section 365(b)(2) of the Bankruptcy Code), (ii) reinstate the maturity of such Claim as such maturity existed prior to the occurrence of such default, (iii) compensate the holder of such Claim for any damages incurred as a consequence of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) not otherwise alter the legal, equitable, or contractual rights to which the holder of such Claim is entitled.

(iii)    *Status*:  Class 5 is not impaired.  The holders of the Claims in Class 5 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

(f) **Class 6. Unsecured Claims other than Convenience Claims.**

(i)    *Classification*:  Class 6 consists of Unsecured Claims other than Convenience Claims.

(ii)    *Treatment*:  Each holder of an Allowed Unsecured Claim in Class 6 will receive on each Distribution Date its Pro Rata Share of the following elements of Reorganization Consideration:

1.  34.43% of the New Common Stock,

2.  34.43% of the first $1.05 billion of (x) up to $300 million of Available Cash and (y) the Plan Notes and/or 144A Offering Proceeds,

3.  60% of the first $50 million of the amount of Available Cash remaining after making provision for the Distribution provided in section

22

3.2(f)(ii)2 of the Plan and the funding of the Asbestos PI Trust in section 10.1(b)(ii) of the Plan,

4.  60% of the amount of Plan Notes and/or 144A Offering Proceeds equal to the difference (if positive) of $50 million *less* the amount of Available Cash remaining after making provision for the Distribution provided in section 3.2(f)(ii)2 of the Plan and the funding of the Asbestos PI Trust in section 10.1(b)(ii) of the Plan, and

5.  34.43% of the remaining Available Cash and Plan Notes and/or 144A Offering Proceeds after making provision for the Distribution provided in sections 3.2(f)(ii)2, 3.2(f)(ii)3, and 3.2(f)(ii)4 of the Plan and the funding of the Asbestos PI Trust in sections 10.1(b)(ii), 10.1(b)(iii) and 10.1(b)(iv) of the Plan.

In any Distribution made to the holder of an Allowed Unsecured Claim, there shall be deducted from such Distribution the amount of each element of the Reorganization Consideration (computed as provided in this section 3.2(f)(ii)) previously distributed to such holder on account of such Allowed Unsecured Claim in any Distribution made prior thereto.

(iii)    *Interest*:  Interest shall neither accrue nor be payable from and after the Commencement Date with respect to Allowed Unsecured Claims.

(iv)    *Status*:  Class 6 is impaired.  To the extent and in the manner provided in the Voting Procedures Order, the holders of the Claims in Class 6 are entitled to vote to accept or reject the Plan.

(g) **Class 7.  Asbestos Personal Injury Claims.**

(i)    *Classification*:  Class 7 consists of all Asbestos Personal Injury Claims.

(ii)    *Treatment*:    All Asbestos Personal Injury Claims shall be determined and paid pursuant to the terms, provisions, and procedures of the Asbestos PI Trust, the Asbestos PI Trust Distribution Procedures, and the Asbestos PI Trust Agreement.    The Asbestos PI Trust will be funded in accordance with the provisions of section 10.1 of the Plan.  The sole recourse of the holder of an Asbestos Personal Injury Claim shall be the Asbestos PI Trust, and such holder shall have no right whatsoever at any time to assert its Asbestos Personal Injury Claim against any PI Protected Party.  **Without limiting the foregoing, on the Effective Date, all Entities shall be permanently and forever stayed, restrained, and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Personal Injury Claim (other than actions brought to enforce any right or obligation under the Plan, any Exhibits to the Plan, or any other agreement or instrument between AWI or Reorganized AWI and the Asbestos PI Trust, which actions shall be in conformity and compliance with the provisions hereof):**

23

1.  commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, a judicial, arbitral, administrative, or other proceeding) in any forum against or affecting any PI Protected Party or any property or interests in property of any PI Protected Party;

2.  enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any PI Protected Party or any property or interests in property of any PI Protected Party;

3.  creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any PI Protected Party or any property or interests in property of any PI Protected Party;

4.  setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any PI Protected Party or any property or interests in property of any PI Protected Party; *provided, however*, that the foregoing shall not preclude the assertion of a setoff or recoupment defense under applicable law by a third party solely in response to, and to the extent of, a claim asserted by a PI Protected Party against such third party that such third party is liable in whole or in part for an Asbestos Personal Injury Claim; and

5.  proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos PI Trust Agreement, except in conformity and compliance therewith.

Nothing contained herein shall constitute or be deemed a waiver of any claim, right, or cause of action that AWI, Reorganized AWI, or the Asbestos PI Trust may have against any Entity in connection with or arising out of an Asbestos Personal Injury Claim, and the injunction shall not apply to the assertion of any such claim, right, or cause of action by AWI, Reorganized AWI, or the Asbestos PI Trust.

(iii)    *Status*: Class 7 is impaired. To the extent and in the manner provided in the Voting Procedures Order, the holders of the Claims in Class 7 are entitled to vote to accept or reject the Plan.

(h) **Class 8. Environmental Claims.**

(i)    *Classification*: Class 8 consists of all Environmental Claims.

(ii)    *Treatment*: Each holder of an Environmental Claim shall be entitled to treatment of its Environmental Claim and receive such consideration

as is provided in the settlement agreement applicable to such Environmental Claim. Without limiting the provisions of such settlement agreement, to the extent any portion of an Environmental Claim becomes Allowed prior to any Distribution Date, such Environmental Claim shall be deemed to constitute, and will be treated as, an Allowed Unsecured Claim under Class 6 of the Plan. The sole recourse of the holders of Environmental Claims shall be in accordance with the rights of such holders set forth in such settlement agreement. Nothing contained herein or in any settlement agreement relating to an Environmental Claim shall constitute or be deemed a waiver of any claim, right, or cause of action that AWI or Reorganized AWI may have against any Entity that is not a party to such settlement agreement.

(iii)    *Status*: Class 8 is impaired. To the extent and in the manner provided in the Voting Procedures Order, the holders of the Claims in Class 8 are entitled to vote to accept or reject the Plan.

(i) **Class 9. Affiliate Claims.**

(i)    *Classification*: Class 9 consists of Affiliate Claims.

(ii)    *Treatment*: In accordance with section 1124 of the Bankruptcy Code, the legal, equitable, and contractual rights to which such Allowed Affiliate Claims entitle the holder of any such Claims shall be unaltered.

(iii)    *Status*: Class 9 is unimpaired. The holders of the Claims in Class 9 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

(j) **Class 10. Subsidiary Debt Guarantee Claims.**

(i)    *Classification*:    Class 10 consists of all Subsidiary Debt Guarantee Claims.

(ii)    *Treatment*: In accordance with section 1124 of the Bankruptcy Code, each Subsidiary Debt Guarantee Claim shall be reinstated.

(iii)    *Status:* Class 10 is not impaired. The holders of Claims in Class 10 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

(k) **Class 11. Employee Benefit Claims.**

(i)    *Classification*:    Class 11 consists of all Employee Benefit Claims.

(ii)    *Treatment*: In accordance with section 1124 of the Bankruptcy Code, each Employee Benefit Claim shall be reinstated.

(iii)    *Status:* Class 11 is not impaired. The holders of Claims in Class 11 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

(l) **Class 12. Equity Interests**.

      (i)    *Classification*: Class 12 consists of Equity Interests.

      (ii)    *Treatment*: No distribution shall be made under the Plan from AWI's estate in respect of the Equity Interests in AWI. On the Effective Date, the certificates that previously evidenced ownership of Existing AWI Common Stock shall be cancelled and shall be null and void, the holder(s) thereof shall no longer have any rights in respect of the Equity Interests in AWI, and such certificates shall not evidence any rights under the Plan.

      (iii)    *Status*: Class 12 is impaired. The holder of the Equity Interests in Class 12 is deemed to reject the Plan and, accordingly, is not entitled to vote to accept or reject the Plan.

    3.3    *In the event of a controversy as to whether any class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy prior to the Confirmation Date.*

### ARTICLE IV

### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

    4.1    *Modification of the Plan.* AWI may only, with the written consent of the Future Claimants' Representative, the Asbestos PI Claimants' Committee, and, if Class 6 has not voted to reject the Plan at the time of the requested alteration, amendment, or modification, the Unsecured Creditors' Committee, alter, amend, or modify the Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date so long as the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code. After the Confirmation Date and prior to the Effective Date, AWI, with the written consent of the Future Claimants' Representative, the Asbestos PI Claimants' Committee, and, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee, may only alter, amend, or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code.

