**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

------------------------------------------------------------- x
*In re*                               :        **Chapter 11 Case No.**
                                        :
**ARMSTRONG WORLD INDUSTRIES,**    :        **00-4471 (JKF)**
**INC.,** *et al.,*                          :
                                        :
                  **Debtors.**        :        **(Jointly Administered)**
                                        :
------------------------------------------------------------- x

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION OF THE FOURTH AMENDED PLAN OF REORGANIZATION OF ARMSTRONG WORLD INDUSTRIES, INC., AS MODIFIED

Armstrong World Industries, Inc. (*"AWI"*), as debtor and debtor in possession

(the *"Debtor"*), having proposed and filed the Fourth Amended Plan of Reorganization of

Armstrong World Industries, Inc., dated May 23, 2003 (as modified by the modifications

filed on October 17, 2003, November 10, 2003 and December 3, 2004 (collectively, the

*"Modifications"*) the *"Plan"*), and the Disclosure Statement in respect of the Fourth

Amended Plan, dated June 2, 2003 (the *"Disclosure Statement"*); and the procedures for

solicitation and tabulation of votes to accept or reject the Plan having been approved by

the United States Bankruptcy Court for the District of Delaware (the *"Bankruptcy*

*Court"*) pursuant to an order dated April 21, 2003 (the *"Voting Procedures Order"*); and

the Disclosure Statement having been approved by the Bankruptcy Court pursuant to an

order dated June 4, 2003, as containing "adequate information" pursuant to section 1125

of the Bankruptcy Code (the *"Disclosure Statement Order"*); and the Affidavit of

Trumbull Associates LLC (f.k.a. Trumbull Services, LLC) (*"Trumbull"*) Regarding

Service by First Class Mail of the Solicitation Materials Related to the Plan Pursuant to

the Disclosure Statement Order, dated July 1, 2003 (the *"Trumbull Affidavit of Mailing"*), having been filed with the Bankruptcy Court, and the Affidavit of Service of Voting Documents by Innisfree M&A Incorporated (*"Innisfree"*), dated June 25, 2003 (the *"Innisfree Affidavit of Mailing"* and, together with the Trumbull Affidavit of Mailing, the *"Affidavits of Mailing"*), having been filed with the Bankruptcy Court; and the certificate of publications of Kathy Kinsella of Kinsella Communications, Ltd. (the *"Certificate of Publications"*) attesting to the publication of the Confirmation Hearing Publication Notice and the Asbestos Publication Notice (as hereinafter defined) in accordance with the Voting Procedures Order having been filed with the Bankruptcy Court; and the Certification of Votes Tabulated by Trumbull (the *"Trumbull Certification"*) and the Certification of Votes Tabulated by Innisfree (the *"Innisfree Certification"* and, together with the Trumbull Certification, the *"Certifications of Votes"*) having been filed with the Bankruptcy Court on November 7, 2003; and AWI having filed with the Bankruptcy Court the affidavits in support of confirmation of the Plan of (i) William C. Rodruan, Vice President and Controller of AWI (the *"Rodruan Affidavit"*), (ii) Daniel L. Aronson, a Director of Lazard Frères & Co. LLC, (*"Lazard"*), financial advisors to AWI (the *"Aronson Affidavit"*), and (iii) Dean M. Trafelet, the Future Claimants' Representative (the *"Trafelet Affidavit"* and, together with the Rodruan Affidavit and the Aronson Affidavit, the *"Affidavits in Support of Plan Confirmation"*) (collectively, with the Affidavits of Mailing, the Certificate of Publications, and the Certifications of Votes, *"AWI's Confirmation Documents"*); and each of the Objections (as hereinafter defined) other than the objection of the Unsecured Creditors' Committee (as hereinafter defined), dated November 12, 2003, having been

resolved, overruled or withdrawn prior to the hearing to consider confirmation of the Plan

conducted by the Bankruptcy Court on November 17 and 18, 2003 (the "*Initial*

*Confirmation Hearing*"); and, on December 19, 2003, the Bankruptcy Court having

entered the *Proposed Findings of Fact and Conclusions of Law Regarding Confirmation*

*of the Fourth Amended Plan of Reorganization of Armstrong World Industries, Inc., as*

*Modified* (the "*Proposed Findings and Conclusions*") and the *Proposed Order*

*Confirming the Fourth Amended Plan of Reorganization of Armstrong World Industries,*

*Inc., as Modified* (the "*Proposed Confirmation Order*"); and on December 29, 2003, the

Unsecured Creditors' Committee having filed an objection to the Proposed Findings and

Conclusions (the "*Unsecured Creditors' Committee's Objection*") with the United States

District Court for the District of Delaware (the "*District Court*"); and the District Court

having conducted a hearing to consider the Unsecured Creditors' Committee's Objection

on December 15, 2004; and on February 23, 2005, the District Court having issued a

memorandum decision and order (the "*District Court Order*") denying confirmation of

the Plan; and on March 4, 2005, AWI having filed a notice of appeal from the District

Court Order with the United States Court of Appeals for the Third Circuit (the "*Third*

*Circuit Appeal*"); and on December 29, 2005, the Third Circuit having issued an opinion

affirming the District Court Order; and on February 8, 2006, the District Court having

entered the Order (the "*Case Management Order*") Establishing Schedule with Respect

to Hearing on Confirmation of the Fourth Amended Plan of Reorganization of Armstrong

World Industries, Inc., as Modified; and pursuant to the Case Management Order, on

February 21, 2006, AWI having filed the Fourth Amended Plan of Reorganization of

Armstrong World Industries, Inc., as Modified (the "*Modified Plan*"); and the District

Court having conducted a hearing to consider confirmation of the Modified Plan on May

23, 24, 25, and July 11, 2006 (the *"Confirmation Hearing"*); and the District Court

having reviewed and considered the Modified Plan, the Exhibit Volume filed with the

Bankruptcy Court on September 5, 2003 (as modified and as may be modified from time

to time, the "*Exhibit Volume*"), AWI's Confirmation Documents, the Disclosure

Statement, the Disclosure Statement Order, and the entire record of the Initial

Confirmation Hearing and the Confirmation Hearing, and the District Court being

familiar with the Modified Plan and other relevant factors affecting AWI's chapter 11

case (the *"Chapter 11 Case"*); and the District Court having taken judicial notice of the

entire record of the Chapter 11 Case since the Commencement Date; and the appearance

of all interested parties having been duly noted in the record of the Confirmation Hearing;

and the District Court having entered its decision and order, dated August 14, 2006 (the

"*Unfair Discrimination Decision and Order*"), overruling the Unfair Discrimination

Objection (as hereinafter defined); and after due deliberation and sufficient cause

appearing therefor;

        IT IS HEREBY FOUND, CONCLUDED, AND ADJUDGED, AS

FOLLOWS:

## FINDINGS OF FACT

### Prepetition Asbestos-Related
### Personal Injury Litigation Against AWI

        1.     Prior to the Commencement Date, AWI was named as a defendant

in personal injury and wrongful death actions seeking recovery for damages allegedly

caused by the presence of, or exposure to, asbestos or asbestos-containing products.

        2.     During the three-year period immediately prior to its December 6,

2000 chapter 11 filing, AWI paid over $500 million in settlement payments (including defense costs) on account of asbestos-related personal injury and wrongful death claims. As of September 30, 2000, approximately 173,000 asbestos-related personal injury and wrongful death claims were pending against AWI within the tort system in a multitude of jurisdictions. (Disclosure Statement, p. 17, Docket No. 4801).

### Prepetition Asbestos-Related
### Property Damage Litigation Against AWI

3.      Prior to the Commencement Date, AWI was named as a defendant in 273 property damages cases seeking recovery for damages allegedly caused by the presence of asbestos-containing materials in plaintiffs' premises. Such claims generally were not the result of AWI's insulation installation contracting activities. Instead, those that were actively pursued against AWI concerned primarily resilient floor covering products manufactured and sold by AWI prior to 1983. (Disclosure Statement, p. 25, Docket No. 4801).

### Events Leading to the
### Commencement of AWI's Chapter 11 Case

4.      On October 5, 2000, Owens Corning ("*OC*") filed for chapter 11 protection to address its asbestos liabilities. *In re Owens Corning, et al.*, Chapter 11 Case No. 00-03837 (JKF) (Bankr. D. Del.). Following the OC filing, AWI was unable to obtain a replacement credit facility with acceptable terms for its then-existing $450 million credit facility due to expire on October 19, 2000. OC's chapter 11 filing raised additional concerns about the possibility of increased settlement demands of asbestos plaintiffs given that, prior to its filing, OC had been a major defendant in asbestos litigation. (Rodruan Affidavit, at ¶ 5).

5.      On October 25, 2000, both Standard & Poors and Moody's
Investors Services downgraded AWI's long-term debt rating, citing the reduction in
committed credit facilities, prospects for weaker operating performance, and continued
uncertainty surrounding AWI's asbestos personal injury liability as result of, among other
things, OC's chapter 11 filing. (Rodruan Affidavit, at ¶ 6).

6.      After October 25, 2000, AWI was unable to issue commercial
paper and, instead, borrowed from its remaining $450 million credit facility. As of
December 6, 2000, approximately $50 million of commercial paper was outstanding, and
the entire $450 million credit facility had been drawn and was outstanding. (Rodruan
Affidavit, at ¶ 7).

## Commencement of AWI's Chapter 11 Case

7.      On December 6, 2000 (the "*Commencement Date*"), AWI and two
of its wholly-owned direct and indirect subsidiaries, Nitram Liquidators, Inc. and
Desseaux Corporation of North America (collectively, the "*Debtors*"), each commenced a
case under chapter 11 of the Bankruptcy Code. (Debtors' Chapter 11 Petitions, Docket
No. 1).

8.      By previous order of the Bankruptcy Court, dated December 7,
2000, the chapter 11 cases of the Debtors are being jointly administered pursuant to Rule
1015 of the Federal Rules of Bankruptcy Procedure. (Debtors' Joint Administration
Order, Docket No. 10).

9.      AWI's chapter 11 case (the "*Chapter 11 Case*") originally was
assigned to the Honorable Joseph J. Farnan, Jr., a United States District Court Judge for
the District of Delaware. During the fourth quarter of 2001, the Third Circuit assigned

District Court Judge Alfred M. Wolin of New Jersey to preside over the Chapter 11 Case

in the District of Delaware.  The Third Circuit also assigned Judge Wolin to preside over

four other asbestos-related chapter 11 cases pending in the District of Delaware (together

with the Chapter 11 Case, the "*Five Asbestos Cases*").  Judge Wolin retained issues

relating to asbestos personal injury claims and referred other asbestos related issues and

bankruptcy related matters in the Chapter 11 Case to U.S. Bankruptcy Court Judge

Randall J. Newsome.

        10.    Since the Commencement Date, the Debtors have continued to

operate their business and manage their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

        11.    No trustee or examiner has been appointed in the Debtors' chapter

11 cases.  On or about December 15, 2000, the United States Trustee for the District of

Delaware (the "*U.S. Trustee*") appointed the Official Committee of Unsecured Creditors

(the "*Unsecured Creditors' Committee*"), and the Official Committee of Asbestos

Claimants (the "*Asbestos PI Claimants' Committee*").  (Notice of Appointment of

Unsecured Creditors' Committee, Docket No. 90; Notice of Appointment of the Asbestos

PI Claimants' Committee, Docket No. 91).

        12.    On or about July 19, 2001, the U.S. Trustee appointed the Official

Committee of Asbestos Property Damage Claimants (the "*Asbestos PD Committee*").

(Notice of Appointment of Asbestos PD Committee, Docket No. 1075).  The Asbestos

PD Committee was disbanded as of September 18, 2003, pursuant to the terms of the

Global Asbestos PD Settlement, which was approved by the Bankruptcy Court on August

25, 2003.  (Order Approving Global Asbestos PD Settlement, Docket No. 5464).

13. On or about March 1, 2002, the Bankruptcy Court entered an order approving the appointment of Dean M. Trafelet as the legal representative for AWI's future asbestos personal injury claimants (the *"Future Claimants' Representative,"* and together with the Unsecured Creditors' Committee and the Asbestos PI Claimants' Committee, the *"Committees"*). (Order Appointing Future Claimants' Representative, Docket No. 2096).