    4.2    *Revocation or Withdrawal.*

    (a) *Right to Revoke.* The Plan may be revoked or withdrawn prior to the Confirmation Date by AWI, with the written consent of the Future Claimants' Representative, the Asbestos PI Claimants' Committee, and, if Class 6 has not voted to reject the Plan at the time of the requested revocation or withdrawal, the Unsecured Creditors' Committee, or, after the Confirmation Deadline, by AWI.

    (b) *Effect of Withdrawal or Revocation.* If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses or any admission or statement against interest by AWI, the Asbestos PI Claimants' Committee, the Future Claimants' Representative, the Unsecured Creditors' Committee, or any other Entity or to prejudice in any manner the rights of AWI, the Asbestos PI Claimants' Committee, the Future Claimants' Representative, the Unsecured Creditors' Committee, or any Entity in any further proceedings involving AWI.

4.3    *Amendment of Plan Documents.*  From and after the Effective Date, the authority to amend, modify, or supplement the Exhibits to the Plan and any documents attached to such Exhibits shall be as provided in such Exhibits and their respective attachments.

## ARTICLE V

### PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

5.1    *Objections to Claims; Prosecution of Disputed Claims.*  Reorganized AWI shall object to the allowance of Claims filed with the Bankruptcy Court (other than Asbestos Personal Injury Claims and Asbestos Property Damage Claims) with respect to which Reorganized AWI disputes liability in whole or in part.  All objections that are filed and prosecuted by Reorganized AWI as provided herein shall be litigated to Final Order by Reorganized AWI or compromised and settled in accordance with the Claims Settlement Guidelines.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by Reorganized AWI to Claims shall be served and filed no later than ninety (90) days after the Effective Date.

5.2    *Claims Settlement Guidelines.*  The Confirmation Order shall approve the amendment to the Claims Settlement Guidelines, as set forth in Exhibit 1.39 to the Plan.

5.3    *Distributions on Account of Disputed Claims.*  Notwithstanding section 3.2 hereof, a Distribution shall only be made by Reorganized AWI to the holder of a Disputed Claim when, and to the extent that, such Disputed Claim becomes Allowed.  No interest shall be paid on account of Disputed Claims that later become Allowed except to the extent that payment of interest is required under section 506(b) of the Bankruptcy Code.  No Distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof in the manner prescribed by section 5.1 hereof.

5.4    *Disputed Unsecured Claims Reserve.*  On the Initial Distribution Date, if the Plan Notes are issued, Reorganized AWI will establish the Disputed Unsecured Claims Reserve, pursuant to which Plan Notes not distributed on the Initial Distribution Date or on any subsequent Distribution will be issued but held in trust by the Disbursing Agent pending the resolution of Disputed Claims.  In accordance with and subject to the provisions of sections 3.2(f)(ii), 5.3, and 7.8 of the Plan, any Distribution of Plan Notes with respect to a Disputed Claim that becomes Allowed shall include interest and other accretions with respect to such Plan Notes, net of the portion of expenses (including, without limitation, taxes payable by the Disputed Unsecured Claims Reserve) attributable to such Plan Notes.

5.5    *Tax Treatment of Disputed Unsecured Claims Reserve.*

(a) Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Disbursing Agent of a private letter ruling if the Disbursing Agent so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent), the Disbursing Agent shall (i) treat the Disputed Unsecured Claims Reserve established to hold Plan Notes and any earnings with respect thereto as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim in Class 6, in accordance with the trust provisions of the Tax Code (sections 641 *et seq.*), and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties

(including Reorganized AWI and all holders of Claims in Class 6) shall report, for tax purposes, consistently with such treatment.

(b) The Disbursing Agent may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Disputed Unsecured Claims Reserve for all taxable periods through the termination of such reserve.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

6.1     *Impaired Classes to Vote.*  Each holder of a Claim in an impaired Class of Claims shall be entitled to vote to accept or reject the Plan to the extent and in the manner provided by the Voting Procedures Order.

6.2     *Acceptance by Class of Claims.*  Acceptance of the Plan by any impaired Class of Claims shall be determined in accordance with the Voting Procedures Order.

6.3     *Nonconsensual Confirmation.*  In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, AWI reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, or (b) amend the Plan in accordance with section 4.1 hereof.

## ARTICLE VII

## IMPLEMENTATION OF THE PLAN

7.1     *Creation of Asbestos PI Trust.*  Effective as of the later of (i) the date the Asbestos PI Trustees have executed the Asbestos PI Trust Agreement and (ii) the Effective Date, the Asbestos PI Trust shall be created.  The Asbestos PI Trust is intended to be a "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code.  The purpose of the Asbestos PI Trust shall be to, among other things, (a) direct the processing, liquidation, and payment of all Asbestos Personal Injury Claims in accordance with the Plan, the Asbestos PI Trust Distribution Procedures, and the Confirmation Order and (b) preserve, hold, manage, and maximize the assets of the Asbestos PI Trust for use in paying and satisfying Asbestos Personal Injury Claims.

7.2     *Appointment of Asbestos PI Trustees.*  On the Confirmation Date, effective as of the Effective Date, the Bankruptcy Court shall appoint the individuals selected jointly by the Asbestos PI Claimants' Committee and the Future Claimants' Representative (as identified in Exhibit 7.2 to the Plan), which individuals shall be appointed after consultation with AWI, to serve as the Asbestos PI Trustees for the Asbestos PI Trust.

7.3     *144A Offering.*  AWI will use reasonable efforts to effect the 144A Offering and obtain a Term Loan B prior to, on or as soon as practicable after the Effective Date such that the 144A Offering Proceeds yield an amount at least equal to the Plan Note Amount, in which case the Plan Notes will not be issued under the Plan.  However, if AWI successfully completes a 144A Offering but the 144A Offering Proceeds are less than the Plan Note Amount, AWI will issue additional 144A Debt Securities to the applicable classes of Creditors in lieu of

the Plan Notes it would otherwise issue under the Plan Note Indentures (subject to compliance with applicable securities laws) and, in any event, AWI will not issue Plan Notes that have terms and conditions that are not substantially the same as those of the 144A Debt Securities without the consent of the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee. In addition, if AWI is not successful in obtaining a Term Loan B, AWI will not issue any floating interest rate Plan Notes unless such floating rate Plan Notes satisfy the requirements of the Plan and are on terms and conditions that are mutually satisfactory to AWI and the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee.

7.4    *Amendment of Articles of Incorporation.*  The Articles of Incorporation shall be amended and restated as of the Effective Date in substantially the form of the Amended and Restated Articles of Incorporation, *inter alia,* (a) to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Amended and Restated Articles of Incorporation as permitted by applicable law, and (b) to authorize 215 million (215,000,000) shares of capital stock of which (i) 200 million (200,000,000) shares will be shares of common stock, and (ii) 15 million shares will be preferred stock of Reorganized AWI, with such rights, preferences and privileges as may be determined by the Board of Directors. Pursuant to the Plan, of the 200 million shares of common stock (A) fifty to sixty million (50,000,000-60,000,000) shares shall be New Common Stock issued under the Plan, (B) a portion shall be reserved for issuance under the New Long-Term Incentive Plan, and (C) the remainder shall be reserved for future issuance.

7.5    *Amendment of By-Laws.*  The By-Laws of AWI shall be amended and restated as of the Effective Date in substantially the form of the Amended and Restated By-Laws.

7.6    *Stockholder and Registration Rights Agreement.*  On the Effective Date, AWI and the Asbestos PI Trust shall enter into the Stockholder and Registration Rights Agreement, which will provide, among other things, for the registration by Reorganized AWI of shares of New Common Stock and Plan Notes owned by the Asbestos PI Trust for public sale in certain circumstances, will provide for rights of others to participate in certain sales of New Common Stock and Plan Notes by the Asbestos PI Trust, and will establish certain requirements for amendment of provisions of the Amended and Restated Articles of Incorporation and the Amended and Restated Bylaws.

7.7    *Distributions under the Plan.*  Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

7.8    *Timing of Distributions under the Plan.*  Any Distribution to be made by AWI or Reorganized AWI pursuant to the Plan shall be deemed to have been timely made if made within ten (10) days after the time therefor specified in the Plan. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date; *provided, however,* that any Plan Notes distributed from the Disputed Unsecured Claims Reserve after the Initial Distribution Date shall include accrued interest and any other accretions thereon (net of the portion of the expenses of the Disputed Unsecured Claims Reserve (including, without limitation, taxes) attributable to such Plan Notes) from and after the Initial Distribution Date in accordance with the terms of the Plan Note Indentures, and New Common Stock issued to holders of Allowed Claims in Classes 6 and 8 after the Effective Date

shall include all dividends declared and paid and other distributions made in respect thereto after the Effective Date.