**Negotiation of the Plan**

14. Since the commencement of its Chapter 11 Case and promptly after achieving stabilization of its business operations, AWI engaged in extensive and continuing negotiations with the various constituents in the Chapter 11 Case in order to formulate a long-term business plan and, ultimately, to formulate, negotiate and propose a plan of reorganization. (Rodruan Affidavit, at ¶ 8).

15. On August 29, 2002, AWI and the representatives of the Committees appeared at a status conference before the District Court. At such status conference, the District Court requested that AWI file a plan of reorganization within 45 days. (Rodruan Affidavit, at ¶ 9).

16. Following such status conference, AWI focused its efforts, together with the Committees, on negotiating and working out the details of a comprehensive plan of reorganization that had the support of all the major constituencies in the Chapter 11 Case. These efforts involved substantial time and effort on the part of AWI, the Committees, and their respective professionals. (Rodruan Affidavit, at ¶ 10).

17. On October 17, 2002, AWI and the representatives of the Committees appeared at a subsequent status conference before the District Court. At

such status conference and after substantial negotiations, the parties reached agreement on the terms of a plan that had the support of the Committees. (Rodruan Affidavit, at ¶ 11). As a result of such agreement, on November 4, 2002, AWI filed the Plan of Reorganization of Armstrong World Industries, Inc. with the Bankruptcy Court (the *"Original Plan"*). (Docket No. 3313).

18.      On December 20, 2002, AWI filed the proposed disclosure statement with respect to the Original Plan. (Docket No. 3313).

19.      Subsequent to the filing of the Original Plan and proposed disclosure statement, AWI, the Committees and other parties in interest engaged in further negotiations in an effort to resolve a number of objections that arose in connection with approval of the disclosure statement, which resulted in AWI filing amended plans of reorganization on March 14, 2003 (the *"First Amended Plan"*), April 3, 2003 (the *"Second Amended Plan"*), and May 1, 2003 (the *"Third Amended Plan"*). (Docket No. 4241, No. 4414, and No. 4636, respectively).

20.      Hearings to consider the adequacy of the Disclosure Statement were conducted by the Bankruptcy Court on February 28, 2003, April 4, 2003, May 5, 2003, and May 30, 2003 (collectively, the *"Disclosure Statement Hearing"*).

21.      On May 23, 2003, AWI filed the Plan (Docket No. 4802) and the Disclosure Statement (Docket No. 4801) to, *inter alia*, address the comments made by the Bankruptcy Court at the Disclosure Statement Hearing and to make other agreed changes.

**The Voting Procedures Order**

22.      On April 21, 2003, by the Voting Procedures Order, the Bankruptcy Court approved (i) solicitation and tabulation procedures and (ii) the forms of

ballots and master ballots (collectively, the "**Ballots**") to be used in connection with the

solicitation of votes to accept or reject the Plan (the "**Voting Procedures**"). (Voting

Procedures Order, Docket No. 4564).

**The Disclosure Statement Order**
**and Solicitation of Votes on the Plan**

23.     On June 2, 2003, by the Disclosure Statement Order, the

Bankruptcy Court, among other things, (i) found that sufficient and timely notice of the

Disclosure Statement Hearing was given in accordance with the Bankruptcy Rules and

orders of the Bankruptcy Court and (ii) approved the Disclosure Statement as containing

"adequate information" within the meaning of section 1125 of the Bankruptcy Code.

(Disclosure Statement Order, Docket No. 4885).

24.     The Disclosure Statement Order and the Voting Procedures

established the record date for determining creditors entitled to vote on the Plan (the

"**Voting Record Date**") as June 4, 2003.

25.     The Disclosure Statement Order authorized and directed Trumbull

and Innisfree (collectively, the "**Voting Agents**"), on behalf of AWI, to solicit acceptances

and rejections of the Plan in a manner consistent with the Bankruptcy Code, the

Bankruptcy Rules and in accordance with the procedures set forth in the Disclosure

Statement Order and the Voting Procedures. (Disclosure Statement Order, Docket No.

4885).

26.     In compliance with the Disclosure Statement Order and the Voting

Procedures, AWI caused to be transmitted by first class mail, postage prepaid, to (i) each

holder of a Claim against AWI listed in the schedules as of the Voting Record Date, (ii)

each holder of a Claim represented by a proof of claim filed against AWI, (iii) each

Entity listed on the schedules as a party to an executory contract or an unexpired lease

with AWI and any Entity listed as a party to any contract listed on Exhibit "8.1," "8.2" or

"8.4" to the Plan, (iv) each holder of a Claim held by a Lender (as such term is defined in

the Voting Procedures) as of the Voting Record Date, (v) each holder of record of the

Equity Interests in AWI, (vi) all holders of Debt Security Claims and the holders of equity

securities issued by Armstrong Holdings, Inc. ("*Holdings Equity Securities*"), in

accordance with the procedures set forth in section 3.g of the Voting Procedures, and (vii)

all known holders of Asbestos Personal Injury Claims and Indirect PI Trust Claims, in

accordance with the procedures set forth in section 4 of the Voting Procedures, the

following: (a) a copy of the Disclosure Statement and all exhibits thereto, including,

without limitation, the Plan annexed thereto as Exhibit "A" and the Disclosure Statement

Order annexed thereto as Exhibit "B;" (b) the Notice of (i) Approval of Disclosure

Statement, (ii) Establishment of Record Date for Voting Purposes, (iii) Hearing to

Consider Confirmation of the Plan, (iv) Procedures for Objecting to Confirmation of the

Plan, and (vi) Procedures and Deadline for Voting on the Plan (the "*Initial Confirmation

Hearing Notice*"); and (c) if such holder was entitled, pursuant to the Disclosure

Statement Order, to vote, an appropriate Ballot for each class in which such holder was

entitled to vote and a pre-addressed return envelope for each such Ballot (collectively, a

"*Solicitation Package*").  (Trumbull Affidavit of Mailing, at ¶ 3).

   27. Pursuant to the Disclosure Statement Order, AWI was required to

complete such transmittal on or before June 20, 2003 (except with respect to holders of

Holdings Equity Securities as described below), and such transmittal was timely

completed in accordance with the requirements of the Disclosure Statement Order.

(Trumbull Affidavit of Mailing, at ¶ 2; Innisfree Affidavit of Mailing, at ¶ 3).

28.     Pursuant to the terms of the Disclosure Statement Order, AWI was authorized and directed to cause a Solicitation Package to be served on the holders of Holdings Equity Securities by August 22, 2003. The record date for determining the holders of Holdings Equity Securities entitled to receive Solicitation Packages was set as August 15, 2003 (the "*Holdings Record Date*") (Rodruan Affidavit, at ¶ 11).

29.     In accordance with the Disclosure Statement Order, AWI caused to be transmitted by first class mail, postage prepaid, a Solicitation Package (without a Ballot) to all holders of Holdings Equity Securities as of the Holdings Record Date, by August 22, 2003.

30.     The Disclosure Statement Order authorized and directed AWI to provide or cause to be provided notice by publication (the "*Initial Confirmation Hearing Publication Notice*") of the approval of the Disclosure Statement, the Voting Deadline, the time and place of the Initial Confirmation Hearing, the time and date by which objections to confirmation of the Plan were required to be filed, and other pertinent information. (Disclosure Statement Order, Docket No. 4885).

31.     The Initial Confirmation Hearing Publication Notice was published (i) twice in *The New York Times, The Wall Street Journal* and *USA Today* (weekday editions of the national edition), and (ii) once in each of the newspapers and trade publications set forth on Exhibits "E" and "F" to the Disclosure Statement Order, on the dates set forth next to the name of each such publication as set forth in paragraph 6 to the Certificate of Publications, in accordance with the Disclosure Statement Order. (Certificate of Publications, Docket No. 5309).

32.     The Disclosure Statement Order authorized and directed AWI to

provide or cause to be provided notice by publication to all unknown holders of Asbestos

Personal Injury Claims (the "*Asbestos Publication Notice*") of the Voting Deadline, the

Objection Deadline and other pertinent information relating to the Initial Confirmation

Hearing and the solicitation of votes on the Plan. (Disclosure Statement Order, Docket

No. 4885).

33.     The Asbestos Publication Notice was published once in each of the

publications listed in paragraph 5 to the Certificate of Publications on the dates set forth

next to the name of each such publication. (Certificate of Publication, Docket No. 5309).

34.     AWI's publication of the Initial Confirmation Hearing Publication

Notice and the Asbestos Publication Notice complied in all material respects with the

requirements of the Disclosure Statement Order and the Voting Procedures.

35.     Written requests for Solicitation Packages were received from each

of the persons or entities listed on Exhibit "A" to the Trumbull Certification, and

Trumbull mailed by first-class mail, postage-prepaid, a Solicitation Package to each of

the persons or entities listed on Exhibit "A" on or about the date specified next to the

name of each such person or entity. (Trumbull Certification, at ¶ 7).

36.     AWI's distribution of the Solicitation Packages complied with the

requirements of the Disclosure Statement Order.

37.     The Disclosure Statement Order (i) established the date and time

by which all Ballots were required to be completed, executed, marked and actually

received by the Voting Agents in order to be counted as timely acceptances or rejections

of the Plan (the "*Original Voting Deadline*") as September 22, 2003, at 5:00 p.m.,

Wilmington, Delaware time; (ii) established September 22, 2003, at 4:00 p.m., Wilmington, Delaware time, as the date and time for filing objections to confirmation of the Plan (the *"Objection Deadline"*); (iii) established October 24, 2003, at 4:00 p.m., Wilmington, Delaware time, as the last date and time for AWI, the DIP Lenders, the Prepetition Lenders, and the Committees to file responses to objections to confirmation (the *"Reply Deadline"*); and (iv) scheduled the Initial Confirmation Hearing to commence on November 17, 2003.

38.     By order of the Bankruptcy Court dated September 24, 2003, the Original Voting Deadline was extended to 5:00 p.m., Wilmington, Delaware time, on October 17, 2003. (Order Extending Voting Deadline, Docket No. 5688). Thereafter, by order of the Bankruptcy Court dated October 11, 2003, the Original Voting Deadline was further extended to 5:00 p.m., Wilmington, Delaware time, on October 31, 2003 (the *"Voting Deadline"*). (Second Order Extending Voting Deadline, Docket No. 5797).

## Filing of the Exhibit Volume

39.     In accordance with Article I.B of the Plan, on September 5, 2003, AWI filed with the Bankruptcy Court the Exhibit Volume, which included draft forms of (i) the Amended and Restated Articles of Incorporation, (ii) the Amended and Restated By-Laws, (iii) the Asbestos PI Trust Agreement, (iv) the Asbestos PI Trust Distribution Procedures, (v) the Claims Settlement Guidelines, (vi) the New Long-Term Incentive Plan, (vii) the New Warrants, (viii) the Plan Note Indentures, (ix) the Stockholder and Registration Rights Agreement, (x) a list identifying the individuals appointed as Asbestos PI Trustees, (xi) a list identifying the proposed Board of Directors of Reorganized AWI, and (xii) lists of (a) any executory contracts and unexpired leases to be

assumed pursuant to the Plan, (b) any executory contracts and unexpired leases to be

rejected pursuant to the Plan, and (c) previously listed executory contracts no longer

considered executory, and (xiii) Management Agreements that AWI intends to enter into

in connection with consummation of the Plan (of which there are none). (Exhibit

Volume, Docket No. 5508).

> 40.     In connection with filing the Modified Plan, on February 21, 2006,

AWI filed revised exhibits to the Modified Plan. These exhibits included the following:

(i) the Amended and Restated By-Laws, (ii) the Amended and Restated Articles of

Incorporation, (iii) the Asbestos PI Trust Agreement, (iv) the Asbestos PI Trust

Distribution Procedures, (v) the Claims Settlement Guidelines, (vi) the New Long-Term

Incentive Plan, (vii) the Plan Note Indentures, (viii) the Stockholder and Registration

Rights Agreement, (ix) a list identifying the individuals appointed as Asbestos PI

Trustees, (xii) a list identifying the proposed Board of Directors of Reorganized AWI,

and (xii) lists of (a) any executory contracts and unexpired leases to be assumed pursuant

to the Plan, (b) any executory contracts and unexpired leases to be rejected pursuant to the

Plan, and (c) previously listed executory contracts no longer considered executory.

(Modified Plan, Docket No. 9116). See, infra, ¶ 64.