(a) *Distributions with Respect to Unsecured Claims and Environmental Claims.* Distributions with respect to Classes 6 and 8 shall only be made on each Distribution Date; *provided, however,* that, if a Claim in any of Classes 6 or 8 becomes Allowed subsequent to the Initial Distribution Date, AWI may, in its sole discretion, make a Distribution with respect to such Claim prior to a Distribution Date. For purposes of treatment and Distribution under the Plan, except as provided with respect to treatment of Claims in the voting procedures approved by the Voting Procedures Order, all Unsecured Claims held by a Creditor shall be aggregated and treated as a single Claim. At the written request of AWI or the Disbursing Agent, any Creditor holding multiple Unsecured Claims shall provide to AWI or the Disbursing Agent, as the case may be, a single address to which any Distributions shall be sent. At the written request of any Creditor holding multiple Unsecured Claims made to the Disbursing Agent within thirty (30) days prior to a Distribution Date, such Creditor shall receive an itemized statement of the Unsecured Claims for which the Distribution is being made.

(b) *Distribution to the Asbestos PI Trust.* The Distribution to the Asbestos PI Trust shall be made on the later of (a) the date the Asbestos PI Trustees have executed the Asbestos PI Trust Agreement and (b) the Effective Date; *provided, however,* that if AWI intends to complete the 144A Offering, then the Distribution of the 144A Offering Proceeds and/or Plan Notes to the Asbestos PI Trust shall occur as soon as practicable after the 144A Offering is completed or Reorganized AWI determines not to complete a 144A Offering, but in no event shall such Distribution occur after the Initial Distribution Date.

7.9    *Disbursing Agent.* All distributions under the Plan shall be made by Reorganized AWI as Disbursing Agent or such other entity designated by Reorganized AWI as a Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by Reorganized AWI. Distributions on account of Debt Security Claims shall be made to the Indenture Trustee under the applicable Indenture for subsequent distribution to the holders of the Debt Security Claims, and upon such Distribution to the Indenture Trustees, AWI and Reorganized AWI shall have no further obligations with respect thereto.

7.10    *Record Date.* Except as and to the extent otherwise required by customary procedures of the DTC with respect to Debt Security Claims, as of the close of business on the Record Date, the various transfer and claims registers for each of the classes of Claims as maintained by AWI, its respective agents, or the Indenture Trustees shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims. AWI and Reorganized AWI shall have no obligation to recognize any transfer of the Claims occurring after the close of business on the Record Date. AWI, Reorganized AWI, the Disbursing Agent, and the Indenture Trustees shall be entitled to recognize and deal hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable.

7.11    *Distributions to Holders of Debt Security Claims Administered by the Indenture Trustees.*

(a)    Distributions to holders of Debt Security Claims administered by the Indenture Trustees will be made on each Distribution Date by means of book-entry exchange through the facilities of the DTC in accordance with the customary practices of the DTC, as and to the extent practicable. In connection with such book-entry exchange, each Indenture Trustee will deliver instructions to the DTC directing the DTC to effect distributions on a *pro rata* basis of the elements of Reorganization Consideration as provided under the Plan with respect to the Debt Security Claims upon which such Indenture Trustee acts as trustee.

(b)    The Indenture Trustees providing services related to Distributions pursuant to the Plan will receive from Reorganized AWI reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services in an amount pursuant to the procedures set forth in section 7.19 herein.

7.12    *Manner of Payment under the Plan.* Unless the Entity receiving a payment agrees otherwise, any payment in cash to be made by AWI or Reorganized AWI shall be made, at the election of AWI or Reorganized AWI (as the case may be), by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.13    *Hart-Scott-Rodino Compliance.* Any shares of New Common Stock to be distributed under the Plan to any Entity required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended, shall not be distributed until the notification and waiting periods applicable under such Act to such Entity shall have expired or been terminated.

7.14    *Fractional Shares or Other Distributions.* Notwithstanding anything to the contrary contained herein, no fractional shares of New Common Stock shall be distributed, no Plan Notes will be issued in an amount less than $1,000, and no cash payments of fractions of cents will be made. Fractional cents shall be rounded to the nearest whole cent (with .5 cent or less to be rounded down). Fractional shares shall be rounded to the nearest whole share (with .5 share or less to be rounded down). Plan Notes in denominations of less than $1,000 shall be rounded to the nearest $1,000 increment (with Plan Notes in denominations of $500 or less to be rounded down). No cash will be paid in lieu of such fractional shares or Plan Notes in increments of less than $1,000.

7.15    *Occurrence of the Confirmation Date.* The following shall constitute conditions to confirmation of the Plan:

(a) The Bankruptcy Court makes the following findings, each of which shall be contained in the Confirmation Order:

(i)    With respect to any Asbestos Personal Injury Claim that is Allowed by the Asbestos PI Trust in accordance with the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, such allowance shall establish the amount of legal liability against the Asbestos PI Trust in the amount of the liquidated value of such Claim, as determined in accordance with the Asbestos PI Trust Distribution Procedures.

31

(ii)    The Asbestos PI Permanent Channeling Injunction is to be implemented in connection with the Plan and the Asbestos PI Trust.

(iii)    The Plan and its Exhibits are a fair, equitable, and reasonable resolution of the liabilities of AWI for Asbestos Personal Injury Claims.

(iv)    The Plan complies with section 524(g) of the Bankruptcy Code.

(v)    In light of the benefits provided, or to be provided, to the Asbestos PI Trust on behalf of each PI Protected Party, the Asbestos PI Permanent Channeling Injunction is fair and equitable with respect to the persons that might subsequently assert Asbestos Personal Injury Claims against any PI Protected Party.

(vi)    At the time of the order for relief with respect to AWI, AWI had been named as a defendant in personal injury, wrongful death, and property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

(vii)    The Asbestos PI Trust, as of the Effective Date, will assume the liabilities of AWI with respect to all Asbestos Personal Injury Claims and, upon such assumption, Reorganized AWI shall have no liability for any Asbestos Personal Injury Claim.

(viii)    The Asbestos PI Trust is to be funded in whole or in part by securities of Reorganized AWI and by the obligation of Reorganized AWI to make future payments, including dividends.

(ix)    The Asbestos PI Trust is to own, or by the exercise of rights granted under the Plan would be entitled to own if specified contingencies occur, a majority of the voting shares of AWI.

(x)    AWI is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Asbestos PI Permanent Channeling Injunction.

(xi)    The actual amounts, numbers, and timing of the future Demands referenced in section 7.15(a)(x) of the Plan cannot be determined.

(xii)    Pursuit of the Demands referenced in section 7.15(a)(x) of the Plan outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands.

(xiii)    The terms of the Asbestos PI Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan and in any disclosure statement supporting the Plan.

(xiv)    The Plan establishes, in Class 7 (Asbestos Personal Injury Claims), a separate class of the claimants whose Claims are to be addressed by the Asbestos PI Trust.

(xv)    The Future Claimants' Representative was appointed as part of the proceedings leading to issuance of the Asbestos PI Permanent Channeling Injunction for the purpose of protecting the rights of persons that might subsequently assert unknown Asbestos Personal Injury Claims and Demands that are addressed in the Asbestos PI Permanent Channeling Injunction and transferred to the Asbestos PI Trust. The Future Claimants' Representative has fulfilled his duties, responsibilities, and obligations as the future representative in accordance with section 524(g) of the Bankruptcy Code.

(xvi)    Identifying each PI Protected Party in the Asbestos PI Permanent Channeling Injunction is fair and equitable with respect to persons that might subsequently assert Demands against each such PI Protected Party, in light of the benefits provided, or to be provided, to the Asbestos PI Trust by or on behalf of any such PI Protected Party.

(xvii)    Class 7 (Asbestos Personal Injury Claims) has voted, by at least 75 percent (75%) of those voting, in favor of the Plan.

(xviii)    Pursuant to court orders or otherwise, the Asbestos PI Trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Personal Injury Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial position to pay, Asbestos Personal Injury Claims and Demands that involve similar Claims in substantially the same manner.

(b) Class 7 (Asbestos Personal Injury Claims) has voted, by at least 75 percent (75%) of those voting, in favor of the Plan.

(c) The Confirmation Order shall be, in form and substance, acceptable to the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee.

The Plan shall not be confirmed and the Confirmation Order shall not be entered until and unless each of the foregoing conditions to confirmation is either satisfied or waived in writing by each of AWI, the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and the Unsecured Creditors' Committee.

7.16    *Occurrence of the Effective Date.* The "effective date of the plan," as used in section 1129 of the Bankruptcy Code, shall not occur, and the Plan shall be of no force and effect, until the Effective Date. The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a) The Confirmation Order has become a Final Order.

(b) The Bankruptcy Court and/or the District Court, as required, shall have entered the Asbestos PI Permanent Channeling Injunction (which may be included in the Confirmation Order), which shall contain terms satisfactory to AWI, the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee.