## Classification of Claims and Equity Interests Under the Plan

> 41.     The Plan designates the following classes of Claims and Equity

Interests:

|         |   |                                                |
|---------|---|------------------------------------------------|
| Class 1 | - | Priority Claims                                |
| Class 2 | - | Secured Claims                                 |
| Class 3 | - | Convenience Claims                             |
| Class 4 | - | Asbestos Property Damage Claims                |
| Class 5 | - | COLI Claims                                     |
| Class 6 | - | Unsecured Claims other than Convenience Claims |
| Class 7 | - | Asbestos Personal Injury Claims                |

| Class 8  | - | Environmental Claims |
| Class 9  | - | Affiliate Claims |
| Class 10 | - | Subsidiary Debt Guarantee Claims |
| Class 11 | - | Employee Benefit Claims |
| Class 12 | - | Equity Interests |

(Plan, Article II).

42.    The Plan defines a "Convenience Claim" as an Unsecured Claim
(other than a Debt Security Claim) in the amount of $10,000 or less or that is reduced to
$10,000 at the election of the Claimant. A holder of an Allowed Convenience Claim will
be paid 75% of the Allowed Amount of its Allowed Convenience Claim in cash on the
later of the Effective Date and as soon as practicable after such Convenience Claim
becomes Allowed. (Plan, Section 1.48). As of the date of the Initial Confirmation
Hearing, AWI estimated that approximately 2,050 holders of Unsecured Claims either
have Convenience Claims or have elected to have their Unsecured Claims treated as
Convenience Claims. (Rodruan Affidavit, at ¶ 13). The treatment of such claims as
Convenience Claims enables AWI to avoid having to keep track of such Claims for
purposes of making Distributions on each Distribution Date and to avoid having to issue
small amounts of New Common Stock and Plan Notes (if issued) to such holders.
(Rodruan Affidavit, at ¶ 13). Accordingly, the designation of a class of Convenience
Claims (Class 3) is reasonable and necessary for administrative convenience. (Plan,
Article II; Rodruan Affidavit, at ¶ 13).

43.    All Claims within each class are substantially similar to the other
Claims in that class, and the class of Equity Interests (Class 12) consists of a single holder
of Equity Interests. (Plan, Article II; Rodruan Affidavit, at ¶ 14).

44.    The classification scheme was not proposed to create a consenting

impaired class or to manipulate class voting. (Plan, Article II; Rodruan Affidavit, at ¶ 14).

### The Voting

45.     Section 3.1 of the Plan identifies each of the following Classes as unimpaired under the Plan: Class 1 (Priority Claims), Class 2 (Secured Claims), Class 4 (Asbestos Property Damage Claims), Class 5 (COLI Claims), Class 9 (Affiliate Claims), Class 10 (Subsidiary Debt Guarantee Claims), and Class 11 (Employee Benefit Claims). Pursuant to section 1126(f) of the Bankruptcy Code, the holders of Claims in these Classes, and, therefore, these Classes, are conclusively presumed to have accepted the Plan.

46.     Because of the Global Asbestos PD Settlement and the disallowance of other Asbestos Property Damage Claims, Class 4 no longer has any Claims in it. (Rodruan Affidavit, at ¶ 12). Class 8 currently is comprised solely of the claims of the United States Environmental Protection Agency (the *"EPA"*) arising under that certain Settlement Agreement, dated January 25, 2005 (the *"EPA Settlement Agreement"*), which was approved by the Bankruptcy Court on August 23, 2005. Because the EPA is receiving the treatment provided for it in the EPA Settlement Agreement, Class 8 is unimpaired.

47.     The Voting Agents have made a final determination of the validity of, and tabulation respecting, all acceptances and rejections of the Plan by the impaired Classes of Claims and Equity Interests entitled to vote on the Plan, and the Certifications of Votes set forth such results, including the amount and number of Claims of each Class voting to accept or reject the Plan. The following summarizes, by each impaired Class,

the voting on the Plan:

| Class | $ / % voting to Accept | $ / % voting to Reject | # / % voting to Accept | # / % voting to Reject |
|---|---|---|---|---|
| Class 3 | 2,291,751/98.24% | 41,029/1.76% | 747/98.68% | 10/1.32% |
| Class 6 | 266,151,238/23.21% | 880,433,654/76.79% | 1,646/88.03% | 224/11.98% |
| Class 7 | 3,614,589,300/98.31% | 62,114,300/1.69% | 297,338/98.23% | 5,351/1.77% |
| Class 12 | 40,255,499/100% | ____ | 1/100% | ____ |

Accordingly, each of impaired Classes 3 and 7 has accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in each such Class actually voting. Class 6 has failed to accept the Plan because less than two-thirds in amount of Claims in Class 6 actually voting on the Plan voted to accept the Plan. These voting results apply to the Modified Plan as well. Although Class 12 originally voted to accept the Plan, because the holder of Equity Interests in Class 12 is not receiving or retaining any property under the Modified Plan, Class 12 is deemed to have rejected the Modified Plan.

48.     Class 7 (Asbestos Personal Injury Claims) has voted by at least 75 percent (75%) of those voting in favor of the Plan. This vote also applies to the Modified Plan.

49.     The determination of the Voting Agents with respect to the voting on the Plan validly and correctly sets forth the tabulation of votes, as required by the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

**Modifications to the Plan**

50.     On October 17, 2003, November 10, 2003, and December 3, 2004, AWI filed the Modifications. Among other things, the Modifications (i) reflect the

incorporation of the Term B Loan concept as part of AWI's exit financing facility, (ii) clarify that, with respect to the 144A Offering, (a) if the 144A Offering Proceeds are less than the amounts required under the terms of the Plan, AWI will issue securities substantially similar to the 144A Debt Securities, and (b) the 144A Offering Proceeds are carved out of the definition of Available Cash under the Plan, (iii) reflect an agreement that AWI will not issue any floating rate notes unless such notes are issued on terms and conditions that are mutually satisfactory to AWI and the Committees, (iv) reflect an amendment to the definition of the Effective Date, (v) clarify the definition of Available Cash and the timing of the Distribution of Available Cash to the Asbestos PI Trust, (vi) provide for modifications to the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, which, among other things, preserve the ability of holders of Indirect PI Trust Claims to prove their Claims against the Asbestos PI Trust, and (vii) correct technical errors with respect to the agreements listed on Exhibits "8.1," "8.2," and "8.4" to the Plan.

51.    Notice of the proposed Modifications was provided to the United States Trustee, the attorneys for the Committees, the attorneys for the Debtors' Prepetition Lenders, and all parties on the Debtors' Core Group Service List and All Notices List in these cases pursuant to the Bankruptcy Court's Order Establishing Case Management Procedures and Hearing Schedule, dated February 11, 2002 and the Bankruptcy Court's Revised Order Establishing Case Management Procedures and Hearing Schedule, dated May 26, 2004. The Modifications do not adversely affect the treatment of the Claim of any creditor or the Equity Interests of any equity security holder who has not accepted in writing the Modifications.

52.  For a discussion of modifications reflected in the Modified Plan,

see, *infra*, ¶¶ 64-65.

**Objections to Confirmation of the Plan**

53.  By the Objection Deadline, objections to confirmation of the Plan

(collectively, the "*Objections*") were filed by the following parties:

1   ACE USA Insurers (Docket No. 5633)

2   Amchem Products, Inc., Certainteed Corp., Dana Corp., I.U. North America, Inc., Maremont Corp., National Service Industries, Inc., Nosroc Corp., Pfizer Inc., Quigley Co., Inc., and Union Carbide Corp. (the "*CCR Members*")

3   California Franchise Tax Board

4   Center for Claims Resolution ("*CCR*")

5   Directly Affiliated Local Union 461, AFL-CIO ("*DALU 461*")

6   E.F.P. Floor Products Fussboeden GbmH, St. Johann in Tirol (Austria) ("*EFP*")

7   Georgia Department of Natural Resources

8   John Crane, Inc.

9   Liberty Property Holdings, L.P.

10  Unsecured Creditors' Committee (Conditional Objection)

11  Safeco Insurance Company of America ("*Safeco*")

12  Solutia Inc.

13  Travelers Indemnity Company and Travelers Casualty and Surety Company ("*Travelers*")

14  United States

15  United States Department of Labor

16  United States Gypsum Co. ("*USG*")

17  U.S. Trustee

After the Objection Deadline, objections were filed by Liberty Mutual Insurance Company (*"Liberty Mutual"*) and Bank One Trust Company, N.A., as indenture trustee ("*Bank One*"). In addition, after the Objection Deadline, on November 12, 2003, the Unsecured Creditors' Committee filed a Memorandum of Law of the Official Committee of Unsecured Creditors in Opposition to Confirmation of the Debtors' Fourth Amended Plan of Reorganization (the *"November 12 Objection"*). In response to a motion by AWI, dated November 14, 2003, seeking entry of an order pursuant to Bankruptcy Rules 9006 and 3020 striking certain objections contained in the November 12 Objection, the Bankruptcy Court entered a separate order striking certain objections contained in the November 12 Objection. The objections by Liberty Mutual and Bank One, and the remaining objections in the November 12 Objection are included within the scope of the term "Objections" as used herein.

54.     In accordance with the Disclosure Statement Order, AWI filed a reply to the Objections (the *"Reply"*) by the Reply Deadline and served the Reply on all entities required to be served so that such entities actually received the Reply by the Reply Deadline.

55.     The Objections of the ACE USA Insurers, Liberty Property Holdings, L.P., the U.S. Trustee, the California Franchise Tax Board, the CCR Members, CCR, DALU 461, EFP, Georgia Department of Natural Resources, John Crane, Inc., Safeco, Solutia Inc., Travelers, the United States, the United States Department of Labor, Liberty Mutual, and USG have been withdrawn. The Objection of Bank One and the remaining objections in the November 12 Objection were overruled by the Bankruptcy Court at the Initial Confirmation Hearing.

## The Initial Confirmation Hearing

56.     Pursuant to section 524(g)(3) of the Bankruptcy Code, one of the requirements for a valid Asbestos PI Permanent Channeling Injunction is that "the order confirming the plan of reorganization was issued or affirmed by the district court that has jurisdiction over the reorganization case …." 11 U.S.C § 524(g)(3). The Bankruptcy Code and the Bankruptcy Rules do not specify the precise procedure for having the District Court "issue or affirm" the confirmation order. Consequently, courts have adopted different approaches for addressing district court review and approval of plans that contain asbestos "524(g) injunctions." In AWI's case, AWI requested that the District Court and Bankruptcy Court preside jointly over the hearing on confirmation of the Plan because that would provide the most expeditious means for AWI to emerge from chapter 11. Accordingly, the Initial Confirmation Hearing was scheduled to commence on November 17, 2003 in the District Court, with both Judge Wolin and Judge Newsome presiding jointly.

57.     On October 10, 2003, however, creditors in *In re Owens Corning, et al.*, Chapter 11 Case No. 00-03837 (JKF) (Bankr. D. Del.), filed a motion seeking to recuse District Judge Wolin from further participation in the OC case on the grounds that certain court appointed consultants advising Judge Wolin in the Five Asbestos Cases did not qualify as "disinterested" because these consultants also actively represent future asbestos personal injury claimants in another asbestos chapter 11 case pending in the Third Circuit. The recusal motion was followed by the filing of an Emergency Petition for a Writ of Mandamus with the Third Circuit on October 24, 2003. Motions were subsequently filed in certain other of the Five Asbestos Cases seeking similar relief. On

November 5, 2003, the District Court issued an order staying all matters pending before it in the Five Asbestos Cases, as well as its participation in any matters pending before the Bankruptcy Court.

58.    The Bankruptcy Court agreed to go forward with the previously scheduled Initial Confirmation Hearing absent the participation of the District Court, and, on November 17 and 18, 2003, the Bankruptcy Court conducted the Initial Confirmation Hearing. On December 19, 2003, the Bankruptcy Court issued the Proposed Findings and Conclusions and a Proposed Confirmation Order. (Docket No.'s 6255 and 6256, respectively).

59.    Because of the statutory conditions for issuance of the Asbestos PI Permanent Channeling Injunction that forms the core of the Plan, however, confirmation of the Plan remained subject to entry of a final Confirmation Order by the District Court.