33

(c)  The Confirmation Order, the Claims Trading Injunction and the Asbestos PI Permanent Channeling Injunction shall be in full force and effect.

(d)  No proceedings to estimate any Claims shall be pending.

(e)  All Asbestos PI Trustees shall have been selected and shall have executed the Asbestos PI Trust Agreement.

(f)  A favorable ruling shall have been obtained from the IRS with respect to the qualification of the Asbestos PI Trust as a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1, or AWI shall have received an opinion of counsel with respect to the tax status of the Asbestos PI Trust as a "qualified settlement fund" reasonably satisfactory to AWI, the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee.

(g)  Reorganized AWI shall have entered into and shall have credit availability under a credit facility to provide Reorganized AWI with working capital (including letters of credit) in an amount sufficient to meet the needs of Reorganized AWI, as determined by Reorganized AWI.

(h)  Each of the Exhibits shall be in form and substance acceptable to AWI, the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and the Unsecured Creditors' Committee.

Notwithstanding the foregoing, AWI reserves, in its sole discretion, the right, with the written consent of the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee, to waive the occurrence of any of the foregoing conditions precedent to the Effective Date or to modify any of such conditions precedent.  Any such written waiver of a condition precedent set forth in this section may be effected at any time, without notice, without leave or order of the Bankruptcy Court or the District Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If AWI decides that one of the foregoing conditions cannot be satisfied, and the occurrence of such condition is not waived in writing by each of AWI, the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and, if required, the Unsecured Creditors' Committee, then AWI shall file a notice of the failure of the Effective Date with the Bankruptcy Court, at which time the Plan and the Confirmation Order shall be deemed null and void.

### 7.17    *Cancellation of Existing Debt Securities.*

(a)  As of the Effective Date, all notes, agreements, and securities evidencing Unsecured Claims and the rights of the holders thereof thereunder shall be cancelled and deemed null and void and of no further force and effect, and the holders thereof shall have no rights, and such instruments shall evidence no rights, except the right to receive the Distributions provided herein.

(b)    Notwithstanding any other provisions in the Plan, each Indenture or other agreement that governs the rights of a holder of a Debt Security Claim that is administered by an Indenture Trustee shall continue in effect solely for the purposes of permitting the applicable

34

Indenture Trustee thereunder (i) to make distributions to such holder pursuant to the terms of the applicable Indenture; (ii) maintain any rights and liens it may have for any unpaid fees, costs, expenses, and indemnification under such Indenture or other agreement, *provided, however,* such rights and liens are limited to the Distributions, if any, to such holders; and (iii) to be paid by such holders or reimbursed for such prepetition and postpetition fees, costs, expenses, and indemnification (to the extent not paid as an Administrative Expense or otherwise) from the Distributions, if any, to such holders (until payment in full of such fees, costs, expenses or indemnification) on the terms and conditions set forth by the respective Indenture, other agreement, or applicable law.

7.18    *Expiration of the Retention Period.*  Upon the expiration of the Retention Period, all monies or other property held for distribution by any trustee under any indenture governing any of the Unsecured Claims shall be returned to Reorganized AWI by such trustee, free and clear of any claim or interest of any nature whatsoever, including, without express or implied limitation, escheat rights of any governmental unit under applicable law.

7.19    *Compensation of the Applicable Indenture Trustees.*  Reorganized AWI will pay the Indenture Trustees' Fees and Expenses to the extent that an Indenture Trustee makes a written request for Indenture Trustees' Fees and Expenses within thirty (30) days after the Effective Date.  Although it will not be necessary for the Indenture Trustees to apply to the Bankruptcy Court for approval of the Indenture Trustees' Fees and Expenses, any dispute between Reorganized AWI and an Indenture Trustee regarding the reasonableness of any such fees and expenses shall be resolved by the Bankruptcy Court.  Each Indenture Trustee shall be compensated by Reorganized AWI for services rendered from and after the Effective Date, including the reasonable compensation, disbursements, and expenses of the agents and legal counsel of such trustee in connection with the performance after the Effective Date of its duties under this section, and shall be indemnified by Reorganized AWI for any loss, liability, or expense incurred by it in connection with the performance of such duties to the same extent and in the same manner as provided in the related indenture.

7.20    *Distribution of Unclaimed Property.*  Any Distribution under the Plan that is unclaimed after one hundred eighty (180) days following the date such property is distributed shall be deemed not to have been made and shall be transferred to Reorganized AWI, free and clear of any claims or interests of any Entities, including, without express or implied limitation, any claims or interests of any governmental unit under escheat principles.  Nothing contained herein shall affect the discharge of the Claim with respect to which such Distribution was made, and the holder of such Claim shall be forever barred from enforcing such Claim against Reorganized AWI or Reorganized AWI's assets, estate, properties, or interests in property.

7.21    *Management of Reorganized AWI.*  On the Effective Date, the Board of Directors shall consist of at least three individuals who at that time qualify under the prevailing standards of the New York Stock Exchange or the NASDAQ Stock Market (depending upon on which of such markets the common stock of Reorganized AWI will be listed for trading purposes upon the Effective Date) and applicable laws as independent, outside directors, and are eligible to serve on the audit committee of the Board of Directors, as an SEC-reporting public company, and at least three individuals who qualify as outside directors under section 162(m) of the Internal Revenue Code eligible to serve on the committee of the Board of Directors of Reorganized AWI responsible for matters of executive compensation.  Each of the members of such Board of Directors shall be identified on Exhibit 7.21 to the Plan and shall serve in accordance with the Amended and Restated Articles of Incorporation, the Amended and Restated By-Laws, and the

35

Stockholder and Registration Rights Agreement. The officers of AWI immediately prior to the Effective Date shall serve as the officers of Reorganized AWI in accordance with the terms of any employment agreements pursuant to section 8.8 of the Plan and the requirements of applicable nonbankruptcy law.

7.22     *Listing of Reorganized AWI Common Stock.*  Reorganized AWI shall use its best efforts to obtain, as of or as soon as practicable after the Effective Date, the listing of its common stock for trading on the New York Stock Exchange or for quotation in the NASDAQ Stock Market and, for so long as there are at least 300 holders of shares of its common stock, to continue the listing of its common stock for trading on either of such markets.

7.23     *Corporate Reorganization Actions.*  On or as soon as practicable after the Effective Date, Reorganized AWI shall take such actions as may be or become necessary to effectuate the following, all of which shall be authorized and approved in all respects, in each case without further action being required under applicable law, regulation, order, or rule (including, without limitation, any action by the shareholders or directors of AWI or Reorganized AWI or the Asbestos PI Trust or the Asbestos PI Trustees):

(a)  AWI will file the Amended and Restated Articles of Incorporation with the Secretary of State for the Commonwealth of Pennsylvania.

(b)  Certain wholly owned, non-operating subsidiaries of AWI will merge with and into AWI on or as soon as practicable after the Effective Date.

(c)  The Existing AWI Common Stock will be cancelled.

(d)  Subject to section 7.3 hereof, the Plan Note Indentures will become effective and, upon such effectiveness, the Plan Notes will be issued and delivered in accordance with sections 3.2(f) and 11.8 hereof and sections 3.2(g) and 10.1(b) hereof; the New Common Stock will be issued and delivered in accordance with sections 3.2(f) and 11.8 hereof and sections 3.2(g) and 10.1(b) hereof, in each case such issuance and delivery to be subject to the other provisions of ARTICLE VII of the Plan regarding the conditions to and manner of delivery of Plan Notes and New Common Stock.

(e)  Reorganized AWI may consummate the 144A Offering.

(f)  Reorganized AWI will enter into the working capital facility referenced in section 7.16 of the Plan.

(g)  Reorganized AWI will enter into the New Long-Term Incentive Plan.

7.24     *Holdings Transactions.*  From and after the Effective Date, other than as provided in the Plan (including, without limitation, provisions of the Plan relating to the indemnification rights of Holdings' officers, directors, and employees and the requirement to provide insurance for the benefit of such persons), Reorganized AWI shall have no ongoing obligations to Holdings or AWWD; *provided, however,* that Reorganized AWI shall bear (i) all costs and expenses related to the preparation and submission to a vote of Holdings' shareholders of the Holdings Plan of Liquidation, which shall be undertaken as soon as reasonably practicable, and (ii) all other operating expenses of Holdings and AWWD until the time of such vote (and for a reasonable time thereafter to permit an orderly transition on the administration of Holdings' affairs), and (iii) if the requisite approval of the Holdings Plan of Liquidation is obtained, all costs

and expenses of administering the performance and consummation of the Holdings Plan of Liquidation, including any taxes incurred by Holdings in connection therewith.