**The Unsecured Creditors' Committee's**
**Objection and the Third Circuit Appeal**

60.    On December 29, 2003 the Unsecured Creditors' Committee filed with the District Court the Unsecured Creditors' Committee's Objection -- its objections to the Proposed Findings and Conclusions issued by the Bankruptcy Court. No other objections to the Proposed Findings and Conclusions or to the Proposed Confirmation Order were filed. Pursuant to a stipulation that was approved by the Bankruptcy Court on January 15, 2004, responses to the Unsecured Creditors' Committee's Objection were required to be filed and served by February 13, 2004. On February 13, 2004, AWI, together with the Asbestos PI Claimants' Committee and the Future Claimants' Representative, filed a joint response to the Unsecured Creditors' Committee's Objection.

61.    On February 23, 2005, the District Court issued the District Court

Order denying confirmation of the Plan on the ground that the Plan failed to satisfy section 1129(b) of the Bankruptcy Code because (i) Class 6, the class of general unsecured creditors, voted to reject the Plan, and (ii) the Plan provided for the distribution of warrants to the class of Equity Interest Holders (who are junior to the unsecured creditors who voted to reject the Plan). On March 4, 2005, AWI initiated the Third Circuit Appeal. On December 29, 2005, the Third Circuit issued an opinion affirming the District Court Order.

**Filing of the Modified Plan**

62.     On February 3, 2006, AWI and the representatives of the Committees appeared at a status conference before the District Court. At such status conference, AWI and the representatives of the Committees made a joint motion for entry of an order establishing a schedule for a hearing before the District Court on confirmation of the Modified Plan.

63.     On February 8, 2006, the Court entered the Case Management Order. Among other things, the Case Management Order (i) established May 23, 2006 as the date for the hearing to consider confirmation of the Plan, (ii) established a discovery schedule in connection therewith, and (iii) provided that the District Court would preside over the Confirmation Hearing.

64.     In accordance with the Case Management Order, on February 21, 2006, AWI filed the Modified Plan with the Bankruptcy Court, together with updated versions of the Plan Exhibits. (Docket No. 9116). The Modified Plan (i) deletes provisions in the Plan relating to the issuance of warrants to the holder of AWI's Equity Interests, (ii) updates the Amended and Restated Articles of Incorporation and the

Amended and Restated By-Laws to reflect the passage of time and certain modifications

to Pennsylvania law, (iii) updates the list identifying the proposed Board of Directors of

Reorganized AWI, and (iv) updates the schedules of executory contracts annexed to the

Plan (the *"Updated Contract Schedules"*) to reflect the passage of time and the effect of

the Bankruptcy Court's Order Pursuant to Bankruptcy Rules 2002(a)(7) and 3003(c)(3)

(I) Fixing a Final Date for Filing Proofs of Claim Relating to Certain Contracts and

Leases and (II) Approving the Proposed Forms of Proof of Claim and Notice (Docket No.

8594). The modifications reflected in the Modified Plan do not adversely affect the

treatment of the Claim of any creditor who has not accepted in writing such

modifications. Such modifications are included in the scope of the term *"Modifications"*

as used hereinafter.

65.     Aside from the modifications described above, the Modified Plan

does not otherwise substantively revise the Plan. Because, pursuant to the Modified Plan,

no distribution shall be made in respect of the Equity Interests in AWI, Class 12 is

impaired and deemed to reject the Modified Plan. AWI has not (and is not required to

have) solicited votes to accept or reject the Modified Plan. As used hereinafter, the term

*"Plan"* shall refer to the Modified Plan.

66.     Pursuant to the Case Management Order, and in accordance with

the agreement reached among AWI, the Asbestos PI Claimants' Committee, the Future

Claimants' Representative and the Unsecured Creditors' Committee, which is the only

party that had an outstanding objection to the Plan, the sole objection that would be

considered at the Confirmation Hearing is the Unsecured Creditors' Committee's

contention that the Plan discriminates unfairly with respect to Class 6 under 11 U.S.C. §

1129(b) (the *"Unfair Discrimination Objection"*). The Unsecured Creditors'

Committee, however, reserved the right to seek an order of the District Court suspending

the Confirmation Hearing or denying confirmation of the Plan based upon the prospect of

the likely passage of the Fairness in Asbestos Injury Resolution Act, although any party in

interest shall have the right to object to any such request. The Unsecured Creditors'

Committee did not seek such an order. Other than as expressly set forth above in this

paragraph 66, all other objections of the Unsecured Creditors' Committee to confirmation

of the Plan were waived or withdrawn, with prejudice. Pursuant to the Unfair

Discrimination Decision and Order, the District Court overruled the Unfair

Discrimination Objection.

      67.    In compliance with the Disclosure Statement Order, the Voting

Procedures, and the Case Management Order, AWI caused to be transmitted by first class

mail, postage prepaid, notice of entry of the Case Management Order, the filing of the

Modified Plan, the time and place of the Confirmation Hearing, and other pertinent

information (the *"Confirmation Hearing Notice"*) to (i) each holder of a Claim against

AWI listed in the schedules as of the Voting Record Date, (ii) each holder of a Claim

represented by a proof of claim filed against AWI, (iii) each Entity listed on the Updated

Contract Schedules set forth in Exhibits "8.1," "8.2" or "8.4" to the Plan, (iv) each holder

of a Claim held by a Lender (as such term is defined in the Voting Procedures) as of the

Voting Record Date, (v) each holder of record of the Equity Interests in AWI, (vi) all

holders of Holdings Equity Securities, in accordance with the procedures set forth in

section 3.g of the Voting Procedures, (vii) counsel to all known holders of Asbestos

Personal Injury Claims and Indirect PI Trust Claims, and (viii) individual holders of

Asbestos Personal Injury Claims that completed and submitted a ballot with respect to the Plan. [Trumbull Affidavit, Docket No. 9157].

68. AWI provided or caused to be provided notice by publication (the *"Confirmation Hearing Publication Notice"*) of entry of the Case Management Order, the filing of the Modified Plan, the time and place of the Confirmation Hearing, and other pertinent information. The Confirmation Hearing Publication Notice was published (i) twice in *The New York Times, The Wall Street Journal* and *USA Today* (weekday editions of the national edition), and (ii) once in each of the newspapers and trade publications as set forth in items 6 and 7 of the Affidavit of Katherine Kinsella, dated May 19, 2006 [Docket No. 9445].

### The Asbestos PI
### Permanent Channeling Injunction

69. The Plan establishes the Asbestos PI Trust, to which all Asbestos Personal Injury Claims are being channeled.

70. The identities of the proposed trustees of the Asbestos PI Trust were disclosed (i) in Exhibit 7.2 of the Exhibit Volume and (ii) at the Initial Confirmation Hearing and, to the extent modified, at the Confirmation Hearing, and are as follows: Paul Knutti, Anne Ferazzi, Thomas Tully, Lewis Sifford, and Harry Huge. (Trafelet Affidavit, at ¶ 23). The identities of the proposed members of the Trustees' Advisory Committee (the *"TAC"*) were disclosed at the Initial Confirmation Hearing and, to the extent modified, at the Confirmation Hearing, and are as follows: John D. Cooney, Russell W. Budd, Steven Kazan, Joseph F. Rice, and Perry Weitz. (Trafelet Affidavit, at ¶ 25).

71. With respect to any Asbestos Personal Injury Claim that is allowed

by the Asbestos PI Trust in accordance with the Asbestos PI Trust Agreement and the

Asbestos PI Trust Distribution Procedures, such allowance shall establish the amount of

legal liability against the Asbestos PI Trust in the amount of the liquidated value of such

Claim, as determined in accordance with the Asbestos PI Trust Distribution Procedures.

72.     The Asbestos PI Permanent Channeling Injunction is to be

implemented in connection with the Plan and the Asbestos PI Trust.

73.     Section 1.91 of the Plan sets forth the identities of the PI Protected

Parties. Pursuant to Section 1.91(i)(iv) of the Plan, Travelers Casualty & Surety Co.,

Century Indemnity Co., Central National Insurance Company of Omaha, and International

Insurance Company, shall be entitled to protection as PI Protected Parties. The identity of

each PI Protected Party is readily identifiable (by name or as part of an identifiable group)

from the terms of the Plan and the Asbestos PI Permanent Channeling Injunction (which

is contained and set forth in the Confirmation Order). Specifically, the Asbestos PI

Permanent Channeling Injunction provides that it covers the following parties and such

parties are within the definition of the term PI Protected Parties:

        a.  AWI;

        b.  Reorganized AWI;

        c.  Holdings;

        d.  AWWD;

        e.  any Affiliate;

        f.  Interface Solutions, Inc., a corporation organized under the
           laws of Delaware, but only to the extent that Interface
           Solutions, Inc. is alleged to be directly or indirectly liable for

the conduct of, Claims against, or Demands on AWI,

Reorganized AWI, or the Asbestos PI Trust on account of

Asbestos Personal Injury Claims;

g.  any Entity that, pursuant to the Plan or after the Effective Date,

becomes a direct or indirect transferee of, or successor to, any

assets of AWI, Reorganized AWI, or the Asbestos PI Trust (but

only to the extent that liability is asserted to exist by reason of

it becoming such a transferee or successor);

h.  any Entity that, pursuant to the Plan or after the Effective Date,

makes a loan to Reorganized AWI or the Asbestos PI Trust or

to a successor to, or transferee of, any assets of AWI,

Reorganized AWI or the Asbestos PI Trust (but only to the

extent that liability is asserted to exist by reason of such Entity

becoming such a lender or to the extent of any pledge of assets

made in connection with such a loan is sought to be upset or

impaired); and

i.  any Entity to the extent he, she, or it is alleged to be directly or

indirectly liable for the conduct of, Claims against, or Demands

on AWI, Reorganized AWI or the Asbestos PI Trust on account

of Asbestos Personal Injury Claims by reason of one or more of

the following:

(i)      such Entity's ownership of a financial interest in

AWI, Reorganized AWI, a past or present affiliate

of AWI or Reorganized AWI (other than ACandS,

Inc. f/k/a Armstrong Contracting and Supply Corp.),

or a predecessor in interest of AWI or Reorganized

AWI;

(ii)     such Entity's involvement in the management of

AWI, AWWD, Holdings, an Affiliate, Reorganized

AWI, or any predecessor in interest of AWI or

Reorganized AWI;

(iii)    such Entity's service as an officer, director, or

employee of AWI, Reorganized AWI, AWWD,

Holdings, an Affiliate, any past or present affiliate

of AWI or Reorganized AWI (other than ACandS,

Inc. f/k/a Armstrong Contracting and Supply Corp.),

any predecessor in interest of AWI or Reorganized

AWI, or any Entity that owns or at any time has

owned a financial interest in AWI or Reorganized

AWI, any past or present affiliate of AWI or

Reorganized AWI (other than ACandS, Inc. f/k/a

Armstrong Contracting and Supply Corp.), or any

predecessor in interest of AWI or Reorganized

AWI.

(iv)     such Entity's provision of insurance to (a) AWI, (b)

Reorganized AWI, (c) any past or present affiliate

of AWI or Reorganized AWI (other than ACandS,

Inc. f/k/a Armstrong Contracting and Supply Corp.),

(d) any predecessor in interest of AWI or

Reorganized AWI, or (e) any Entity that owns or at

any time has owned a financial interest in AWI or

Reorganized AWI, any past or present affiliate of

AWI or Reorganized AWI (other than ACandS, Inc.

f/k/a Armstrong Contracting and Supply Corp.), or

any predecessor in interest of AWI or Reorganized

AWI, but only to the extent that AWI, Reorganized

AWI, or the Asbestos PI Trust enters into a

settlement with such Entity that is approved by the

Bankruptcy Court and expressly provides that such

Entity shall be entitled to the protection of the

Asbestos PI Permanent Channeling Injunction as a

PI Protected Party; or

(v)      such Entity's involvement in a transaction changing

the corporate structure, or in a loan or other

financial transaction affecting the financial

condition, of AWI, AWWD, Holdings, an Affiliate,

Reorganized AWI, any past or present affiliate of

AWI or Reorganized AWI (other than ACandS, Inc.

f/k/a Armstrong Contracting and Supply Corp.), any

predecessor in interest of AWI or Reorganized

AWI, or any Entity that owns or at any time has

owned a financial interest in AWI or Reorganized

AWI, any past or present affiliate of AWI or

Reorganized AWI (other than ACandS, Inc. f/k/a

Armstrong Contracting and Supply Corp.), or any

predecessor in interest of AWI or Reorganized

'AWI.