### 7.25    *Compliance with QSF Regulations.*

(a) *Tax Status of Asbestos PI Trust.* AWI shall timely seek a private letter ruling from the IRS substantially to the effect that, among other things, the Asbestos PI Trust shall be a "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code and the Treasury Regulations thereunder.

(b) *Qualified Appraisal.* Within sixty (60) days before or after the funding of the Asbestos PI Trust (but not later than February 14th of the following calendar year), AWI or Reorganized AWI shall obtain a Qualified Appraisal of the fair market value of the New Common Stock transferred (or to be transferred) to the Asbestos PI Trust.

(c) *Delivery of Statement of Transfers.* Following the funding of the Asbestos PI Trust and the receipt of the Qualified Appraisal (and in no event later than February 15th of the calendar year following the funding of the Asbestos PI Trust), Reorganized AWI shall provide a "§ 1.468B-3 Statement" to the Asbestos PI Trustees in accordance with Treasury Regulations section 1.468B-3(e).

### 7.26    *Effectuating Documents and Further Transactions.* Each of the officers of AWI and Reorganized AWI is authorized, in accordance with his or her authority under the resolutions of the Board of Directors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 7.27    *Allocation of Plan Distributions Between Principal and Interest.* To the extent that any Allowed Unsecured Claim or Allowed Convenience Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim (as determined for federal income tax purposes) first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1    *Assumption of Executory Contracts and Unexpired Leases.* Any executory contracts or unexpired leases listed on Exhibit 8.1 to the Plan shall be deemed to have been assumed by Reorganized AWI as of the Effective Date, and the Plan shall constitute a motion to assume such executory contracts and unexpired leases. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of AWI, its estate, and all parties in interest in the Chapter 11 Case. With respect to each such executory contract or unexpired lease assumed by Reorganized AWI, unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, the dollar amount required to cure any defaults of AWI existing as of the Confirmation Date shall be conclusively presumed to be the amount set forth in Exhibit 8.1 with

respect to such executory contract or unexpired lease. Subject to the occurrence of the Effective Date, any such cure amount shall be treated as an Allowed Administrative Expense under the Plan, and, upon payment of such Allowed Administrative Expense, all defaults of AWI existing as of the Confirmation Date with respect to such executory contract or unexpired lease shall be deemed cured.

8.2    *Rejection of Executory Contracts and Unexpired Leases.* Any executory contracts or unexpired leases of AWI that either (x) are set forth on Exhibit 8.2 to the Plan or (y)(i) are not listed on Exhibit 8.1 to the Plan, (ii) have not been assumed by AWI with the approval of the Bankruptcy Court, *and* (iii) are not the subject of pending motions to assume at the Confirmation Date shall be deemed to have been rejected by AWI, the Plan shall constitute a motion to reject such executory contracts and unexpired leases, and Reorganized AWI shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interest of AWI, its estate, and all parties in interest in the Chapter 11 Case. Without limiting the foregoing, any agreement entered into prior to the Commencement Date by or on behalf of AWI with respect to the settlement of any Asbestos Personal Injury Claim shall be deemed rejected as of the Effective Date to the extent such settlement agreement is deemed to be an executory contract within the meaning of section 365(a) of the Bankruptcy Code.

8.3    *Claims Arising from Rejection, Termination or Expiration.* Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in section 8.2 of the Plan) or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date, other than Asbestos Personal Injury Claims, must be filed with the Bankruptcy Court and served on AWI no later than thirty (30) days after (i) in the case of an executory contract or unexpired lease that was terminated or expired by its terms prior to the Confirmation Date, the Confirmation Date, (ii) in the case of an executory contract or unexpired lease rejected by AWI, the entry of the order of the Bankruptcy Court authorizing such rejection, or (iii) in the case of an executory contract or unexpired lease that is deemed rejected pursuant to section 8.2 of the Plan, the Confirmation Date. Notwithstanding the foregoing, Exhibit 8.2 to the Plan sets forth AWI's value of the rejection claim for each executory contract or unexpired lease set forth thereon, which claim shall be deemed an Allowed Unsecured Claim if no proof of claim is timely filed and served in accordance with the immediately preceding sentence. Any Claims for which a rejection claim is not set forth on Exhibit 8.2 to the Plan and for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against AWI, its estate, assets, properties, or interests in property, or Reorganized AWI or its estate, assets, properties, or interests in property. Unless otherwise ordered by the Bankruptcy Court, all such Claims (other than Asbestos Personal Injury Claims) that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan and shall be subject to the provisions of Article V of the Plan.

8.4    *Previously Scheduled Contracts.* Exhibit 8.4 to the Plan sets forth a list of agreements that were listed on the Schedules as executory contracts (other than agreements that were listed as "Previously Scheduled Contracts" in the *Order Pursuant to Bankruptcy Rules 2002(a)(7) and 3003(c)(3) (I) Fixing a Final Date for Filing Proofs of Claim Relating to Certain Contracts and Leases and (II) Approving the Proposed Forms of Proof of Claim and Notice,* dated September 29, 2005), but which AWI believes should not be considered executory contracts (either because they were not executory contracts as of the Commencement Date or because they have expired or terminated in accordance with their terms prior to the Effective

Date). If any such agreements are determined to be executory contracts, AWI or Reorganized AWI, as the case may be, reserves the right to seek the assumption or rejection of any such contract, and the time within which AWI or Reorganized AWI, as the case may be, may seek to assume or reject any such agreements shall be tolled until twenty (20) Business Days after the date on which an order determining that any such agreement is an executory contract becomes a Final Order. Set forth on Exhibit 8.4 to the Plan is the amount that AWI intends to treat as an Allowed Unsecured Claim for each such agreement. Such amount and the treatment of each such agreement shall be binding unless, on or before ten (10) days after the Confirmation Date, the other party to any such agreement either (i) files a proof of claim (which proof of claim shall be deemed timely filed) or (ii) files a motion seeking to compel assumption or rejection of such agreement.

    8.5  *Insurance Policies and Agreements.*

      (a) *Assumed Insurance Policies and Agreements.*  AWI does not believe that the insurance policies issued to, or insurance agreements entered into by, AWI prior to the Commencement Date constitute executory contracts. To the extent that such insurance policies or agreements are considered to be executory contracts, then, notwithstanding anything contained in sections 8.1 or 8.2 of the Plan to the contrary, the Plan shall constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of AWI, its estate, and all parties in interest in the Chapter 11 Case. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of AWI existing as of the Confirmation Date with respect to each such insurance policy or agreement. In accordance with section 10.1 hereof, the rights under the insurance policies and agreements constituting the Asbestos PI Insurance Asset shall, to the extent necessary, be deemed assigned to the Asbestos PI Trust as of the Effective Date and, pursuant to section 365 of the Bankruptcy Code, AWI shall have no further liability thereunder from and after the Effective Date.

      (b) *Reservation of Rights.*  Nothing contained in the Plan, including this section 8.5, shall constitute a waiver of any claim, right, or cause of action that AWI, the Asbestos PI Trust, or Reorganized AWI, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement.

    8.6  *Indemnification and Reimbursement Obligations.*  For purposes of the Plan, the obligations of AWI to indemnify and reimburse persons who are or were directors, officers, or employees of Holdings, AWWD, or AWI on the Commencement Date or at any time thereafter against and for any obligations (including, without limitation, fees and expenses incurred by the board of directors of Holdings, or the members thereof, in connection with the Chapter 11 Case) pursuant to articles of incorporation, codes of regulations, bylaws, applicable state law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Commencement Date. In furtherance of the foregoing, Reorganized AWI shall maintain insurance for the benefit of such directors, officers, or employees at levels no less favorable than those existing as of the date of entry of the Confirmation Order for a period of no less than four years following the Effective Date.

8.7     *Compensation and Benefit Programs.*  (a) Except as set forth below in sections 8.7(b) and 8.7(c) of the Plan, all employment and severance policies, workers' compensation programs, and all compensation and benefit plans, policies and programs of AWI applicable to its present and former employees, officers, and directors, including, without express or implied limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, and life, accidental death, and dismemberment insurance plans, shall be deemed to be, and shall be treated as though they are, executory contracts that are deemed assumed under the Plan, and AWI's obligations under such plans, policies, and programs shall be deemed assumed pursuant to section 365(a) of the Bankruptcy Code, survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code.  Any defaults existing under any of such plans, policies, and programs shall be cured promptly after they become known by Reorganized AWI.