74.     In light of the benefits provided, or to be provided, to the Asbestos
PI Trust on behalf of each PI Protected Party, the Asbestos PI Permanent Channeling
Injunction is fair and equitable with respect to the persons that might subsequently assert
Asbestos Personal Injury Claims against any PI Protected Party. (Trafelet Affidavit, at ¶
8).

75.     At the time of the order for relief with respect to AWI, AWI had
been named as a defendant in personal injury, wrongful death, and property damage
actions seeking recovery for damages allegedly caused by the presence of, or exposure to,
asbestos or asbestos-containing products. (Rodruan Affidavit, at ¶ 4).

76.     The Asbestos PI Trust, as of the Effective Date, will assume the
liabilities of AWI with respect to Asbestos Personal Injury Claims. (Section 1.4 of the
Asbestos PI Trust Agreement, Exhibit Volume, Docket No. 9116, Tab 3). Upon such
assumption, Reorganized AWI shall have no liability for any Asbestos Personal Injury
Claim.

77.     Pursuant to Section 10.1 of the Plan, on the later of the Effective

Date and the date by which all the Asbestos PI Trustees have executed the Asbestos PI

Trust Agreement, AWI will transfer to the Asbestos PI Trust the Asbestos PI Insurance

Asset and additional consideration, pursuant to the formula set forth in Section 10.1 of

the Plan, consisting of New Common Stock, Available Cash, and Plan Notes and/or 144A

Offering Proceeds. Accordingly, the Asbestos PI Trust will be funded in whole or in part

by securities of Reorganized AWI and by the obligation of Reorganized AWI to make

future payments, including dividends.

     78.     Pursuant to Section 10.1 of the Plan, the Asbestos PI Trust will

own, as of the Effective Date (or a date thereafter in accordance with section 10.1 of the

Plan), 65.57% of the New Common Stock of Reorganized AWI. Accordingly, the

Asbestos PI Trust is to own, or by the exercise of rights granted under the Plan would be

entitled to own if specified contingencies occur, a majority of the voting shares of

Reorganized AWI.

     79.     AWI is likely to be subject to substantial future Demands for

payment arising out of the same or similar conduct or events that gave rise to the Claims

that are addressed by the Asbestos PI Permanent Channeling Injunction. (Testimony of

Dr. Mark A. Peterson; Testimony of B. Thomas Florence, Ph.D; Testimony of Dr. Letitia

Chambers).

     80.     The actual amounts, numbers, and timing of the future Demands

cannot be determined. (Testimony of Dr. Mark A. Peterson; Testimony of B. Thomas

Florence, Ph.D; Testimony of Dr. Letitia Chambers).

     81.     Pursuit of the Demands referenced in Section 7.15(a)(x) of the Plan

outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to

deal equitably with Claims and future Demands.

82.     The terms of the Asbestos PI Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan and in the Disclosure Statement. (Plan, Docket No. 9116, Sections 1.21, 7.1; Disclosure Statement, Docket No. 4801, pp. 86-89).

83.     The Plan establishes, in Class 7 (Asbestos Personal Injury Claims), a separate class of the claimants whose Claims are to be addressed by the Asbestos PI Trust.

84.     The Future Claimants' Representative was appointed as part of the proceedings leading to issuance of the Asbestos PI Permanent Channeling Injunction for the purpose of protecting the rights of persons that might subsequently assert unknown Asbestos Personal Injury Claims and Demands that are addressed in the Asbestos PI Permanent Channeling Injunction and transferred to the Asbestos PI Trust. The Future Claimants' Representative has fulfilled his duties, responsibilities, and obligations as the future representative in accordance with section 524(g) of the Bankruptcy Code. (Trafelet Affidavit, ¶ 8).

85.     Identifying each PI Protected Party in the Asbestos PI Permanent Channeling Injunction is fair and equitable with respect to persons that might subsequently assert Demands against each such PI Protected Party, in light of the benefits provided, or to be provided, to the Asbestos PI Trust by or on behalf of any such PI Protected Party. (Trafelet Affidavit, at ¶ 14).

86.     As set forth in the voting summary provided above, and in the

Trumbull Certification, Class 7 (Asbestos Personal Injury Claims) has voted, by at least
75 percent (75%) of those voting, in favor of the Plan.

87.     Pursuant to court orders or otherwise, the Asbestos PI Trust will
operate through mechanisms such as structured, periodic, or supplemental payments, pro
rata distributions, matrices, or periodic review of estimates of the numbers and values of
Asbestos Personal Injury Claims and Demands, or other comparable mechanisms, that
provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial
position to pay, Asbestos Personal Injury Claims and Demands that involve similar
claims in substantially the same manner. (Trafelet Affidavit, at ¶ 11).

88.     The District Court has jurisdiction to enter the Asbestos PI
Permanent Channeling Injunction under section 524(g) of the Bankruptcy Code and
sections 1334(a), (b), and (d) of title 28 of the United States Code.

89.     Section 524(g) of the Bankruptcy Code permits approval and entry
of the Asbestos PI Permanent Channeling Injunction, especially where, as here, such
injunction is essential to the formulation and implementation of the Plan as provided in
section 1123(a)(5) of the Bankruptcy Code, confers material benefits on AWI's estate, is
in the best interests of holders of Claims against AWI, and complies in all respects with
the requirements of section 524(g) of the Bankruptcy Code.

### The Claims Trading Injunction

90.     Section 1.40 of the Plan provides for the Claims Trading
Injunction, which will permanently and forever stay, restrain, and enjoin any Entity from,
directly or indirectly, purchasing, selling, transferring, assigning, conveying, pledging, or
otherwise acquiring or disposing of any Asbestos Personal Injury Claim.  The Claims

Trading Injunction, however, will not apply to (i) the transfer of an Asbestos Personal

Injury Claim to the holder of an Indirect PI Trust Claim solely as a result of such holder's

satisfaction of such Asbestos Personal Injury Claim or (ii) the transfer of an Asbestos

Personal Injury Claim by will or under the laws of descent and distribution.  The Claims

Trading Injunction will also provide that any action taken in violation thereof will be void

*ab initio*.

### Discharge, Exculpation and Indemnification Provisions

91.     Section 11.2 of the Plan provides that the rights afforded in the

Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for

and in complete satisfaction, discharge, and release of all Claims and Equity Interests of

any nature whatsoever, including any interest accrued thereon from and after the

Commencement Date, against AWI, or its estate, assets, properties, or interests in

property.  Except as otherwise provided therein, on the Effective Date, all Claims against

and Equity Interests in AWI shall be satisfied, discharged, and released in full.

Reorganized AWI shall not be responsible for any obligations of AWI except those

expressly assumed by Reorganized AWI in the Plan.  All Entities shall be precluded and

forever barred from asserting against AWI, Reorganized AWI, their successors or assigns,

or their assets, properties, or interests in property any other or further Claims based upon

any act or omission, transaction, or other activity of any kind or nature that occurred prior

to the Effective Date, whether or not the facts of or legal bases therefor were known or

existed prior to the Effective Date.

92.     Section 11.6 of the Plan provides that none of Reorganized AWI,

any of the members of the Asbestos PI Claimants' Committee, the Future Claimants'

Representative, any of the members of the Unsecured Creditors' Committee, any members of the Asbestos PD Committee, AWWD, Holdings, or any of their officers, directors, employees, or agents shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Case, including, without limitation, the commencement of the Chapter 11 Case, the negotiation of the Plan, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Plan. (Plan, Docket No. 9116, Section 11.6).

93.   Section 8.6 of the Plan provides that the obligations of AWI to indemnify and reimburse persons who are or were directors, officers, or employees of Holdings, AWWD, or AWI on the Commencement Date or at any time thereafter against and for any obligations (including, without limitation, fees and expenses incurred by the board of directors of Holdings, or the members thereof, in connection with the Chapter 11 Case) pursuant to articles of incorporation, codes of regulations, bylaws, applicable state law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Commencement Date. In furtherance of the foregoing, Reorganized AWI will maintain insurance for the benefit of such directors, officers, or employees at levels no less favorable than those existing as of the date of entry of the Confirmation Order for a

period of no less than four years following the Effective Date. (Plan, Docket No. 9116, Section 8.6).

94.     The discharge, exculpation and indemnification provisions of the Plan were negotiated at arm's-length and are integral to the Plan. Without such provisions, the Plan would not have been agreed to by the parties in interest. (Rodruan Affidavit, at ¶ 6).

**Feasibility of the Plan**

95.     Cash flow projections for Reorganized AWI are set forth in Exhibit "C" to the Disclosure Statement accompanying the Plan (the *"Original Projections"*). At the Initial Confirmation Hearing, AWI presented projections, which set forth lower estimates of future cash flow than are contained in the Original Projections (the "*Revised Projections*"). (Rodruan Affidavit, Exhibit "A"). The Revised Projections are supported by reasonable assumptions and, therefore, are a reasonable estimate of Reorganized AWI's future performance. (Rodruan Affidavit, at ¶ 25; Aronson Affidavit, at ¶ 9).

96.     Based upon the foregoing and the fact that, since the Initial Confirmation Hearing, there has been no change in the assets or operations of AWI that would have a material impact on AWI's ability to meet its ongoing obligations and commitments, including all obligations under the Plan, the Plan meets the feasibility test of section 1129(a)(11) of the Bankruptcy Code.

**The Provisions Governing
Distributions Under the Plan
Are Fair and Reasonable**

97.     Sections 7.7, 7.8, and 7.11 of the Plan contain provisions governing distributions under the Plan, and such provisions are fair and reasonable.

**Miscellaneous**

98.   To the extent any of the foregoing findings of fact constitute conclusions of law, they are adopted as such.

## CONCLUSIONS OF LAW

**Jurisdiction and Venue**

1.   The Bankruptcy Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 1334 and 157.

2.   As a result of the withdrawal of the reference to the District Court with respect to confirmation of the Plan and issuance of the Asbestos PI Permanent Channeling Injunction, the District Court has jurisdiction to consider confirmation of the Plan pursuant to 28 U.S.C. §§ 1334 and 157.

3.   Venue of the Chapter 11 Case in this district was proper as of the Commencement Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.   AWI is an entity qualified to be a debtor under section 109 of the Bankruptcy Code, and AWI is a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

**Burden of Proof**

5.   AWI has satisfied its burden of producing evidence that the Plan complies with sections 1129(a), 1129(b) (to the extent applicable), 1129(d), and 524(g) of the Bankruptcy Code.

**Solicitation**

6.   All persons required to receive notice of the Initial Confirmation

Hearing and the Confirmation Hearing have received proper, timely and adequate notice

in accordance with the Disclosure Statement Order and the Case Management Order and

have had an opportunity to appear and be heard with respect thereto.

        7.     AWI has solicited and tabulated votes with respect to the Plan in

good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules,

and the Disclosure Statement Order.

        8.     Following the dissemination of the Solicitation Packages as

provided for in the Disclosure Statement Order, the Voting Agents properly assisted AWI

in soliciting votes for the Plan from the impaired classes of Claims and Equity Interests

and appropriately solicited the votes of the impaired classes of Claims and Equity

Interests in good faith and in a manner consistent with the Bankruptcy Code.

        9.     The Plan was voted on by all Classes of impaired Claims that were

entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the

Disclosure Statement Order.

**The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code**

        10.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan

comply with the applicable provisions of the Bankruptcy Code. The Plan satisfies all the

applicable provisions of the Bankruptcy Code, and, as required by Bankruptcy Rule 3016

(a), the Plan is dated and identifies AWI as the proponent of the Plan. Moreover, the Plan

and Disclosure Statement describe the Asbestos PI Permanent Channeling Injunction,

including the identities of the PI Protected Parties, and the Claims Trading Injunction,

specifically and in conspicuous bold language, in compliance with the requirements of

Bankruptcy Rule 3016(c).