(b) Notwithstanding section 8.7(a) of the Plan, on the Effective Date (unless an earlier date is specified herein),

(i)     the Employment Protection Plan for Salaried Employees will be deemed to have been terminated, cancelled, and of no further force and effect prior to the Effective Date, and the participants thereunder shall have no further rights thereunder;

(ii)     the 1993 Long-Term Stock Incentive Plan will be deemed terminated, cancelled, and of no further force and effect, and the participants thereunder shall have no further rights thereunder; *provided* that any and all remaining restrictions on restricted stock awards under the 1993 Long-Term Stock Incentive Plan will lapse on the Effective Date to the extent participants do not elect to waive their right to such awards prior to such date;

(iii)     the 1999 Long-Term Incentive Plan will be deemed terminated, cancelled, and of no further force and effect, and the participants thereunder shall have no further rights thereunder; *provided* that any and all remaining restrictions on restricted stock awards under the 1999 Long-Term Incentive Plan will lapse on the Effective Date to the extent participants do not elect to waive their right to such awards prior to such date; and

(iv)     the Armstrong Holdings Stock Award Plan will be deemed terminated, cancelled, and of no further force and effect, and the participants thereunder shall have no further rights thereunder; *provided* that any and all remaining restrictions on restricted stock awards under the Armstrong Holdings Stock Award Plan will lapse on the Effective Date to the extent participants do not elect to waive their right to such awards prior to such date.

(c) Notwithstanding section 8.7(a) of the Plan, on the Effective Date (unless an earlier date is specified herein),

(i)     the Armstrong Deferred Compensation Plan will be modified so that Reorganized AWI, and not Holdings, will be the sponsor of such plan and to provide that Reorganized AWI has the right, in its sole discretion, not to honor single-sum withdrawal requests, and the Armstrong Deferred Compensation Plan will be assumed, as amended; *provided, however,* as to any party that objects to such amendment by the deadline for filing objections to confirmation of the Plan,

40

the Armstrong Deferred Compensation Plan will be deemed rejected, and such party will have an Unsecured Claim for any benefits thereunder in accordance with section 8.3 of the Plan, and, as of any date immediately prior to the Effective Date designated by Holdings, the Armstrong Deferred Compensation Plan will be deemed amended to exclude the occurrence of the Effective Date, the creation of the Asbestos PI Trust, and the issuance of the New Common Stock to the Asbestos PI Trust from triggering a change in control thereunder;

(ii)    the Severance Pay Plan for Salaried Employees will be amended as of the Effective Date as follows:  If the participant is in a position at a grade level of 15 or higher on Reorganized AWI's organizational management system on the date of termination, the participant will be eligible for severance benefits based on two weeks of pay for each year of service, subject to a minimum of 8 weeks pay and a maximum of 52 weeks pay, and the Severance Pay Plan for Salaried Employees will be assumed, as amended;

(iii)    the Retirement Income Plan (Pension) will be amended prior to the Effective Date in the manner described below and, as amended, will be assumed as of the Effective Date:

1.  to eliminate the Social Security retirement enhancement that may become payable due to job loss following a Change in Control (as defined in the Retirement Income Plan (Pension)), and

2.  to eliminate future accruals of all other retirement enhancements that may become payable due to job loss following a Change in Control to the fullest extent permitted by applicable law; and

(iv)    the Retirement Benefit Equity Plan will be amended as of any date prior to the Effective Date designated by AWI in the manner described below and, as amended, will be assumed as of the Effective Date:

1.  to exclude in the definition of Change in Control (as defined in the Retirement Benefit Equity Plan) the occurrence of the Effective Date, the creation of the Asbestos PI Trust, and the issuance of the New Common Stock to the Asbestos PI Trust,

2.  to eliminate the Extraordinary Event provisions as covered under the Retirement Income Plan,

3.  to eliminate any and all retirement enhancements, related to past and future service, that may become payable due to job loss following a Change in Control as covered under the Retirement Income Plan, and

4.  to terminate any right or obligation of Reorganized AWI to honor single-sum withdrawal requests;

*provided*, however, as to any party that objects to such amendments by the deadline for filing objections to confirmation of the Plan, such plan will be

deemed rejected, and such party will have an Unsecured Claim for any benefits thereunder in accordance with section 8.3 of the Plan.

(d) On the Effective Date, the assumption, rejection, and amendment of the foregoing plans provided in this section 8.7 shall be deemed to have occurred as of such date or earlier date specified in such section, shall be authorized, and shall be deemed approved in all respects, and shall be in effect from and after the Effective Date or such other date in each case without requiring further action under applicable law, regulation, order, or rule, including, without express or implied limitation, any action by any party or Entity, including any administrative committee of any plan or the stockholders or directors of AWI or Reorganized AWI. On the Effective Date or as soon thereafter as is practicable, Reorganized AWI shall restate the plans amended above as provided in section 8.7(c) and shall communicate such amendments in such manner and as may be required without any further order of the Bankruptcy Court. Each of the officers of AWI and Reorganized AWI is authorized, in accordance with his or her authority under the resolutions of the Board of Directors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the plan amendments set forth in this section of the Plan.

8.8     *Management Agreements.*     On the Effective Date, all employment contracts between AWI and any employee of AWI who was employed by AWI as of the date immediately preceding the Effective Date (including, without limitation, any offer letters issued to any such employees to the extent such offer letters are not superseded by formal employment contracts) shall be deemed assumed by Reorganized AWI. In addition, Reorganized AWI shall enter into new employment contracts with those persons listed on Exhibit 8.8-A substantially in the form of Exhibit 8.8-B to the Plan, which employment contracts shall be deemed authorized without any further approval of the Board of Directors of AWI or Reorganized AWI and automatically shall become effective on the Effective Date.

## ARTICLE IX

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Case or the Plan, or (c) to perform any of the following actions:

9.1     To interpret, enforce, and administer the terms of the Asbestos PI Trust Agreement (including all annexes and exhibits thereto), and the restrictions on transfer of Asbestos Personal Injury Claims contained in the Confirmation Order.

9.2     To hear and determine any and all motions or applications pending on the Confirmation Date (or thereafter if a contract listed on Exhibit 8.4 of the Plan is thereafter determined to be executory, and AWI is required to assume or reject it) for the assumption and/or assignment or rejection of executory contracts or unexpired leases to which AWI is a party or with respect to which AWI may be liable, and to hear and determine any and all Claims resulting therefrom or from the expiration or termination prior to the Confirmation Date of any executory contract or unexpired lease;

9.3     To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by Reorganized AWI after the Effective Date, including, without express or implied limitation, any claims to avoid any preferences, fraudulent transfers, or other voidable transfers, or otherwise to recover assets for the benefit of AWI's estate;

9.4     To hear and determine any objections to the allowance of Claims arising prior to the Effective Date (other than Asbestos Personal Injury Claims), whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow or disallow any Disputed Claim in whole or in part;

9.5     To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

9.6     To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without express or implied limitation, the Confirmation Order;

9.7     To hear and determine all applications for allowances of compensation and reimbursement of expenses of professionals under sections 330 and 331 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan;

9.8     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan (and all Exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

9.9     To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim (other than an Asbestos Personal Injury Claim) or cause of action by or against AWI's estate;

9.10    To determine such other matters that may be set forth in the Plan, the Confirmation Order, the Claims Trading Injunction, or the Asbestos PI Permanent Channeling Injunction, or that may arise in connection with the Plan, the Confirmation Order, the Claims Trading Injunction, or the Asbestos PI Permanent Channeling Injunction;

9.11    To hear and determine any proceeding that involves the validity, application, construction, enforceability, or modification of the Claims Trading Injunction or the Asbestos PI Permanent Channeling Injunction or of the application of section 524(g) of the Bankruptcy Code to the Asbestos PI Permanent Channeling Injunction;

9.12    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which AWI, as Debtor or Debtor in Possession, or the Disputed Unsecured Claims Reserve may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any request for expedited determination under section 505(b) of the Bankruptcy Code);

9.13    To enter an order or final decree closing the Chapter 11 Case; and

9.14    To hear and determine all objections to the termination of the Asbestos PI Trust.

43

To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the "Bankruptcy Court" in this ARTICLE IX shall be deemed to be replaced by the "District Court." Notwithstanding anything in this ARTICLE IX to the contrary, (i) the allowance of Asbestos Personal Injury Claims and the forum in which such allowance will be determined will be governed by and in accordance with the Asbestos PI Trust Distribution Procedures and the Asbestos PI Trust Agreement, and (ii) the Bankruptcy Court and/or the District Court shall have concurrent rather than exclusive jurisdiction with respect to (x) disputes relating to rights under insurance policies issued to AWI that are included in the Asbestos PI Insurance Asset, (y) disputes relating to AWI's claim for costs, expenses and fees incurred in connection with an Alternative Dispute Resolution Proceeding initiated in 1996, as referenced in section 1.20 of the Plan, and (z) disputes relating to AWI's rights to insurance with respect to workers' compensation claims.