        A.     **Due and Proper Notice of the Disclosure**

**Statement Hearing and the Confirmation
Hearing Was Given to All Parties in Interest**

11.     The District Court has taken judicial notice of the Affidavits of

Mailing, the Certifications of Voting, the Certificate of Publications, the Confirmation

Hearing Notice and the Confirmation Hearing Publication Notice and finds and concludes

that (a) AWI complied in all material respects with Bankruptcy Rules 2002 and 3017(a)

in providing notice of the Disclosure Statement Hearing in the method and manner as

prescribed therein, (b) AWI complied in all material respects with the Disclosure

Statement Order in providing notice of the Initial Confirmation Hearing in the method

and manner as prescribed in the Disclosure Statement Order, and (c) AWI complied in all

material respects with the Case Management Order in providing notice of the

Confirmation Hearing.  All Entities entitled and required to receive notice of the

Disclosure Statement Hearing, the Initial Confirmation Hearing and the Confirmation

Hearing pursuant to the Bankruptcy Code, applicable non-bankruptcy law, and the orders

of the Bankruptcy Court and the District Court have received due, proper, timely and

adequate notice of such hearings and have had an opportunity to appear at and be heard at

such hearings. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1957).

B.     **The Plan Satisfies the Requirements of
       Section 1123(a)(1) of the Bankruptcy Code**

12.     Section 1123(a)(1) of the Bankruptcy Code provides that a plan

must designate classes of claims and interests.  Section 3.1 of the Plan adequately and

properly classifies all Claims and Equity Interests required to be so classified and,

accordingly, satisfies section 1123(a)(1) of the Bankruptcy Code.  Classes of

Administrative Expenses and Priority Tax Claims are not required to be designated

pursuant to section 1123(a)(1) of the Bankruptcy Code.

C.    **The Plan Satisfies the Requirements
         of Section 1122 of the Bankruptcy Code**

13.    Section 1122(a) of the Bankruptcy Code provides that a plan may

place a claim or interest in a particular class if such claim or interest is substantially

similar to the other claims or interests of such class. A classification structure satisfies

section 1122 of the Bankruptcy Code when a reasonable basis exists for the structure, and

the claims or interests within each particular class are substantially similar. *See In re*

*Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987); *In re U.S. Truck Co.*, 800

F.2d 581, 586 (6th Cir. 1986); *In re LeBlanc*, 622 F.2d 872, 879 (5th Cir. 1986).

14.    The Bankruptcy Code does not require that all claims with equal

priority be classified in the same class. Consequently, it is appropriate to classify

Asbestos Personal Injury Claims (including Indirect PI Trust Claims) in a separate class

from Unsecured Claims. Because all Asbestos Personal Injury Claims in Class 7

(including Indirect PI Trust Claims) relate, directly or indirectly, to AWI's liability for

asbestos-related personal injury and wrongful death claims, whether arising under tort law

(as is the case with direct Asbestos Personal Injury Claims and may be the case with

Indirect PI Trust Claims) or under contract (as may be the case with certain direct

Asbestos Personal Injury Claims and certain Indirect PI Trust Claims), a reasonable basis

exists for the classification of the Asbestos Personal Injury Claims together in a single

class. Moreover, section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code requires that

the Plan establish a separate class or classes of the Claimants whose Claims are to be

addressed by the Asbestos PI Trust.

15.    In accordance with section 1122(a) of the Bankruptcy Code,

Section 3.1 of the Plan separately classifies Claims against and Equity Interests in AWI together with Claims against or Equity Interests that are substantially similar to the other Claims or Equity Interests of such class. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code.

16.     Section 1122(b) of the Bankruptcy Code provides that a plan may designate a separate class of claims consisting of unsecured claims that are less than or reduced to an amount the court approves as reasonable and necessary for administrative convenience. Section 3.2(c) of the Plan provides treatment for holders of Convenience Claims. The convenience class established in Section 3.2(c) of the Plan is reasonable and necessary for administrative convenience and, therefore, the classification of Convenience Claims in Section 3.2(c) satisfies section 1122(b) of the Bankruptcy Code.

### D.     The Plan Satisfies the Requirements of Section 1123(a)(2) of the Bankruptcy Code

17.     Section 1123(a)(2) of the Bankruptcy Code provides that a plan must specify any class of claims or interests that is not impaired under the Plan. Pursuant to Section 3.1 of the Plan, each of Classes 3, 6, 8, and 12 is identified as impaired, and each of Classes 1, 2, 4, 5, 9, 10, and 11 is identified as unimpaired. As a result of the EPA Settlement, Class 8 is unimpaired. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

### E.     The Plan Satisfies the Requirements of Section 1123(a)(3) of the Bankruptcy Code

18.     Section 1123(a)(3) of the Bankruptcy Code provides that a plan must specify the treatment of each impaired class of claims and equity interests. Article III of the Plan specifies the treatment of each impaired class of Claims and Equity

Interests.  Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

F.  **The Plan Satisfies the Requirements
of Section 1123(a)(4) of the Bankruptcy Code**

19.     Section 1123(a)(4) of the Bankruptcy Code requires a plan to

provide the same treatment for each claim or interest of a particular class, unless the

holder of the claim or interest agrees to less favorable treatment of such particular claim

or interest.  The Plan provides the same treatment for each Claim or Equity Interest in

each class.  Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

G.  **The Plan Satisfies the Requirements of
Section 1123(a)(5) of the Bankruptcy Code**

20.     Section 1123(a)(5) of the Bankruptcy Code provides that a plan

must provide adequate means of implementation of the plan.  The various provisions of

the Plan provide adequate means for implementation of the Plan.  Without limiting the

foregoing, Article VII of the Plan provides for, among other things, (i) the creation of the

Asbestos PI Trust, (ii) the adoption of the Amended and Restated Articles of

Incorporation and Amended and Restated By-Laws by Reorganized AWI, (iiii) the

effectuation of the corporate reorganization transactions set forth in Section 7.23 of the

Plan and the entry into the exit financing facility, (iv) the listing of the New Common

Stock, (v) the adoption of the Stockholder and Registration Rights Agreement and the

New Long-Term Incentive Plan, (vi) the distribution of property of AWI's estate to the

creditors entitled to receive Distributions under the Plan and the Distribution to the

Asbestos PI Trust, and (vii) the funding of the payments due on the Effective Date.  In

addition, Article VIII of the Plan provides for, *inter alia,* the assumption and rejection of

various contracts and unexpired leases of AWI, and Article X of the Plan provides for the

creation and funding of the Asbestos PI Trust. Accordingly, the Plan satisfies section

1123(a)(5) of the Bankruptcy Code.

        H.     **The Plan Satisfies the Requirements of**
                **Section 1123(a)(6) of the Bankruptcy Code**

        21.     Section 1123(a)(6) of the Bankruptcy Code requires a plan to

provide for the inclusion in the charter of the debtor, if the debtor is a corporation, or of

any corporation to which the debtor transfers all or any part of the debtor's estate or with

which the debtor has merged or consolidated, of a provision prohibiting the issuance of

non-voting equity securities. In furtherance of Section 7.4 of the Plan, the Amended and

Restated Articles of Incorporation of Reorganized AWI contain provisions prohibiting the

issuance of non-voting equity securities. (Exhibit 1.13 to the Plan). Accordingly, the

Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

        22.     Section 1123(a)(6) is not applicable to the Asbestos PI Trust

because (i) the Asbestos PI Trust does not have a corporate charter, and (ii) the Asbestos

PI Trust is not a corporation to which AWI or Reorganized AWI is transferring, or has

transferred, all or any part of its estate (within the meaning of section 1123(a)(6) of the

Bankruptcy Code) or with which AWI or Reorganized AWI has merged or consolidated

or will merge or consolidate.

        I.     **The Plan Satisfies the Requirements of**
                **Section 1123(a)(7) of the Bankruptcy Code**

        23.     Section 1123(a)(7) of the Bankruptcy Code requires that the

manner of selection of any director, officer or trustee of the reorganized debtor, or any

successor to such officer, director or trustee, be consistent with the interests of creditors

and equity security holders and with public policy. In furtherance of Section 7.21 of the

Plan, AWI has disclosed the identities of those persons who will serve, on the Effective Date, as officers of Reorganized AWI. (Rodruan Affidavit, at ¶ 21) ("AWI's officers immediately prior to the Effective Date will serve as officers of Reorganized AWI.").

24.    On the Effective Date, the board of directors of Reorganized AWI will consist of those persons identified in Exhibit "7.21" to the Plan and disclosed by AWI at the Confirmation Hearing.  Following the Effective Date, and subject to the provisions of any existing employment agreements and the requirements of applicable non-bankruptcy law, the officers of Reorganized AWI immediately prior to the Effective Date will serve as the officers of Reorganized AWI.  The continuation in office of such individuals is consistent with the interests of creditors and with public policy.  (Rodruan Affidavit, at ¶ 22).  Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

25.    Although section 1123(a)(7) of the Bankruptcy Code does not apply to either the Asbestos PI Trustees or the members of the TAC established under the Asbestos PI Trust Agreement, AWI has disclosed the identities of the Asbestos PI Trustees and the members of the TAC, as well as the role of the Future Claimants' Representative under the Asbestos PI Trust Agreement.

J.    **Section 1123(b)(2) of the Bankruptcy Code:
The Rejection and Assumption of Executory
Contracts and Unexpired Leases
Are in the Best Interests of AWI's Estate**

26.    Pursuant to section 1123(b)(2) of the Bankruptcy Code, a plan may provide for the rejection or assumption and assignment of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of the Bankruptcy Code.

27. Under section 365 of the Bankruptcy Code, a debtor may assume an executory contract or unexpired lease if (i) outstanding defaults under the contract or lease have been cured under section 365(b)(1) of the Bankruptcy Code, and (ii) the debtor's decision to assume such executory contract or unexpired lease is supported by valid business justifications. *See, e.g., Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 53 (Bankr. D. Del. 2001).

28. Section 8.1 of the Plan provides for the assumption of the executory contracts listed on Exhibit "8.1" to the Plan. The assumption of executory contracts and unexpired leases pursuant to Section 8.1 of the Plan, subject to the occurrence of the Effective Date, (i) is in the best interests of AWI, its estate, and creditors, (ii) is based upon and within AWI's sound business judgment, (iii) is necessary to the implementation of the Plan, and (iv) satisfies the requirements of section 365(a) of the Bankruptcy Code.

29. Exhibit "8.2" to the Plan sets forth contracts and leases that, to the extent they constitute executory contracts and unexpired leases, AWI wishes to reject, subject to the occurrence of and effective as of the Effective Date.

30. Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a) of the Bankruptcy Code. *See N.L.R.B. v. Bildisco*, 465 U.S. 513, 523 (1984); *Sharon Steel*, 872 F.2d at 39-40; *Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (D. Del. 1995); *In re III Enterprises, Inc. V*, 163 B.R. 453, 469 (Bankr. E.D. Pa.), *aff'd sub nom, Pueblo*

*Chem., Inc. v. III Enter., Inc. V,* 169 B.R. 551 (E.D. Pa. 1994); *In re Patterson,* 119 B.R.

59, 60 (E.D. Pa. 1990); *Pinnacle Brands,* 259 B.R. at 53. To the extent that sound

business reasons justify the debtor's rejection of a particular lease or contract, rejection

should be approved.

   31. The rejection of the executory contracts and unexpired leases set

forth in Section 8.2 of the Plan, subject to the occurrence of and effective as of the

Effective Date, (i) is in the best interests of AWI, its estate and creditors, (ii) is based

upon and within AWI's sound business judgement, (iii) is necessary to the

implementation of the Plan, and (iv) satisfies the requirements of section 365(a) of the

Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1123(b)(2)

of the Bankruptcy Code.

   K. **The Plan Satisfies Section**
     **1123(b)(3) of the Bankruptcy Code**

   32. Section 1123(b)(3)A) of the Bankruptcy Code permits a plan to

provide for "the settlement or adjustment of any claim or interest belonging to the debtor

or to the estate." Section 5.2 of the Plan provides for the amendment of the Claims

Settlement Guidelines as set forth on Exhibit "1.39" to the Plan. Such amendment is (i)

fair and reasonable, (ii) in the best interests of AWI, its estate, and its creditors, and (iii)

necessary to the implementation of the Plan. To the extent applicable, Section 5.2 of the

Plan complies with section 1123(b)(3)(A) of the Bankruptcy Code.

   33. Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan

may provide for "the retention and enforcement by the debtor, by the trustee, or by a

representative of the estate appointed for such purpose, of any such claim or interest."