## ARTICLE X

## TRANSFERS OF PROPERTY TO AND ASSUMPTION OF CERTAIN LIABILITIES BY THE ASBESTOS PI TRUST

10.1    *Transfer of Certain Property to the Asbestos PI Trust.*

(a) *Transfer of Books and Records.* On the Effective Date or as soon thereafter as is practicable, at the sole cost and expense of the Asbestos PI Trust and in accordance with written instructions provided to Reorganized AWI by the Asbestos PI Trust, Reorganized AWI shall transfer and assign, or cause to be transferred and assigned, to the Asbestos PI Trust the books and records of AWI that pertain directly to Asbestos Personal Injury Claims that have been asserted against AWI. AWI will request that the Bankruptcy Court, in the Confirmation Order, rule that such transfer does not result in the destruction or waiver of any applicable privileges pertaining to such books and records. If the Bankruptcy Court does not so rule, at the option of the Asbestos PI Trust, Reorganized AWI will, at the sole cost and expense of the Asbestos PI Trust, retain the books and records and enter into arrangements to permit the Asbestos PI Trust to have access to such books and records. If the Asbestos PI Trust does not issue written instructions for the transfer or retention of such books and records within one hundred eighty (180) days after the later of the Effective Date and the date by which all the Asbestos PI Trustees have executed the Asbestos PI Trust Agreement, or if the Asbestos PI Trust so requests, Reorganized AWI may (and shall, if the Asbestos PI Trust so requests, but at the sole cost and expense of the Asbestos PI Trust) destroy any such books and records, and the order of the District Court entered during the Chapter 11 Case with respect to the retention of books and records shall be deemed superseded by this section of the Plan.

(b) *Transfer of Plan Consideration.* On the later of the Effective Date and the date by which all the Asbestos PI Trustees have executed the Asbestos PI Trust Agreement, AWI shall transfer to the Asbestos PI Trust the Asbestos PI Insurance Asset and the following assets:

(i)    65.57% of the New Common Stock,

(ii)    65.57% of the first $1.05 billion of (x) up to $300 million of Available Cash and (y) principal amount of each series of Plan Notes and/or 144A Offering Proceeds,

44

(iii)  40% of the first $50 million of Available Cash remaining after making provision for the Distribution provided in section 3.2(f)(ii)2 of the Plan and the funding of the Asbestos PI Trust in section 10.1(b)(ii) of the Plan,

(iv)  40% of an amount of each series of Plan Notes and/or 144A Offering Proceeds equal to the difference (if positive) of $50 million *less* the amount of Available Cash remaining after making provision for the Distribution provided in section 3.2(f)(ii)2 of the Plan and the funding of the Asbestos PI Trust in section 10.1(b)(ii) of the Plan, and

(v)  65.57% of the remaining Available Cash and each series of Plan Notes and/or 144A Offering Proceeds after making provision for the Distribution provided in sections 3.2(f)(ii)2, 3.2(f)(ii)3, and 3.2(f)(ii)4 of the Plan and the funding of the Asbestos PI Trust in sections 10.1(b)(ii), 10.1(b)(iii), and 10.1(b)(iv) of the Plan.

Notwithstanding the foregoing, if (x) AWI intends to complete a 144A Offering and the 144A Offering has not been completed as of the time for the Distribution to the Asbestos PI Trust specified herein, then the Distribution of the Plan Notes and/or 144A Offering Proceeds to the Asbestos PI Trust shall be made as soon as practicable after the 144A Offering is completed or Reorganized AWI determines not to complete a 144A Offering, but in no event shall such Distribution occur after the Initial Distribution Date, and (y) if the Effective Date occurs on the first Business Day of a month, Distribution to the Asbestos PI Trust of its share of the Available Cash shall be made on a date selected by AWI that is within ten (10) Business Days after the Effective Date, but in no event shall such Distribution occur after the Initial Distribution Date.

10.2  *Assumption of Certain Liabilities by the Asbestos PI Trust.*  In consideration for the property transferred to the Asbestos PI Trust pursuant to section 10.1 hereof and in furtherance of the purposes of the Asbestos PI Trust and the Plan, the Asbestos PI Trust shall assume all liability and responsibility for all Asbestos Personal Injury Claims, and Reorganized AWI shall have no further financial or other responsibility or liability therefor. The Asbestos PI Trust shall also assume all liability for premiums, deductibles, retrospective premium adjustments, security or collateral arrangements, or any other charges, costs, fees, or expenses (if any) that become due to any insurer in connection with the Asbestos PI Insurance Asset as a result of Asbestos Personal Injury Claims, asbestos-related personal injury claims against Entities insured under policies included in the Asbestos PI Insurance Asset by reason of vendor's endorsements, or under the indemnity provisions of settlement agreements that AWI made with various insurers prior to the Commencement Date to the extent that those indemnity provisions relate to Asbestos Personal Injury Claims, and Reorganized AWI shall have no further financial or other responsibility or liability for any of the foregoing.

10.3  *Cooperation with Respect to Insurance Matters.*  Reorganized AWI shall cooperate with the Asbestos PI Trust and use commercially reasonable efforts to take or cause to be taken all appropriate actions and to do or cause to be done all things necessary or appropriate to effectuate the transfer of the Asbestos PI Insurance Asset to the Asbestos PI Trust. By way of enumeration and not of limitation, Reorganized AWI shall be obligated (i) to provide the Asbestos PI Trust with copies of insurance policies and settlement agreements included within or relating to the Asbestos PI Insurance Asset;  (ii) to provide the Asbestos PI Trust with information necessary or helpful to the Asbestos PI Trust in connection with its efforts to obtain insurance coverage for Asbestos Personal Injury Claims; and (iii) to execute further assignments or allow the Asbestos PI Trust to pursue claims relating to the Asbestos PI Insurance Asset in its

name (subject to appropriate disclosure of the fact that the Asbestos PI Trust is doing so and the reasons why it is doing so), including by means of arbitration, alternative dispute resolution proceedings or litigation, to the extent necessary or helpful to the efforts of the Asbestos PI Trust to obtain insurance coverage under the Asbestos PI Insurance Asset for Asbestos Personal Injury Claims. To the extent that the transfer of the Asbestos PI Insurance Asset to the Asbestos PI Trust is determined to be invalid by a court or arbitrator of competent jurisdiction, upon the request of the Asbestos PI Trust, Reorganized AWI shall (i) pursue any rights to the Asbestos PI Insurance Asset for the benefit of, and to the fullest extent required by, the Asbestos PI Trust, and (ii) immediately transfer any amounts recovered under or on account of the Asbestos PI Insurance Asset to the Asbestos PI Trust. The Asbestos PI Trust shall be obligated to compensate Reorganized AWI for costs reasonably incurred in connection with providing assistance to the Asbestos PI Trust or in pursuing recovery for the benefit of the Asbestos PI Trust pursuant to this section 10.3, including, but not limited to, out-of-pocket costs and expenses, consultant fees, and attorneys' fees.

10.4    *Authority of AWI.* Effective on the Confirmation Date, AWI shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable it to implement effectively the provisions of the Plan and the Asbestos PI Trust Agreement.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1    *Payment of Statutory Fees.* All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, shall be paid by AWI on or before the Effective Date.

11.2    *Discharge of AWI.* The rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued thereon from and after the Commencement Date, against AWI, or its estate, assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Equity Interests in AWI shall be satisfied, discharged, and released in full. Reorganized AWI shall not be responsible for any obligations of AWI except those expressly assumed by Reorganized AWI in the Plan. All Entities shall be precluded and forever barred from asserting against AWI, Reorganized AWI, their successors or assigns, or their assets, properties, or interests in property any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

11.3    *Rights of Action.* Any rights, claims, or causes of action accruing to AWI pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including, without express or implied limitation, any avoidance or recovery actions under sections 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code and (except as provided in Articles X and XI hereof) any rights to, claims or causes of action for recovery under any policies of insurance issued to or on behalf of AWI shall remain assets of AWI's estate and, on the Effective Date, shall be transferred to Reorganized AWI. Reorganized AWI shall be deemed the appointed representative to, and may, pursue, litigate, and compromise and settle any such rights, claims, or

causes of action, as appropriate, in accordance with what is in the best interests of and for the benefit of Reorganized AWI.

      11.4    *Third Party Agreements.*  The Distributions to the various classes of Claims hereunder shall not affect the right of any Entity to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise.  All of such rights and any agreements relating thereto shall remain in full force and effect.