Section 11.3 of the Plan provides that any rights, claims, or causes of action accruing to

AWI pursuant to the Bankruptcy Code or pursuant to any statute or legal theory,

including, without express or implied limitation, any avoidance or recovery actions under

sections 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, and (except

as provided in Articles X and XI of the Plan) any rights to, claims or causes of action for

recovery under any policies of insurance issued to or on behalf of AWI shall remain

assets of AWI's estate and, on the Effective Date, shall be transferred to Reorganized

AWI.  Reorganized AWI shall be deemed the appointed representative to, and may,

pursue, litigate, and compromise and settle any such rights, claims, or causes of action, as

appropriate, in accordance with what is in the best interests of and for the benefit of

Reorganized AWI.  Such section is (i) fair and reasonable, (ii) in the best interests of

AWI, its estate, and its creditors, (iii) necessary to the implementation of the Plan, and

(iv) complies with section 1123(b)(3)(B) of the Bankruptcy Code.

     34.     Accordingly, the Plan satisfies section 1123(b)(3) of the

Bankruptcy Code.

     L.     **The Transfers of Properties Under the Plan
Are Governed by the Exemptions Provided
in Section 1146(c) of the Bankruptcy Code**

     35.     Pursuant to section 1146(c) of the Bankruptcy Code, the issuance,

transfer, or exchange of notes or equity securities under the Plan, the creation of any

mortgage, deed of trust, or other security interest, the making or assignment of any lease

or sublease, or the making or delivery of any deed or other instrument of transfer under,

in furtherance of, or in connection with the Plan, including, without express or implied

limitation, any liens granted in connection with the exit finance facility referred to in

Section 7.16(g) of the Plan, shall not be subject to any sales and use, stamp, real estate

transfer, mortgage recording, or other similar tax. *See Baltimore County, Md. v.*

*Hechinger Liquidation Trust (In re Hechinger Inv. Co. of Delaware Inc.)*, 335 F.3d 243,

252-53 (3d Cir. 2003); *In re GST Telecom, Inc.*, 2002 WL 442233 (D. Del. 2002).

## AWI Has Satisfied Section
## 1129(a)(2) of the Bankruptcy Code

      36.    Section 1129(a)(2) of the Bankruptcy Code requires the proponent

of a plan to comply with all of the applicable provisions of the Bankruptcy Code. AWI

has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying

section 1129(a)(2) of the Bankruptcy Code. Specifically, (i) AWI is a proper debtor

under section 109 of the Bankruptcy Code, (ii) AWI has complied with applicable

provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders

of the Bankruptcy Court, (iii) AWI has complied with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Voting Procedures, and the Disclosure

Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and

related documents and notices and in soliciting and tabulating votes on the Plan, and (iv)

AWI has complied with applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, applicable non-bankruptcy law, the local Bankruptcy Rules and the specific rules

of the Bankruptcy Court throughout the Chapter 11 Case.

      37.    AWI has complied with the operating guidelines and financial

reporting requirements enacted by the United States Trustee by (i) timely filing all

operating reports and financial statements and (ii) maintaining and providing proof of

insurance.

      38.    AWI has paid all statutory fees required to be paid during the

Chapter 11 Case and has filed all fee statements required to be filed.

39.    AWI has timely filed with the Court all schedules, lists of executory contracts, and statements of financial affairs.

40.    Sufficient and timely notice of the Confirmation Hearing and all other hearings in the Chapter 11 Case has been given to holders of Claims and Equity Interests and all other parties in interest to whom notice was required to have been given.

41.    The solicitation of votes was made following approval and dissemination of the Disclosure Statement to holders of Claims and Equity Interests in classes that are impaired and entitled to vote and was made in good faith and in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.  The Ballots of holders of Claims were properly solicited and tabulated.

42.    AWI has complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court and has fulfilled all of the obligations and duties owed to its estate and creditors as required by and set forth in sections 1107 and 1108 of the Bankruptcy Code.  Accordingly, AWI has satisfied section 1129(a)(2) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of**
**Section 1129(a)(3) of the Bankruptcy Code**

43.    Section 1129(a)(3) of the Bankruptcy Code states that a plan must be proposed in good faith and not by any means forbidden by law.  *See Solow v. PPI Enters.(U.S.) (In re PPI Enters.(U.S.))*, 324 F.3d 197, 211-12 (3d Cir. 2002); *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000), *citing In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986) (*quoting In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984)); *In re SGL Carbon Corp.*, 200 F.3d 154, 162 n.10 (3d Cir. 1999); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 609 (Bankr. D. Del. 2001).

44. The Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan has been proposed with the legitimate and honest purpose of reorganizing AWI's business and affairs, restructuring its asbestos-related liability, and maximizing the value available for distribution to creditors. Further, the discharge, exculpation and indemnification provided in Sections 11.2, 11.6 and 8.6 of the Plan have been agreed to in good faith and are consistent with sections 105 and 1129 of the Bankruptcy Code. Thus, AWI has complied with the "good faith and not by any means forbidden by law" requirement of section 1129(a)(3) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of
Section 1129(a)(4) of the Bankruptcy Code**

45. Section 1129(a)(4) of the Bankruptcy Code requires that all payments made or to be made by the plan proponent, by the debtor or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, have been approved by, or are subject to the approval of, the court as reasonable.

46. All payments made by AWI out of the ordinary course of business have been approved by the Bankruptcy Court, and all payments made or to be made to professionals retained by order of the Bankruptcy Court will be, as set forth in Section 2.2 of the Plan, subject to review and approval by the Bankruptcy Court or the District Court upon final application under section 330, 331 or 503(b) of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of
Section 1129(a)(5) of the Bankruptcy Code**

47. Section 1129(a)(5) of the Bankruptcy Code requires the proponent

of a plan of reorganization to disclose the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor or a successor to the debtor under the plan, and to show that the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy. Section 1129(a)(5) of the Bankruptcy Code also requires the proponent of a plan of reorganization to disclose the identity of any insider that will be employed or retained by the reorganized debtor and the nature of any compensation for such insider.

48.     AWI has disclosed in the Disclosure Statement, the exhibits to the Plan, and through evidence presented at the Confirmation Hearing the identities and nature of compensation of those persons who will serve, on the Effective Date of the Plan, as directors and officers of Reorganized AWI. Moreover, although the identities of the Asbestos PI Trustees are not required to be disclosed, AWI has also disclosed the identities of the Asbestos PI Trustees in Exhibit 7.2 to the Plan and the members of the TAC through evidence presented at the Initial Confirmation Hearing and/or the Confirmation Hearing. *See In re Eagle-Picher Indus., Inc.*, 1996 U.S. Dist. LEXIS 17160, *29-30 (S.D. Ohio 1996) ("The trustees of the § 524(g) trust in this case are not subject to the statutory provision . . . They are not directors, officers or voting trustees of the debtor."). Based on, among other things, the experience, education and/or particular skills of each and the manner of selection of each and any successors thereto, the appointment or continuation in office of such individuals is consistent with the interests of creditors and with public policy. (Rodruan Affidavit, at ¶¶ 18-22; Trafelet Affidavit, at

¶ 24). Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

### Section 1129(a)(6) of the Bankruptcy Code Is Not Applicable to the Plan

49.  Section 1129(a)(6) of the Bankruptcy Code requires a debtor to obtain the approval of any governmental regulatory commission, with jurisdiction over the debtor, with respect to any rate changes provided for in the debtor's plan of reorganization. The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.  Section 1129(a)(6) of the Bankruptcy Code is accordingly not applicable.

### The Plan Satisfies the Requirements of Section 1129(a)(7) of the Bankruptcy Code

50.  Section 1129(a)(7) of the Bankruptcy Code requires each creditor or equity interest holder in an impaired class to accept the plan of reorganization or receive or retain under such plan on account of such claim or interest property of a value, as of the effective date of such plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

51.  Based upon the evidence adduced at the Initial Confirmation Hearing, the Plan satisfies the "best interest" test under section 1129(a)(7) of the Bankruptcy Code.

### The Plan Does Not Satisfy the Requirements of Section 1129(a)(8) of the Bankruptcy Code

52.  Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each class of claims or interests under a plan, such class either has accepted the plan or is not impaired under the plan. According to the Trumbull Certification, all

classes of impaired Claims that were entitled to vote on the Plan, other than Class 6

(General Unsecured Claims other than Convenience Claims), have voted to accept the

Plan. The Claims in each of Classes 1, 2, 4, 5, 8, 9, 10 and 11 are unimpaired under the

Plan and, pursuant to section 1126(f) of the Bankruptcy Code, holders of unimpaired

Claims in such classes are deemed to have accepted the Plan. Although the Plan does not

comply with section 1129(a)(8) of the Bankruptcy Code because of the rejection of the

Plan by Class 6 and the deemed rejection of the Plan by Class 12, AWI seeks

confirmation of the Plan pursuant to 1129(b) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of
Section 1129(a)(9) of the Bankruptcy Code**

53.     Section 1129(a)(9) of the Bankruptcy Code provides for certain

mandatory treatment of claims entitled to priority under the Bankruptcy Code.

54.     As required by section 1129(a)(9)(A) of the Bankruptcy Code,

Section 2.1 of the Plan provides that each holder of an Allowed Administrative Expense

shall be paid on account of such Allowed Claim, in full, in cash, on the Effective Date of

the Plan; *provided, however*, that Administrative Expenses of the type specified in

Section 1.1(c)(i) of the Plan shall be assumed and paid by Reorganized AWI in

accordance with the terms and conditions of the particular transactions and any

agreements relating thereto. In addition, pursuant to Section 2.2 of the Plan, all payments

made or to be made (as Administrative Expenses) to professionals retained by orders of

the Court will be subject to review and approval by the Bankruptcy Court or the District

Court upon final application under section 330, 331 or 503(b) of the Bankruptcy Code.

55.     Consistent with section 1129(a)(9)(B) of the Bankruptcy Code,

Section 3.2 of the Plan provides that each holder of an Allowed Priority Claim shall be

paid the Allowed Amount of its Allowed Priority Claim, in full, in cash, in an amount equal to such Claim, on the later of the Effective Date and as soon as reasonably practicable after the date such Claim becomes Allowed.

56.     Consistent with section 1129(a)(9)(C) of the Bankruptcy Code, Section 2.4 of the Plan provides that each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim either (a) in full, in cash, on the latest of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law or (b) upon such other terms as may be mutually agreed upon between each holder of a Priority Tax Claim and Reorganized AWI.

57.     AWI has sufficient cash to fund payments of Allowed Administrative Expenses, Allowed Priority Claims, and Allowed Priority Tax Claims. Accordingly, the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

**The Plan Satisfies the Requirements of**
**Section 1129(a)(10) of the Bankruptcy Code**

58.     Section 1129(a)(10) of the Bankruptcy Code provides that at least one impaired class of claims must accept a plan of reorganization, determined without including any acceptance of such plan by any insider.

59.     The Plan satisfies section 1129(a)(10) of the Bankruptcy Code because Classes 3 and 7, which are impaired classes, have voted to accept the Plan by the requisite majorities. Because Classes 3 and 7 contain no insiders (Rodruan Affidavit, at ¶ 12), at least one impaired class entitled to vote on the Plan has voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by insiders.

**The Plan Satisfies the Requirements of**
**Section 1129(a)(11) of the Bankruptcy Code**

60.     Section 1129(a)(11) of the Bankruptcy Code requires that a plan be

feasible and that the debtor or its successor under such plan would not likely require

liquidation or further financial reorganization, except as provided under such plan. *See In*

*re NII Holdings,* 288 B.R. 356, 364 (D. Del. 2002); *In re Am. Family Enters.,* 256 B.R.

377, 404-05 (D.N.J. 2000); *Corestates Bank, N.A. v. United Chem. Tech., Inc.,* 202 B.R.

33, 41-42 (E.D. Pa. 1996); *Moody v. Sec. Pacific Bus. Credit, Inc.,* 85 B.R. 319, 346

(W.D. Pa. 1988), *citing Chase Manhattan Mortgage & Realty Trust v. Bergman (In re*

*Bergman),* 585 F.2d 1171, 1179 (2d Cir. 1978)).

61.     As set forth above in the Findings of Fact, Reorganized AWI will

be able to satisfy its obligations under the Plan after confirmation.  AWI has carefully

structured the Plan and the Asbestos PI Trust to provide appropriate mechanisms and

funding to consummate the Plan with a high degree of certainty that Reorganized AWI

will be able to meet its obligations under the Plan.

62.     Thus, based upon the Findings of Fact and the Conclusions of Law

contained herein, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code, and

Reorganized AWI will not likely require liquidation or further financial reorganization

after confirmation.