      11.5    *Dissolution of Committees.*  On the Effective Date, the Future Claimants' Representative, the Asbestos PI Claimants' Committee, the Asbestos PD Committee, and the Unsecured Creditors' Committee shall thereupon be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Case, and, except for the limited purpose of presenting final applications for fee and expenses, all such committees shall be deemed dissolved, and the Future Claimants' Representative shall continue to serve through the termination of the Asbestos PI Trust in order to perform the functions required by the Asbestos PI Trust Agreement; *provided, however,* (i) if the Effective Date occurs before the Confirmation Order becomes a Final Order, the Asbestos PI Claimants' Committee, the Future Claimants' Representative, and, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee may continue to exist and to serve for the purposes of pursuing any appeal of the Confirmation Order, and (ii) if any adversary proceeding to which any of the Asbestos PI Claimants' Committee, the Future Claimants' Representative, or, if Class 6 votes to accept the Plan, the Unsecured Creditors' Committee is participating is pending as of the Effective Date, any such committee may continue to exist or the Future Claimants' Representative may continue to serve for the limited purpose of litigating such adversary proceeding.  The fees and expenses of the Future Claimants' Representative from and after the Effective Date relating to the role of the Future Claimants' Representative in the Asbestos PI Trust, pursuant to the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures (including, without limitation, the fees and expenses of any professionals retained by the Future Claimants' Representative), shall be the sole responsibility of the Asbestos PI Trust.

      11.6    *Exculpation.*  None of Reorganized AWI, any of the members of the Asbestos PI Claimants' Committee, the Future Claimants' Representative, any of the members of the Unsecured Creditors' Committee, any members of the Asbestos PD Committee, AWWD, Holdings, or any of their officers, directors, employees, or agents shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Case, including, without limitation, the commencement of the Chapter 11 Case, the negotiation of the Plan, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Plan.

      11.7    *Title to Assets; Discharge of Liabilities.*  Except as otherwise provided in the Plan, on the Effective Date, title to all assets and properties and interests in property dealt with by the Plan shall vest in Reorganized AWI free and clear of all Claims, Equity Interests, Encumbrances, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of AWI arising prior to the Effective Date, except as may be otherwise provided in the Plan.

11.8    *Surrender and Cancellation of Instruments.*    Except as otherwise provided in section 7.11 of the Plan with respect to Debt Security Claims issued under the Indentures, and in addition to the provisions of section 3.2(f) hereof, each holder of a promissory note or other instrument evidencing an Unsecured Claim shall surrender such promissory note or instrument to Reorganized AWI, and Reorganized AWI shall distribute or cause to be distributed to the holder thereof the appropriate Distribution hereunder.  At the option of Reorganized AWI (in its sole and absolute discretion), no Distribution hereunder shall be made to or on behalf of any holder of such Unsecured Claim unless and until such promissory note or instrument is received or the unavailability of such note or instrument is reasonably established to the satisfaction of Reorganized AWI.  In accordance with section 1143 of the Bankruptcy Code, any such holder of such a Claim that fails to surrender or cause to be surrendered such promissory note or instrument or to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to Reorganized AWI and, in the event that Reorganized AWI requests, furnish a bond in form and substance (including, without limitation, amount) reasonably satisfactory to Reorganized AWI within the Retention Period shall be deemed to have forfeited all rights, claims, and interests and shall not participate in any Distribution hereunder.

11.9    *Notices.*    Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to AWI:

Armstrong World Industries, Inc.
Corporate Center
Post Office Box 3666
Lancaster, Pennsylvania  17604-3666
Attention:  General Counsel

*and*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attention:    Stephen Karotkin, Esq.
Telecopier:  (212) 310-8007
Telephone Confirmation:    (212) 310-8888

If to the Asbestos PI
Claimants' Committee:

Caplin & Drysdale
375 Park Avenue
New York, New York  10022
Attention:    Elihu Inselbuch, Esq.
Telecopier:  (212) 644-6755
Telephone Confirmation:    (212) 319-7125

48

If to the Future Claimants'
  Representative:

                                     Dean M. Trafelet, Esq.
                                     9130 Wild Lane
                                     Baileys Harbor, Wisconsin  54292
                                     Telecopier:  (920) 839-9438
                                     Telephone Confirmation:   (920) 839-1485

                                     *and*

                                     Kaye Scholer LLP
                                     425 Park Avenue
                                     New York, New York  10022
                                     Telecopier:  (212) 836-7157
                                     Telephone Confirmation:   (212) 836-8781
                                     Attention:  Andrew Kress, Esq.


If to the Unsecured Creditors'
  Committee:

                                       Paul, Weiss, Rifkind, Wharton & Garrison
                                     1285 Avenue of the Americas
                                     New York, New York  10019-6064
                                     Telecopier:  (212) 757-3990
                                     Telephone Confirmation:  (212) 373-3000
                                     Attention:  Andrew N. Rosenberg, Esq.


        11.10    *Headings.*  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

        11.11    *Severability.*  At the unanimous option of AWI, the Asbestos PI Trust, the Future Claimant's Representative, and the Unsecured Creditors' Committee, each acting in its or his sole discretion, any provision of the Plan, the Claims Trading Injunction, the Confirmation Order, the Asbestos PI Permanent Channeling Injunction, or any of the Exhibits to the Plan that is prohibited, unenforceable, or invalid shall, as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated, be ineffective to the extent of such prohibition, unenforceability, or invalidation without invalidating the remaining provisions of the Plan, the Claims Trading Injunction, the Confirmation Order, the Asbestos PI Permanent Channeling Injunction, and the Exhibits to the Plan or affecting the validity or enforceability of such provisions in any other jurisdiction.

        11.12    *Governing Law.*  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or by Pennsylvania corporate law, the laws of the State of Delaware, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

11.13 *Compliance with Tax Requirements.* In connection with the Plan, AWI and the Disbursing Agent will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.14 *Exemption from Transfer Taxes.* Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without express or implied limitation, any liens granted in connection with the exit finance facility referred to in section 7.16(g) hereof, shall not be subject to any sales and use, stamp, real estate transfer, mortgage recording, or other similar tax.

11.15 *Expedited Determination of Postpetition Taxes.* AWI and Reorganized AWI are authorized (but not required) to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, AWI for all taxable periods (or portions thereof) from the Commencement Date through (and including) the Effective Date.

Dated:. Wilmington, Delaware
      February 21, 2006

Respectfully submitted,

ARMSTRONG WORLD INDUSTRIES, INC.

By: _____
      Name:  John N. Rigas
      Title:   Senior Vice President, Secretary, and
             General Counsel

WEIL, GOTSHAL & MANGES LLP
Co-Attorneys for Armstrong World
 Industries, Inc., *et al.*
Chapter 11 Debtor in Possession
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

and

RICHARDS, LAYTON & FINGER
Co-Attorneys for Armstrong World
 Industries, Inc., *et al.*
Chapter 11 Debtor in Possession
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 658-6541

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re                                    :    Chapter 11 Case No.
                                         :
ARMSTRONG WORLD INDUSTRIES,              :    00-4471 (JKF)
INC., et al.,                            :
                                         :
                        Debtors.         :    (Jointly Administered)
------------------------------------------------------- x
```

## Exhibit List

| | |
|---|---|
| Exhibit 1.13: | Amended and Restated Articles of Incorporation (*attached*) |
| Exhibit 1.14: | Amended and Restated By-Laws (*attached*) |
| Exhibit 1.23: | Asbestos PI Trust Agreement (*attached*) |
| Exhibit 1.24: | Asbestos PI Trust Distribution Procedures (*attached*) |
| Exhibit 1.39: | Claims Settlement Guidelines (*attached*) |
| Exhibit 1.89: | New Long-Term Incentive Plan (*attached*) |
| Exhibit 1.94: | Plan Note Indentures (*attached*) |
| | Exhibit 1.94-A: Form of Plan Indentures for Senior Notes Due 2010 (*attached*) |
| | Exhibit 1.94-B: Form of Plan Indentures for Senior Notes Due 2013 (*attached*) |
| Exhibit 1.107: | Stockholder and Registration Rights Agreement (*attached*) |
| Exhibit 7.2: | Individuals Appointed as Asbestos PI Trustees (*attached*) |
| Exhibit 7.21: | Board of Directors of Reorganized AWI (*attached*) |
| Exhibit 8.1: | Assumed Executory Contracts and Unexpired Leases (*attached*) |
| Exhibit 8.2: | Rejected Executory Contracts and Unexpired Leases (*attached*) |
| Exhibit 8.4: | Previously Listed Executory Contracts No Longer Considered Executory Contracts (*attached*) |
| Exhibit 8.8: | Management Agreements (*attached*) |
| | Exhibit 8.8-A: Identity of Persons Entering into Management Agreements (*attached*) |
| | Exhibit 8.8-B: Form of Management Agreement (*attached*) |