**The Plan Satisfies the Requirements of**
**Section 1129(a)(12) of the Bankruptcy Code**

63.     Section 1129(a)(12) of the Bankruptcy Code requires that all fees

payable under section 1930 of title 28 of the United States Code, as determined by the

court at the hearing on confirmation of the plan, either have been paid or the plan

provides for the payment of all such fees on the effective date of the plan.

        64.     Section 11.1 of the Plan provides for the payment on the Effective

Date (or as soon as practicable thereafter) of all fees payable under section 1930 of title

28 of the United States Code.  All post-consummation fees that are due and payable will

be paid by Reorganized AWI until the Chapter 11 Case is closed pursuant to section 350

(a) of the Bankruptcy Code.  Accordingly, the Plan satisfies section 1129(a)(12) of the

Bankruptcy Code.

**The Plan Satisfies the Requirements of
Section 1129(a)(13) of the Bankruptcy Code**

        65.     Section 1129(a)(13) of the Bankruptcy Code requires the

continuation of payment of all retiree benefits, at the level established pursuant to section

1114 of the Bankruptcy Code at any time prior to confirmation of the plan, for the

duration of the period the debtor has obligated itself to provide such benefits.

        66.     Section 8.7 of the Plan provides that, on and after the Effective

Date, Reorganized AWI shall continue to pay all retiree benefits (within the meaning of

section 1114 of the Bankruptcy Code) for the duration of the period AWI has obligated

itself to provide such benefits.  Accordingly, the Plan satisfies section 1129(a)(13) of the

Bankruptcy Code.

**The Plan Satisfies the Requirements of
Section 1129(b) of the Bankruptcy Code**

        67.     As set forth in the Unfair Discrimination Decision and Order, the

Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Class 6.  With

respect to Class 12, the Plan satisfies section 1129(b) of the Bankruptcy Code because no

holder of any interest that is junior to the Equity Interests in Class 12 will receive or

retain under the Plan on account of such junior interest any property.

**The Plan Satisfies the Requirements of
Section 1129(d) of the Bankruptcy Code**

   68. Section 1129(d) of the Bankruptcy Code provides that, on request

of a governmental unit, the court may not confirm a plan if its principal purpose is the

avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of

1933, as amended. The principal purpose of the Plan is not avoidance of taxes or

avoidance of the requirements of section 5 of the Securities Act of 1933, as amended, and

there has been no objection to the Plan by any governmental unit alleging any such

avoidance. (Rodruan Affidavit, at ¶ 8). Accordingly, the Plan satisfies section 1129(d) of

the Bankruptcy Code.

**The Modifications Satisfy the Requirements
of Section 1127 of the Bankruptcy Code
and Rule 3019 of the Bankruptcy Rules**

   69. The Modifications do not adversely change the treatment of the

Claim of any creditor. To the contrary, the Modifications clarify certain provisions of the

Plan and preserve the Plan, as negotiated, and the rights of all parties as set forth therein.

   70. The Modifications comply in all respects with section 1127 of the

Bankruptcy Code, Bankruptcy Rule 3019, and all other provisions of the Bankruptcy

Code. Sufficient and adequate notice of the Modifications was provided, and no

additional disclosure or notice is required with respect to the Modifications.

**The Asbestos PI Channeling
Injunction and the Establishment of
the Asbestos PI Trust Comply with
Section 524(g) of the Bankruptcy Code**

   71. The Plan and its Exhibits are a fair, equitable and reasonable

resolution of the liabilities of AWI for Asbestos Personal Injury Claims.

72.   The Asbestos PI Trust satisfies the requirements for a trust under section 524(g) of the Bankruptcy Code.

73.   The Asbestos PI Permanent Channeling Injunction is consistent with sections 524(g) and 1129 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, and the Asbestos PI Permanent Channeling Injunction is in the best interests of AWI's estate. *See In re Johns-Manville Corp.*, 801 F.2d 60, 63-64 (2d Cir. 1986). *See also, In re Eagle-Picher Indus., Inc.*, 1996 U.S. Dist. LEXIS 17160, *26-28 (S.D. Ohio 1996). Because Indirect PI Trust Claims, including those arising under contract, relate to direct Asbestos Personal Injury Claims, they are appropriately channeled to the Asbestos PI Trust and have historically been channeled to trusts established in connection with asbestos related chapter 11 cases. *See, e.g., In re Forty-Eight Insulations*, 115 F.3d 1294 (7th Cir. 1997); *In re The Babcock & Wilcox Co., et al.*, 2001 U.S. Dist. LEXIS 9660, *22 (E.D. La. 2001); *In re Eagle-Picher Indus., Inc.*, 1996 U.S. Dist. LEXIS 17160, *26-28 (S.D. Ohio 1996).

74.   Moreover, in addition to the protection afforded the debtor or transferees or successors of the debtor under the plan, section 524(g)(4) sets forth the broad categories of third parties who, if alleged to be directly or indirectly liable for Asbestos Personal Injury Claims, may be beneficiaries of the Asbestos PI Permanent Channeling Injunction. Generally, these categories include the following:

(i) a party owning a financial interest in the debtor, a past or present affiliate of the debtor, or a predecessor in interest of the debtor (11 U.S.C. § 524 (g)(4)(A)(ii)(I));

(ii) a party who has been involved in the management of the debtor or a predecessor in interest of the debtor, or served as an officer, director or employee of the debtor or a related party (11 U.S.C. § 524(g)(4)(A)(ii)(II));

(iii) an insurer of the debtor or a related party (11 U.S.C. § 524(g)(4)(A)(ii) (III)); and

(iv) third parties who have had involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the debtor or a related party, including but not limited to involvement in providing financing (debt or equity) or advice to an entity involved in such a transaction or acquiring or selling a financial interest in an entity as part of such a transaction (11 U.S.C. § 524(g)(4)(A)(ii)(IV)).

75.      Each of the PI Protected Parties falls within one or more of these categories, or is a representative, Affiliate or subsidiary of an Entity covered by these categories, and is therefore entitled to the protection of the Asbestos PI Permanent Channeling Injunction under section 524(g) of the Bankruptcy Code.

**The Claims Trading Injunction Is Permissible**
**Under Section 105(a) of the Bankruptcy Code**

76.      The Claims Trading Injunction is needed so that the beneficial interests in the Asbestos PI Trust are not considered "securities" under the federal securities laws.  Without the Claims Trading Injunction, AWI might not be permitted to create a trust for the benefit of the holders of Asbestos Personal Injury Claims.  The Claims Trading Injunction, therefore, forms an integral part of AWI's reorganization and the Plan.

77.      The District Court has jurisdiction to enter the Claims Trading

Injunction under sections 1334(a), (b), and (d) of title 28 of the United States Code.

78.     Section 105(a) of the Bankruptcy Code permits approval and entry of the Claims Trading Injunction, especially where, as here, such injunction is essential to the formulation and implementation of the Plan as provided in section 1123(a)(5) of the Bankruptcy Code, confers material benefits on AWI's estate, and is in the best interests of holders of Claims against AWI.

79.     The Claims Trading Injunction is consistent with sections 105 and 1129 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, and the Claims Trading Injunction is in the best interests of AWI's estate.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 310-311 (1995); *In re Dow Corning Corp.*, 280 F.3d 648, 656-58 (6th Cir. 2002); *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 701-02 (3d Cir. 1989); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002-03 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986); *In re Johns-Manville Corp.*, 801 F.2d 60, 63-64 (2d Cir. 1986); *In re Combustion Eng'g Inc.*, 295 B.R. 459 (D. Del. 2003); *In re Asbestos Claims Mgmt. Corp.*, 294 B.R. 663 (N.D. Tex. 2003); *In re Eagle-Picher Indus., Inc.*, 1996 U.S. Dist. LEXIS 17160, *68 (S.D. Ohio 1996).

**The Discharge, Exculpation and Indemnity
Provisions Are Consistent with Sections 105
and Other Provisions of the Bankruptcy Code**

80.     The District Court has jurisdiction to and hereby does approve the provisions in Sections 11.2 (Discharge of AWI), 11.6 (Exculpation), and 8.6 (Indemnification and Reimbursement Obligations) of the Plan pursuant to sections 1334 (a), (b) and (d) of title 28 of the United States Code.

81.     Given the circumstances, the Plan's discharge provisions,

including the Asbestos PI Permanent Channeling Injunction, are proper.  Section 105(a)

of the Bankruptcy Code empowers the court and permits court approval of the discharge,

exculpation and indemnification provisions where, as here, such provisions are essential

to the formulation and implementation of the Plan and confer material benefits on AWI,

its estate and creditors.  On the basis of the Affidavits in Support of Confirmation and the

record presented at the Initial Confirmation Hearing and the Confirmation Hearing, the

Court finds and concludes that it has jurisdiction to and hereby does approve the

discharge, exculpation and indemnification provisions set forth in the Plan and that such

provisions of the Plan are consistent with sections 105 and 1129 of the Bankruptcy Code

and other applicable provisions of the Bankruptcy Code and are in the best interests of

AWI's estate and creditors.  *See In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000);

*In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000); *A.H. Robins Co., Inc. v. Piccinin*,

788 F.2d 994, 1002-03 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986); *In re Am. Family

Enters.*, 256 B.R. 377, 406-07 (D.N.J. 2000); *In re Allegheny, Health, Educ., & Research

Found.*, 252 B.R. 309, 331 (W.D. Pa. 1999); *In re Genesis Health Ventures, Inc.*, 266

B.R. 591 (Bankr. D. Del. 2001).

**The New Common Stock and the Plan
Notes Are Exempt from Registration
Pursuant to Section 1145 of the Bankruptcy Code**

82.     Under section 1145 of the Bankruptcy Code, the New Common

Stock and the Plan Notes will be freely tradeable by the recipients thereof, subject to (i)

the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of

an underwriter in Section 2(a)(11) of the Securities Act and compliance with any rules

and regulations of the Securities Exchange Commission, if any, applicable at the time of

any future transfer of such securities or instruments; (ii) the restrictions, if any, on the

transferability of such securities and instruments; and (iii) applicable regulatory approval.

The issuance of New Common Stock and the Plan Notes are or were in exchange for

Claims against AWI, or principally in such exchange and partly for cash or property,

within the meaning of section 1145(a)(1) of the Bankruptcy Code.

83.     The exemption from the requirements of Section 5 of the Securities

Act of 1933, as amended, and any state or local law requiring registration of the offer,

issuance, exchange or transfer of a security provided for in the Plan or registration or

licensing of an issuer of, underwriter of, or broker dealer in, such security is authorized by

section 1145 of the Bankruptcy Code and is applicable to the extent set forth in the Plan.

The New Common Stock and the Plan Notes are exempt from registration pursuant to

section 1145 of the Bankruptcy Code and are freely tradeable by the holders thereof

except to the extent a holder is an "underwriter" as defined in section 1145(b) of the

Bankruptcy Code.  For the purposes of section 1145(d) of the Bankruptcy Code, Class 7

is not an "underwriter" as defined in Section 2(11) of the Securities Act of 1933.

**The Plan Provides for**
**Proper Retention of Jurisdiction**

84.     The Bankruptcy Court or the District Court, as provided in Article

IX of the Plan, may retain jurisdiction over the matters set forth in Section 9.2 of the Plan

and the Confirmation Order as entered by the District Court.

**Effect of Confirmation**

85.     The Plan and its provisions shall be binding upon AWI,

Reorganized AWI, the Disbursing Agent, any entity acquiring or receiving property or a

distribution under the Plan, and any holder of a Claim against or Equity Interest in AWI,

whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.

86. Pursuant to Section 11.7 of the Plan, except as otherwise provided in the Plan, upon the Effective Date, title to all property of AWI's estate shall vest in Reorganized AWI free and clear of all Claims, Equity Interests, Encumbrances, and other interests, and all such Claims, Equity Interests, Encumbrances, and other interests shall be extinguished. From and after the Effective Date, Reorganized AWI may operate its business and may use, acquire, and dispose of property, and compromise or settle any Claims and Equity Interests without the supervision of or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

**Miscellaneous**

87. To the extent any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

### Conclusion

These Findings of Fact and Conclusions of Law and the Unfair Discrimination Decision and Order shall serve to support the entry of the Confirmation Order and issuance of the Asbestos PI Permanent Channeling Injunction and the Claims Trading Injunction in the Confirmation Order.

Dated: Philadelphia, Pennsylvania
August 17, 2006

_____
THE HONORABLE EDUARDO C. ROBRENO